**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY,**<br>**Plaintiff,**<br>**v.**<br>**THOMAS WILKINS,**<br>**Defendant.** | **1:10-cv-00674-OWW-JLT**<br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

**I. INTRODUCTION.**

Plaintiff General Electric Company("Plaintiff") proceeds with an action against Defendant Thomas Wilkins ("Defendant") for damages and injunctive relief.

On October 13, Plaintiff filed a first amended complaint ("FAC"). (Doc. 76). Defendant moved to dismiss the FAC on October 29, 2010. (Doc. 96). Plaintiff filed opposition to the motion to dismiss on January 10, 2011. (Doc. 144). Defendant replied on January 17, 2011. (Doc. 154). Defendant's motion to dismiss was heard on January 24, 2011.

**II. FACTUAL BACKGROUND.**

Plaintiff is a developer of energy technologies and the holder of U.S. Patent Nos. 6,921,985 ("'985 Patent") and 6,924,565, ("the'565 patent") (collectively "the subject technology"). Defendant is listed as one of seven inventors of the '565 Patent

and asserts that he is an unnamed co-inventor of the '985 Patent. Defendant claims an ownership interest in both patents.

Defendant was employed as an electrical engineer by Enron Wind Corp. ("Enron"), Plaintiff's predecessor in interest, intermittently from approximately April 1998 to May 2002. As a condition of his employment with Enron, Defendant signed a Confidentiality and Inventions Agreement ("C&I Agreement"). The C&I Agreement provided, *inter alia*, that Defendant agreed "upon the Company's request and without the need for further consideration, to execute any and all documents and take such actions which may be necessary in the Company's judgment to assign all rights to any Invention Idea to the Company and to obtain patent or other intellectual property protections for any Invention Idea." Under the terms of the C&I Agreement, Defendant was obligated to assign any interest in inventions created within the scope of his employment duties to Plaintiff.

Defendant's job responsibilities while employed by Enron included the design, development, installation and testing of wind turbine generators. Enron filed for bankruptcy protection in 2002. In May 2002, Plaintiff purchased Enron's assets, including its intellectual property.

Defendant became Plaintiff's employee in May of 2002. A requirement of employment was that Defendant sign Plaintiff's Employee Innovation and Proprietary Information Agreement ("EIPI Agreement"). The EIPI Agreement provided, *inter alia*, that Defendant agreed "to disclose and assign to the Company (or as the Company may direct) as its exclusive property, all inventions, discoveries, innovations, improvements, trade secrets and technical

or business information which [he] may solely or jointly develop, conceive, reduce to practice or author during the period of [his] employment." Under the terms of the EIPI Agreement, Defendant was obligated to assign any interest in inventions created within the scope of his employment to Plaintiff. Defendant was also requested to sign an acknowledgment that he was required to comply with the policies described in the guide: "GE Policies. Integrity: The Spirit the Letter of our Commitment" ("GE Policy Guide"), which also specified Defendant's obligations to protect and assign intellectual property Defendant worked on or invented in the course of his work for Defendant.

Defendant served as Plaintiff's lead power systems electrical engineer in California. His job was to develop new designs for wind turbine equipment. On May 31, 2002, Defendant first conceived the invention underlying the '565 Patent. Plaintiff does not allege when the invention underlying the '985 Patent was first conceived, or who first thought of it. Defendant voluntarily resigned from Plaintiff's employ in December 2002.

Plaintiff applied for the '565 and '985 Patents after Defendant terminated his employment with Plaintiff. In February 2004, Plaintiff requested that Defendant sign documents in connection with Plaintiff's application for the '565 Patent, but Defendant refused. Defendant has never signed an assignment expressly transferring his rights in the '565 Patent to Plaintiff, despite Plaintiff's requests that he do so. Plaintiff did not seek an assignment from Defendant in connection with the '985 Patent.

In 2009, Defendant purported to license the '985 Patent to one of Plaintiff's competitors. In May 2010, Defendant informed

Plaintiff that he was offering to license the '565 Patent to others. Defendant refused Plaintiff's request to cease and desist such conduct.

**III. LEGAL STANDARD.**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b) (6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it

lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## IV. Discussion

### A. Contract Claims

Defendant seeks dismissal of Plaintiff's contract claims, with prejudice, based on the statute of limitations. Defendant contends that he breached his obligations under the C & I Agreement and EIPI Agreement in 2004, when he refused to assign his rights in the '565 technology to Plaintiff in connection with Plaintiff's prosecution of the '565 Patent. Plaintiff contends that Defendant did not

cause Plaintiff appreciable harm until, at the earliest, 2009, when Defendant first purported to assert an adverse ownership interest in the subject technology.

The statute of limitations for breach of a written contract in California is four years. Cal. Civ. Code 337. A breach of contract ordinarily occurs upon the promisor's failure to render the promised performance, but the statute of limitations cannot begin to run until the plaintiff possesses a true cause of action, meaning that events have developed to a point where the plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages. *McCaskey v. California State Automobile Assn.*, 189 Cal. App. 4th 947, 958-59 (Cal. Ct. App. 2010).

Defendant's refusal to cooperate with Plaintiff in connection with the '565 Patent application in 2004 did not cause Plaintiff any "compensable harm," as Defendant's refusal to assign his interests in the '565 Patent did not inflict "an injury of a type that could translate into damages in an action for breach of contract." *Id.* at 960. The allegations of the complaint establish that Plaintiff did not suffer any compensable injury until, at the earliest, 2009, when Defendant first began to affirmatively assert an ownership interest in the subject technology adverse to Plaintiff's interest.

According to the complaint, in 2009, Wilkins granted MHI a license in the '985 technology, and MHI has relied on Wilkins' assertion of ownership interests in the subject technology to challenge Plaintiff's standing to enforce Plaintiff's rights in its patents. In contrast to the speculative injury entailed in

Defendant's refusal to cooperate in connection with the '565 Patent application in 2004, Defendant's affirmative assertion of adverse ownership interests in the patent in 2009 has caused Plaintiff compensable harm in the form of, *inter alia*, infringement of its patent interest and litigation costs resulting from the purported license Defendant granted to MHI.

Defendant argues that, because the FAC references a "cloud on the ownership and title" of the '565 Patent, the complaint establishes that Plaintiff suffered compensable harm in 2005 when the Patent issued. (Reply at 2). Defendant cites 35 U.S.C. § 262 for the proposition that, because Defendant was a presumed owner of the '565 patent by virtue of his refusal to effect an assignment, *see* 37 C.F.R. § 3.73(a) ("inventor is presumed to be the owner of a patent application, and any patent that may issue therefrom, unless there is an assignment"), Plaintiff was harmed in 2005 because Plaintiff "could have" used, sold, or licensed the '565 technology upon issuance of the patent. (Reply at 203). Section 262 provides:

> *In the absence of any agreement to the contrary*, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners.

35 U.S.C. § 262 (emphasis added). Defendant ignores the fact that section 262 specifically provides that owners of a patent remain bound by contractual restrictions related to the sale and use of patented technology. Further, any injury based on Defendant's purported ability to exercise the rights of an owner was completely speculative until, at the earliest, 2009, when Defendant first

began affirmatively asserting ownership rights in the subject technology by offering to license the technology to Plaintiff's competitor.

Defendant also contends that Plaintiff was harmed in 2005 because Defendant could not have brought a patent infringement action without Defendant's consent. Citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998) ("one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit"), Defendant contends that Plaintiff was "deprived of the right to sue under the '565 patent since it issued in 2005." (Reply at 2). However, other than a refusal to assign his rights, Defendant did not exercise any adverse interest or contrary rights that derogated Plaintiff's right to sue for patent infringement. Plaintiff did not then, nor did anyone else until 2009, act to infringe the subject technology. Defendant's claim he injured Plaintiff in 2005 is completely speculative. Plaintiff suffered no compensable harm, in 2005, to its right to bring a patent infringement action or in any other of its rights in the '565 Patent. Defendant's hypothetical scenarios regarding the harm Plaintiff's "could have" suffered in 2005 present no compensable injury, nor did Defendant act to then interfere with Plaintiff's use or enjoyment of the Patent.

Damages are an element of a cause of action for breach of contract. *E.g., Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (Cal. Ct. App. 1990). Because a cause of action accrues "at the time when the cause of action is complete with all of its elements," *e.g., Fox v. Ethicon*

*Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal. 2005) (citations omitted), the statute of limitations did not begin to run until Defendant's conduct caused Plaintiff to suffer an actual injury of the type that could translate into damages in an action for breach of contract, *see McCaskey*, 189 Cal. App. 4th at 960. According to the complaint's allegations, Plaintiff did not suffer compensable harm until 2009 at the earliest, when Defendant licensed the '985 technology to MHI. Defendant has not established that on the face of the complaint, Plaintiff's contract claims are barred by the statute of limitations.[1]

**B. Non-Contract Claims**

Plaintiff's non-contract causes of action are predicated on the notion that:

> Even in the absence of contractual agreement, pursuant to California law, including but not limited to, California Labor Code § 2860, Wilkins is required to assign to GE any interest he claimed...[and] is [] constrained under California law from purporting to offer to license [the subject technology].

(FAC at 14, 19).[2] California Labor Code Section 2860 provides:

> Everything which an employee acquires by virtue of his

[1] Defendant also contends that the court does not have Article III jurisdiction over Plaintiff's breach of contract claims concerning the '985 Patent because the FAC alleges that Defendant is not an inventor of the '985 Patent. In Defendant's view, accepting this allegation as true, "GE cannot maintain any separate cause of action based on Mr. Wilkins' alleged hypothetical obligations as to the '985 patent," because the case or controversy requirement cannot be satisfied by requests for advisory opinions. (Motion to Dismiss at 12-13). Defendant's argument lacks merit. It is axiomatic that parties may assert alternative contentions. Plaintiff contends that Defendant has no rights in the '985 Patent. Alternatively, Plaintiff contends that if Defendant does have rights in the '985 Patent, he is obligated to assign such rights under the applicable contracts.

[2] The complaint does not clearly assert claims under any California law other than section 2860, however, Defendant has not moved for a more definite statement. Nor has Defendant asked for dismissal based on the ambiguity created by the FAC.

> employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment

Cal. Lab. Code § 2860. California Labor Code section 2860 embodies the universally accepted principal that work product created by an employee belongs to the employer where the employee was hired to create such work product. *See e.g. Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 826 (Cal. 1979)[3] (Mosk, J., concurring) (collecting cases such as *Zahler v. Columbia Pictures Corp*., 180 Cal. App. 2d 582, 589 (Cal. Ct. App. 1960) (where an employee creates something as part of his duties under his employment, the thing created is the property of his employer"); *Treu v. Garrett Corp*., 264 Cal. App. 2d 432, 436 (Cal. Ct. App. 1968) (an invention created by an employee was held to belong to the employer because that was the very reason he was hired and paid); *Famous Players-Lasky Corp. v. Ewing*, 49 Cal. App. 676 (Cal. Ct. App. 1920) (same)); *accord Aero Bolt & Screw Co. v. Iaia*, 180 Cal. App. 2d 728, 736 (Cal. Ct. App. 1960) (where employee is hired to invent, employer owns invention); *United States v. Dubilier Condenser Corp*., 289 U.S. 178, 216 (1933) (employer owns invention where employee is "hired or assigned to evolve a process or mechanism for meeting a specific need").[4]

---

[3] Superceded on other grounds as stated in *In re Sloppy Joe's Int'l., Inc.*, 43 U.S.P.Q.2D (Trademark Trial & App. Bd. 1997).

[4] In his reply, Defendant contends that section 2860 does not apply to inventions. This argument was not raised in the motion to dismiss and cannot provide the basis for a dismissal. The case Defendant relies on, *Williams v. Weisser*, 273 Cal. App. 2d 726, 733-34 (Cal. Ct. App. 1969), does not stand for the proposition Defendant cites it for. The *Williams* Court specifically distinguished the lectures at issue in that case from inventions created by an employee hired to invent: "University lectures are *sui generis*...they should not be blindly thrown into the same legal hopper with valve designs." *Id.* at 735 (citing *Daniel Orifice Fitting Co. V. Whalen*, 198 Cal. App. 2d 791 (Cal. Ct. App.

The applicable limitations period on an action under section 2860 is either two years under California Civil Code section 339, *see Lugosi*, 25 Cal. 3d at 854 (assuming, without deciding, that section 339 provided the applicable limitations period), or four years under the residual statute of limitations provided in California Civil Code section 343, *see* Cal. Civ. Code § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."). Under either scenario, Defendant has failed to establish that Plaintiff's claims under section 2860 are time-barred.

Where an employer's claim under section 2860 is predicated on a former employee's attempt to grant licenses in the employer's intellectual property to a third party, each licensing agreement presents a "separate and distinct invasion of the [employer's] rights," and the statute of limitations for each injury begins to run from the time a license is granted. *See Lugosi*, 25 Cal. 3d at 854. According to the FAC, Plaintiff first asserted ownership rights in the subject technology and began to license such rights in 2009. Plaintiff initiated this action on April 15, 2010, within two years following Defendant's first assertion of ownership interests and grants of licenses in the subject technology. Contrary to Defendant's conclusory argument, Defendant's refusal in 2004 to cooperate with GE's request for assignment of his rights in the technology underlying the '565 Patent was not, as a matter of

---

1962)). *Whalen* expressly recognizes that "[w]here a person is employed to design improvements to the product of his employer, or to design new products for his employer, and he does so, he may not use the results of such work for his own use and benefit, and particularly not to the detriment of his employer." 198 Cal. App. 2d at 798.

law, tantamount to assertion of an ownership interest in the '565 technology- much less the '985 technology. In any event, as the California Supreme Court stated in *Lugosi*, Defendant's licensing of the technology in 2009 created a separate and distinct invasion of Plaintiff's rights. *See id.*

Defendant's reliance on *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc.*, 583 F.3d 832, 848 (Fed. Cir. 1999) is misplaced. In *Roche*, the district court found, based on "undisputed evidence," that a Stanford employee put Roche on notice that Stanford asserted an ownership interest in the subject technology more than four years before Roche filed suit. *Id.* Rather than support Defendant's position, *Roche* makes clear that resolution of the statute of limitations issue is inappropriate absent admissible evidence sufficient to support a finding as to when Plaintiff was put on notice of Defendant's assertion of an adverse ownership interest in the subject technology.[5]

No allegations of the FAC suggest that Plaintiff's claims under section 2680 accrued before 2009. Nor is there any evidence or judicially noticeable fact cited to support such a conclusion. Defendant has not established that Plaintiff's claims under section 2680 are barred by the statute of limitations.

---

[5] "When considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *See, e.g., McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4, (1947)("when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.")). Defendant has provided no evidence that suggests Plaintiff was on notice of Defendant's adverse assertion of ownership interests in the subject property prior to 2009.

**ORDER**

For the reasons stated above, Defendant's motion to dismiss the FAC as time-barred is DENIED.

IT IS SO ORDERED.

**Dated: March 15, 2011**

**/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE