1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                       EASTERN DISTRICT OF CALIFORNIA

8

9   GENERAL ELECTRIC COMPANY, a New )        1:10-cv-0674 OWW JLT
    York corporation; and GE WIND   )
10  ENERGY, LLC, a Delaware limited )        AMENDED SUPPLEMENTAL
    liability company,              )        SCHEDULING CONFERENCE ORDER
11                                  )
                  Plaintiffs,       )        Discovery Cut-Off: 2/29/12
12                                  )
        v.                          )        Fact Discovery Non-
13                                  )        Dispositive Motion Filing
    THOMAS WILKINS, an individual,  )        Deadline: 12/5/11
14                                  )
                  Defendant.        )        Fact Discovery Non-
15                                  )        Dispositive Motion Hearing
                                    )        Date: 1/9/12 9:00 before
16  _____)        JLT

17                                           Expert Discovery Non-
                                             Dispositive Motion Filing
18                                           Deadline: 2/1/12

19                                           Expert Discovery Non-
                                             Dispositive Motion Hearing
20                                           Date: 3/5/12 9:00 before
                                             JLT
21
                                             Dispositive Motion Filing
22                                           Deadline: 2/8/12

23                                           Dispositive Motion Hearing
                                             Date:  4/2/12 10:00 Ctrm. 3
24
                                             Settlement Conference Date:
25                                           2/8/12 10:00 before JLT

26                                           Pre-Trial Conference Date:
                                             5/7/12 11:00 Ctrm. 3
27
                                             Trial Date: 6/19/12 9:00
28                                           Ctrm. 3 (JT-10 days)

                                     1

Mid-Discovery Status
Conference: 7/14/11 8:15
Ctrm. 3

I.   Date of Scheduling Conference.

   April 7, 2011.

II.   Appearances Of Counsel.

   Clement L. Glynn, Esq., and Jonathan A. Eldredge, Esq., appeared on behalf of Plaintiffs.

   William C. Hahesy, Esq., and Thomas W. Winland, Esq., appeared on behalf of Defendant.

   Filiberto Agusti, Esq., Phillip Barber, Esq., and Daniel Blakey, Esq., appeared on behalf of Intervenors, Mitsubishi Heavy Industries.

III.   Summary of Pleadings.

   A.   GE's Statement.

      1.   As discussed in GE's amended complaint (Docket No. 76) and its motion for preliminary injunction (Docket No. 15), GE seeks a determination that Mr. Wilkins has no legitimate right to claim any interest in certain GE patented technology.  Although well aware of GE's position, Mr. Wilkins - a former employee of GE who was hired to invent - has licensed and offered via the internet to license GE's technology to others after being put on notice that his right to license is disputed.

      2.   GE is a leader in the development of renewable energy.  In an effort to make renewable and clean energy more widely available, GE has devoted significant resources to developing technology to capture wind energy to generate electricity.  In 2002, GE purchased the assets, including

2

1  intellectual property, of Enron Wind Corporation ("Enron Wind").

2  At the time GE purchased Enron Wind, Mr. Wilkins was a Power

3  Systems Engineer for Enron Wind whose employment required that he

4  work on various design projects related to wind turbine generator

5  systems.  Mr. Wilkins worked for GE for approximately six months

6  after GE's acquisition of Enron Wind and then voluntarily

7  resigned.  During his employment at Enron Wind (and later GE),

8  Mr. Wilkins (along with other Enron Wind and GE employees)

9  allegedly worked on various projects that resulted in two patents

10  related to wind turbine generators referred to as the '565 and

11  '985 Patents.[1]

12      3.   Pursuant to agreements between Mr. Wilkins and GE

13  (individually and as a successor to Enron Wind) and California

14  statutory and common law, Wilkins was required to assign all

15  rights he had in the patents to GE.  All inventors of the '565

16  and '985 Patents except Mr. Wilkins assigned their rights in the

17  patents to GE.  Nevertheless, Mr. Wilkins made no assertion of

18  ownership in the patents during his employment with GE or Enron

19  Wind, and GE filed its patent applications and received patents

20  for the technology.

21      4.   In 2009, GE filed a patent infringement action

22  against Mitsubishi for infringing certain GE patents related to

23  wind turbine generators.  Previously, in 2008, GE had filed an

24  action with the International Trade Commission ("ITC") against

25  Mitsubishi related to its patent infringement.  During

26  ───────────────

27      [1] Mr. Wilkins was a co-inventor of the '565 Patent; GE
    disputes that Mr. Wilkins was a co-inventor of the '985 Patent,
28  but Wilkins claims otherwise.

1  proceedings before the ITC, Mr. Wilkins (who was hired by
2  Mitsubishi as a consultant for the litigation) claimed for the
3  first time that he was a co-inventor of the '985 Patent; Mr.
4  Wilkins later claimed that he was also the owner of the '565
5  Patent.  Mr. Wilkins revealed that during the pendency of the
6  patent infringement case and without GE's knowledge or consent,
7  he purported to grant a license to GE's patents to Mitsubishi.
8  After GE filed this case, Mr. Wilkins began offering to sell
9  licenses to other interested third parties on his website in
10 violation of his obligation to assign any such rights to GE.

11         5.    The '565 and '985 Patents were developed during
12 Mr. Wilkins' employment with Enron Wind or GE, and any
13 contributions by Wilkins would have been part of his job duties
14 as a Power Systems Engineer.  Thus, Mr. Wilkins was contractually
15 and legally obligated to assign any purported rights in the
16 technology to GE.  Nevertheless, despite his contractual and
17 legal obligations, Mr. Wilkins refuses to assign to GE his
18 alleged ownership rights.

19         6.    On October 19, 2010, the Court granted GE's motion
20 for preliminary injunction to prevent Mr. Wilkins from continuing
21 his licensing activities.  (Docket No. 83.)

22      B.   Mr. Wilkins' and Mitsubishi's Statement.

23         1.    Discovery has just begun, and Mr. Wilkins and
24 Mitsubishi will assert other legal and/or factual issues that may
25 arise or be discovered during the discovery process.  Moreover,
26 Mr. Wilkins has only recently filed his counterclaim, which makes
27 numerous allegations that GE has yet to admit or deny.  Any
28 factual allegations in Mr. Wilkins' counterclaim admitted by GE

**4**

1  will be designated as uncontested facts.  Any factual allegations
2  in Mr. Wilkins' counterclaim denied by GE will be designated as
3  contested facts.  Mr. Wilkins and Mitsubishi reserve the right to
4  supplement this statement in light of the admissions and denials
5  in GE's answer.  Subject to those reservations, Mr. Wilkins and
6  Mitsubishi make the following statement.

7        2.   Mr. Wilkins worked with Zond Energy Systems
8  ("Zond") and Enron Wind ("Enron"), Zond's successor, beginning in
9  1998.  Mr. Wilkins left Enron in mid-2001 to form his own
10  consulting business.  Subsequently, Enron contacted Mr. Wilkins
11  to request his assistance in troubleshooting a number of Enron
12  wind turbines, and Mr. Wilkins began performing that work for
13  Enron in January 2002.  When Enron declared bankruptcy in April
14  2002, GE purportedly acquired certain of Enron's wind turbine
15  business assets, expressly excluding all Enron employment
16  contracts.  Mr. Wilkins began working with GE in May 2002, and
17  stopped working with GE in November 2002, but was not hired to
18  invent by GE.

19        3.   Mr. Wilkins began working with Zond in 1998 as an
20  assembly technician, and he was not hired to invent.  Shortly
21  after joining Zond, Mr. Wilkins began working on Zond wind
22  turbines installed at Algona, Iowa ("Algona") and Zond wind
23  turbines installed at Lake Benton, Minnesota ("Lake Benton").
24  That work resulted in those turbines being enabled to ride
25  through voltage disturbances on the utility grid down to 70% of
26  nominal voltage (i.e., "low voltage ride through" or "LVRT") by
27  no later than mid-2001.  Mr. Wilkins' contributions included,
28  *inter alia*, the idea of using an uninterruptible power supply to

5

1   meet LVRT requirements.  Mr. Wilkins' work also resulted in the

2   Lake Benton and Algona turbines being enabled to provide reactive

3   power support by no later than mid-2001.  Mr. Wilkins' work

4   during this time period entitled him to be named as an inventor

5   of both the '565 and '985 patents.

6        4.   In 2000, Mr. Wilkins traveled to Germany to

7   explain his ideas and work on applying the LVRT technology

8   previously used in the Zond wind turbines to the 1.5 MW wind

9   turbines of Tacke Wind Energie (a Eurpoean predecessor-in-

10   interest to Enron Wind).  During that visit, Mr. Wilkins met with

11   Wilhelm Hanssen, one of the co-inventors subsequently named by GE

12   on the '985 patent.  Mr. Wilkins told Mr. Janssen about the Zond

13   wind turbines at Lake Benton and Algona, and his work on them

14   regarding LVRT.  Mr. Wilkins subsequently left Enron in mid-2001

15   to begin working as an independent consultant not employed by

16   Zond, Enron, or anyone else.

17        5.   In late 2001, Enron contacted Mr. Wilkins to seek

18   his help with certain Tacke/Enron 1.5 MW wind turbines installed

19   or to be installed in the United States.  Those wind turbines had

20   been equipped with technology similar to that used in the Zond

21   wind turbines at Lake Benton and Algona that Mr. Wilkins had

22   worked on; however, the wind turbines were not successfully

23   accomplishing reactive power support, and had not yet implemented

24   LVRT.  When Enron contacted Mr. Wilkins, he was an independent

25   consultant not employed by Zond, Enron, or anyone else.  Enron

26   brought Mr. Wilkins back beginning in January 2002 to

27   troubleshoot the 1.5 MW U.S. wind turbines and assist with LVRT

28   implementation.

1          6.    Upon his return to Enron in January 2002,

2   Mr. Wilkins began troubleshooting 1.5 MW wind turbines that

3   incorporated reactive power support technology, in an effort to

4   enable them to accomplish reactive power support, and assisting

5   with the implementation of LVRT in the 1.5 MW wind turbines, in

6   which LVRT was already installed.  Mr. Wilkins was not at that

7   time hired to invent, and Mr. Wilkins refused to sign—and never

8   did sign—any agreement obligating him to assign inventions to

9   Enron.  Enron acceded to Mr. Wilkins' refusal to sign any

10  agreement obligating him to assign inventions to Enron.

11         7.    GE acquired certain Enron assets in April 2002,

12  but specifically excluded "all rights of [Enron] under (A) any

13  and all employment contracts (other than obligations for EWC for

14  the Divestiture Bonuses and Retention Payments)."  Thus, GE

15  acquired no rights of Enron under any employment contracts,

16  including any employment contract that GE alleges that Enron had

17  with Mr. Wilkins.

18         8.    In May 2002, Mr. Wilkins began working with GE.

19  Mr. Wilkins was never asked to sign, and never did sign, any

20  employment contract with GE, and he was not hired to invent.  In

21  May 2002, GE requested that Mr. Wilkins sign an Employee

22  Innovation and Proprietary Information Agreement ("EIPI

23  Agreement"), which Mr. Wilkins refused to sign and never

24  thereafter signed.  Indeed, Mr. Wilkins never signed *any*

25  agreement obligating him to assign inventions to GE—and GE

26  acceded to Mr. Wilkins' refusal to sign any such agreement.

27         9.    In May 2002, Mr. Wilkins signed an invention

28  disclosure with GE.  GE has asserted that this invention

7

1  disclosure—filed with the Court in a heavily redacted form—was

2  the invention of the technology of the '565 patent.  However,

3  Mr. Wilkins believes that the un-redacted document merely

4  discloses an add-on technology to the already-invented, already-

5  implemented, technology of the '565 patent.  The May 2002

6  invention disclosure merely suggested that motoring of the wind

7  turbines would allow for *continuous* reactive power—a feature that

8  never became part of the '565 patent.

9          10.   On May 29, 2002, Mr. Wilkins received a document

10  outlining certain GE policies, and he signed that document with

11  the annotation "All Rights Reserved."  GE never disputed during

12  Mr. Wilkins' work with GE that Mr. Wilkins had reserved all of

13  his rights by signing that document with "All Rights Reserved,"

14  and GE acceded to Mr. Wilkins' signature of the document with

15  "All Rights Reserved."

16          11.   In August 2002, Mr. Wilkins traveled to Germany to

17  work on applying the LVRT technology previously used in the Zond

18  wind turbines to Tacke/Enron 1.5 MW wind turbines.  In Germany,

19  Mr. Wilkins met with Wilhelm Janssen and Henning Lütze, two of

20  the co-inventors subsequently named by GE on the '985 patent.

21  Mr. Wilkins told Mr. Janssen and Mr. Lütze about his work at Lake

22  Benton and Algona regarding LVRT.  Mr. Lütze has testified that

23  he believes Mr. Wilkins should have been named as a co-inventor

24  of the '985 patent.

25          12.   When Mr. Wilkins left GE in November 2002, he told

26  GE that he had never signed an agreement to assign inventions to

27  GE.

28          13.   On January 24, 2003, GE's patent attorney filed a

**8**

patent application at the U.S. Patent and Trademark Office (U.S. Patent Application No. 10/350,452, "the '452 application") that expressly identified Mr. Wilkins as an inventor.  GE never notified Mr. Wilkins that he had been identified by GE's patent attorney as an inventor of the '452 application as filed in the U.S. Patent and Trademark Office.  After filing the application, GE's patent attorney caused Mr. Wilkins' name to be removed from the '452 application.   GE's patent attorney also subsequently submitted to the U.S. Patent and Trademark Office inventor declarations signed by only five of the six originally named inventors, failing to submit an inventor declaration from Mr. Wilkins.  GE never asked Mr. Wilkins to sign an inventor declaration in the '452 application or asked whether he believed he was an inventor of, or made any contribution to, the claimed subject matter of the '452 application or the '985 patent.  The 985 patent issued on July 26, 2005 and did not identify Wilkins as an inventor.

        14.   Upon information and belief, GE never disclosed the existence of the Zond wind turbines installed at Lake Benton and Algona, or Mr. Wilkins' work on them between 1998 and 2001 relating to LVRT, to the U.S. Patent and Trademark Office during prosecution of the '452 application that issued as the '985 patent.  GE withheld that information despite the fact that the claims of the '985 patent are based, in part, on Mr. Wilkins' ideas regarding LVRT that he conceived in his work between 1998 and 2001 on the Zond wind turbines installed at Lake Benton and Algona.  Indeed, applying a clear and convincing evidence standard, the U.S. International Trade Commission ("ITC") and

1  U.S. ITC Judge Carl Charneski determined that Mr. Wilkins should
2  have been named as an inventor of the '985 patent.

3          15.   On August 18, 2003, GE's patent attorney filed a
4  patent application at the U.S. Patent and Trademark Office (U.S.
5  Patent Application No. 10/643,297, "the '297 application") that
6  identified Mr. Wilkins as an inventor.   On February 10, 2004, in
7  connection with the '297 application, GE sent Mr. Wilkins an
8  Inventor Declaration and Power of Attorney form and an Assignment
9  form and requested that he sign both forms.   The Assignment form
10 sent to Mr. Wilkins stated that Mr. Wilkins was obligated to
11 assign his inventions "pursuant to an Employee Innovation and
12 Proprietary Information Agreement or other agreement and/or for
13 other good and valuable consideration …."   On February 11, 2004,
14 Mr. Wilkins informed GE's patent attorney that he would not sign
15 either the Inventor Declaration and Power of Attorney form or the
16 Assignment form.   Mr. Wilkins returned the unsigned forms to GE's
17 patent attorney, who, upon information and belief, received them
18 on February 24, 2004.   Mr. Wilkins never signed an assignment of
19 his rights in the '297 application or the '565 patent.

20         16.   The alleged facts surrounding Mr. Wilkins' refusal
21 to sign an assignment of the '297 application were presented in a
22 declaration filed by GE's patent attorney at the U.S. Patent and
23 Trademark Office on March 15, 2004, and stamped as being received
24 on March 17, 2004.   Thus, that information was publicly available
25 beginning on or about March 17, 2004.

26         17.   On March 16, 2004, GE's patent attorney submitted
27 an assignment document relating to the '297 application at the
28 U.S. Patent and Trademark Office, which was publicly recorded on

**10**

1  March 19, 2004.  The assignment of the '297 application contained
2  signatures from all named inventors except for Mr. Wilkins.
3  Thus, on or about March 19, 2004, the public was on notice that
4  GE had not recorded any assignment from Mr. Wilkins of his rights
5  as an inventor named in the '297 application.

6       18.  Despite naming Mr. Wilkins as an inventor of the
7  '297 application, GE did not disclose the details of the Zond
8  wind turbines installed at Lake Benton and Algona, or Mr.
9  Wilkins' work on them between 1998 and 2001 relating to reactive
10 power support, to the U.S. Patent and Trademark Office during
11 prosecution of that application.

12      19.  The '565 patent issued without any recorded
13 assignment from Mr. Wilkins.  Thus, because Mr. Wilkins is a co-
14 inventor of ideas claimed in the '565 patent who had not assigned
15 his rights when the '565 patent issued, the '565 patent issued
16 jointly to GE and Mr. Wilkins as co-owners.  Under U.S. Patent
17 Law, each of the joint owners of a patent may make, use, offer to
18 sell, or sell the patented invention within the United States, or
19 import the patented invention into the United States, without the
20 consent of and without accounting to the other owners.  GE
21 consented to these rights when it added Mr. Wilkins as a co-
22 inventor/co-owner of the '565 patent.

23      20.  In this action, GE has asserted ownership of any
24 inventions made by Mr. Wilkins during his work with Enron or GE.
25 Defendant and Intervenors dispute GE's claims.  Mr. Wilkins never
26 executed any agreement to assign his inventions to Enron or GE.
27 Mr. Wilkins was not hired to invent.  The common law "work-for-
28 hire" doctrine and California Labor Code § 2860 do not apply in

1    these circumstances.  Further, GE did not acquire any Enron
2    employment contracts—including any alleged contracts between
3    Enron and Mr. Wilkins—when GE acquired certain of Enron's assets
4    out of bankruptcy; therefore, GE cannot assert against
5    Mr. Wilkins whatever obligation, if any, that he owed to Enron.
6    Defendant and Intervenors have also raised various affirmative
7    defenses, including that GE's claims are barred by the statutes
8    of limitation, estoppel, waiver, laches, acquiescence, consent,
9    unclean hands, the statute of frauds, and the statutory and
10   common law prohibition on enforcement of unconscionable
11   contracts; that GE lacks standing; that Mr. Wilkins' actions are
12   or were privileged, justified, or excused; that the alleged
13   contracts are illegal and unenforceable to the extent they
14   violate state law; and that GE purports to have an adequate
15   remedy at law that bars any equitable relief.

16        21.  As counterclaims, Defendant and Intervenors
17   contend that the '985 patent should be corrected under 35 U.S.C.
18   § 256 to identify Mr. Wilkins as a co-inventor.  Defendant and
19   Intervenors seek a declaration that Mr. Wilkins is a co-owner of
20   the '985 patent.  Mr. Wilkins also seeks a declaration that he is
21   a co-owner of the'565 patent, and he seeks damages relating to
22   GE's conversion of Mr. Wilkins' ownership interests in both
23   patents and GE's unjust enrichment.

24   IV.  Orders Re Amendments To Pleadings.

25        A.   GE's Statement.

26        1.   GE does not anticipate any amendments to its
27   pleadings, or adding any additional parties to this litigation.

28        B.   Mr. Wilkins' and Mitsubishi's Statement.

12

1.    *See* Mr. Wilkins' and Mitsubishi's discovery and trial calendars, in Sections VI.A.2 and VIII.B below. The parties do not anticipate amending the pleadings at this time.

C.    Based on agreement of the parties, all parties shall have to and including June 30, 2011 to file any amendments to pleadings or to add additional parties and/or claims without the necessity of a motion.  Thereafter, a motion under Fed. R. Civ. Proc. 15 shall be required.

V.    Factual Summary.

A.    Admitted Facts Which Are Deemed Proven Without Further Proceedings.

Discovery has just begun, and the parties will assert other factual issues that may arise or be discovered during the discovery process.  Moreover, Mr. Wilkins and Mitsubishi have only recently filed their counterclaims, which makes numerous allegations that GE has yet to admit or deny.  Any factual allegations in Mr. Wilkins' or Mitsubishi's counterclaims admitted by GE will be designated as uncontested facts.  Any factual allegations in Mr. Wilkins' or Mitsubishi's counterclaims denied by GE will be designated as contested facts.  Mr. Wilkins and Mitsubishi reserve the right to supplement this statement in light of the admissions and denials in GE's answer.  The parties do not admit by way of this statement that the listed facts are relevant and/or admissible at trial.  Subject to those reservations, the parties make the following statement.

1.    General Electric Co. is a New York corporation.

2.    GE Wind Energy, LLC, is a Delaware limited liability

13

1   company.

2        3.   Thomas Wilkins is an individual.

3        4.   Mitsubishi Heavy Industries, Ltd., is a corporation

4   incorporated under the laws of the Country of Japan.

5        5.   Mitsubishi Power Systems Americas, Inc., is a

6   corporation incorporated under the laws of the State of Delaware.

7        6.   Mr. Wilkins is a co-inventor of the '565 patent.

8   Docket No. 76 ¶ 17.

9        7.   Mr. Wilkins refused to sign an assignment of the rights

10  in the '565 patent when GE requested that he do so in 2004.

11  Docket No. 76 ¶ 65.

12       8.   Mr. Wilkins signed a document acknowledging receipt of

13  a "guide to GE Policies" in May 2002, which he signed with "All

14  Rights Reserved."  Docket No. 17-1 at 5.

15       B.   Contested Facts[2]

16            By listing a fact issue herein, the parties do not

17  concede that the issue is purely a factual issue and not a mixed

18  issue of fact and law or an issue of law.

19            1.   Whether Thomas Wilkins was listed as one of six

20  inventors when the application for the '985 patent was filed.

21  Whether GE's Counsel removed Thomas Wilkins from the application

22  for the '985 patent after that application was filed.

23            2.   Whether Mr. Wilkins is a record co-owner of the

24  '565 patent, and has been since the '565 patent issued in 2005.

25  _____

26  [2]   GE objects to Wilkins' and MHI's wholesale
    incorporation of their answers and counterclaims into this
27  section as it is antithetical to the purpose of a joint
    statement, and does not assist the Court in defining the
28  material issues.  Mr. Wilkins believes this statement is
    required in order to protect his interests.

1       3.   Whether Mr. Wilkins refused to assign the rights

2  in his inventions when GE made its request in 2004.

3       4.   Whether Mr. Wilkins resides in Tehachapi,

4  California, and is a citizen of California.

5       5.   Whether Mr. Wilkins resided within the Eastern

6  District of California at all times relevant to GE's complaint.

7       6.   Whether GE is entitled to the declaratory relief

8  that it seeks.

9       7.   Whether GE has rightfully acquired many patents

10  relating to wind turbines.

11       8.   Whether Mr. Wilkins was employed by Enron Wind

12  and/or GE as alleged in GE's Amended Complaint.

13       9.   Whether Mr. Wilkins' job responsibilities with

14  Enron and GE included design, development, installation, and

15  testing of wind turbine generators.

16       10.   Whether Mr. Wilkins was expected to innovate in

17  the area of wind turbine generators for Enron and GE, as alleged

18  in GE's Amended Complaint.

19       11.   Whether Mr. Wilkins was hired by Enron and GE to

20  invent, as alleged in GE's Amended Complaint.

21       12.   Whether Mr. Wilkins entered into any employment

22  agreement with GE.

23       13.   Whether GE ever asked Mr. Wilkins to sign an

24  employment agreement.

25       14.   Whether Mr. Wilkins was required to sign, and did

26  sign, a Confidentiality and Inventions Agreement ("C&I

27  Agreement") that imposed certain obligations with respect to

28  inventions as between him and Enron, as alleged in GE's Amended

1  Complaint.

2      15.   Whether Enron acceded to Mr. Wilkins' refusal to
3  sign a C&I Agreement.

4      16.   Whether Mr. Wilkins was required to execute, and
5  did execute, an Employee Innovation and Proprietary Information
6  Agreement ("EIPI Agreement") that imposed certain obligations
7  with respect to inventions as between him and GE, as alleged in
8  GE's Amended Complaint.

9      17.   Whether GE acceded to Mr. Wilkins' refusal to
10 execute an EIPI Agreement.

11     18.   Whether Mr. Wilkins' signing a receipt of certain
12 documents from GE, with the notation "all rights reserved,"
13 imposed any obligations on Mr. Wilkins with respect to
14 intellectual property, inventions, or the alleged EIPI Agreement.

15     19.   Whether GE acceded to Mr. Wilkins' signature of a
16 document acknowledging receipt of certain documents from GE with
17 the notation "all rights reserved."

18     20.   Whether Mr. Wilkins signed any documents received
19 from GE concurrently with the document acknowledging receipt of
20 such documents.

21     21.   Whether Mr. Wilkins was obligated under California
22 law to assign to Enron intellectual property developed during his
23 work with Enron.

24     22.   Whether GE "stepped into the shoes of Enron" with
25 respect to Mr. Wilkins obligations, if any, to Enron regarding
26 intellectual property.

27     23.   Whether Mr. Wilkins was obligated under California
28 law to assign to GE intellectual property developed during the

1  course of his work with GE.

2      24.   Whether GE is identified on the face of the '565
3  patent as an assignee of Mr. Wilkins' rights in that patent.

4      25.   Whether GE was required to and/or failed to
5  disclose Mr. Wilkins' contributions to the '565 patent, and the
6  work performed at Algona and Lake Benton, to the U.S. Patent and
7  Trademark Office during prosecution of the application for the
8  '565 patent.

9      26.   Whether Mr. Wilkins was obligated under the
10 alleged C&I Agreement, EIPI Agreement, and/or California law to
11 assign to GE his interest in the '565 patent and the subject
12 matter described and claimed in the '565 patent.

13     27.   Whether Mr. Wilkins stated to GE's patent attorney
14 that he was not willing to assist GE with the application for the
15 '565 patent because he did not believe GE treated its employees
16 properly as alleged in GE's Amended Complaint; whether
17 Mr. Wilkins stated that he believed that he owned any
18 intellectual property rights in the ideas disclosed or claimed in
19 the patent application; and whether Mr. Wilkins repudiated or
20 denied his obligation to assign to GE intellectual property
21 rights for any and all inventions made while working with Enron
22 and GE.

23     28.   Whether Mr. Wilkins stated the "circumstances" of
24 his refusal to assign the rights in his inventions in 2004 as GE
25 has alleged in its Amended Complaint.

26     29.   Whether in May 2010 Wilkins first asserted an
27 ownership right to the '565 patent and the invention covered by
28 the '565 patent as alleged in GE's Amended Complaint.

17

30.   Whether Mr. Wilkins is a co-inventor of subject matter claimed in the '985 patent and whether he has assigned those rights to anyone.

31.   Whether the International Trade Commission ("ITC") and ITC Administrative Law Judge Charneski ruled that Thomas Wilkins is an inventor of the '985 patent having no obligation to assign his rights to GE.

32.   Whether GE was required to and/or failed to disclose Mr. Wilkins' contributions to the '985 patent, and the work performed at Algona and Lake Benton, to the U.S. Patent and Trademark Office during prosecution of the application for the '985 patent.

33.   Whether Mr. Wilkins was obligated under the alleged C&I Agreement, the alleged ElPI Agreement, and/or California law to assign to GE his ownership interest in the '985 patent and the invention covered by the '985 patent.

34.   When Mr. Wilkins first asserted an ownership right to the '985 patent and the invention covered by the '985 patent.

35.   Whether Mr. Wilkins refused to assign his purported rights in the '985 patent when GE requested he do so, and whether GE made such a request in 2010.

36.   Whether GE has acted conscientiously in protecting its alleged ownership of the '985 patent, and whether GE has promptly met every challenge to the validity of the '985 patent and GE's ownership of that patent, as alleged in GE's Amended Complaint.

37.   Whether Mr. Wilkins is a co-inventor of the '985 patent and co-owns the '985 patent and inventions covered by the

1  '985 patent.

2       38.   The value of the '565 patent, and whether
3  Mr. Wilkins has wrongfully placed a cloud on the ownership and
4  title of that patent.

5       39.   The value of the '985 patent, whether Mr. Wilkins
6  has wrongfully placed a cloud on the ownership and title of that
7  patent, the financial impact of that alleged cloud on the
8  ownership and title of the '985 patent and on GE's litigation
9  with Mitsubishi, and whether that alleged cloud has wrongfully
10 interfered with GE's alleged rights to enforce its patent rights.

11      40.   Whether Mr. Wilkins has violated agreements, if
12 any, to assign to GE intellectual property developed in the
13 course of his work with Enron and GE, as well as whether any
14 assignment obligations arise under California law.

15      41.   Whether GE is entitled to a declaration that
16 Mr. Wilkins is obligated under California law and/or by contract
17 to assign to GE anything.

18      42.   Whether GE is entitled to an order of specific
19 performance that Mr. Wilkins execute all necessary documents to
20 formally assign to GE anything.

21      43.   Whether Mr. Wilkins owes any assignment
22 obligations to GE, and whether GE is entitled to an order of
23 specific performance compelling Mr. Wilkins to comply with any
24 such obligations.

25      44.   Whether, pursuant to the alleged C&I Agreement
26 and/or EIPI Agreement, Mr. Wilkins agreed that GE owns the
27 invention covered by the '985 patent and/or '565 patent, and
28 Mr. Wilkins was required to assign to GE any interest in the '985

patent and/or '565 patent and the subject matter described and claimed in the '985 patent and/or '565 patent, as alleged in GE's Amended Complaint.

45.   Whether, pursuant to the alleged C&I Agreement, Mr. Wilkins appointed any officer of GE as his attorney-in-fact to execute documents necessary to assign to GE all rights for any invention developed by Mr. Wilkins.

46.   Whether, pursuant to the alleged C&I Agreement and/or EIPI Agreement, Mr. Wilkins was constrained from licensing the '985 patent and/or the invention covered by the '985 patent to third parties.

47.   Whether, pursuant to the alleged C&I Agreement and/or EIPI Agreement, Mr. Wilkins was constrained from licensing the '565 patent and/or the invention covered by the '565 patent to third parties.

48.   Whether Mr. Wilkins breached any alleged obligations under any alleged C&I Agreement and/or EIPI Agreement as alleged in GE's Amended Complaint, and the date of any such alleged breach.

49.   Whether GE has performed or been excused from performing all of its obligations under the alleged C&I Agreement and/or EIPI Agreement.

50.   Whether as a direct and proximate result of Mr. Wilkins' alleged breaches of the C&I Agreement and/or EIPI Agreement, GE has suffered damages in excess of $75,000 exclusive of interest and costs, as alleged in GE's Amended Complaint, and the amount of any such alleged damages.

51.   Whether GE has an adequate remedy at law for

1  Mr. Wilkins' alleged breach of the alleged C&I Agreement and/or
2  EIPI Agreement, or whether GE is entitled to an order requiring
3  that Mr. Wilkins specifically perform his alleged obligation(s)
4  under those agreements.

5       52.  Whether absent injunctive relief founded on its
6  alleged C&I Agreement and/or EIPI Agreement, GE will suffer any
7  irreparable harm.

8       53.  Whether GE is entitled to the injunctive relief
9  that it seeks in its Amended Complaint based on the alleged C&I
10  Agreement and/or EIPI Agreement.

11       54.  Whether, pursuant to California law, Mr. Wilkins
12  is required to assign to GE his ownership interest in the '985
13  patent and/or '565 patent and the subject matter described and
14  claimed in the '985 patent and/or '565 patent.

15       55.  Whether Mr. Wilkins is a co-owner of the '985
16  patent and the invention covered by the '985 patent, or whether
17  Mr. Wilkins is required to assign his rights in the '985 patent
18  and the invention covered by the '985 patent to GE.

19       56.  When the "actual controversy" alleged in GE's
20  declaratory judgment claims ripened.

21       57.  Whether GE is entitled to the declaratory relief
22  that it seeks under the alleged C&I Agreement and/or EIPI
23  Agreement with regard to the '985 patent and/or the '565 patent.

24       58.  Whether Mr. Wilkins' refusal to assign
25  inventorship rights to GE in 2004 was a breach of any alleged
26  obligations.

27       59.  Whether GE suffered actionable harm under
28  Mr. Wilkins' alleged obligations due to Mr. Wilkins' 2004 refusal

to assign inventorship rights to GE, and the date of that
actionable harm.

      60.  Whether, as alleged in GE's Amended Complaint, it
was not until 2010 that GE suffered actual and appreciable harm.

      61.  Whether Mr. Wilkins is constrained under
California law from offering to license the '565 patent and/or
'985 patent and/or the subject matter claimed in the '565 patent
and/or '985 patent to third parties

      62.  Whether, pursuant to the alleged C&I Agreement,
Mr. Wilkins appointed any officer of Enron as his attorney-in-
fact to execute any documents necessary to assign to Enron all
rights to any invention made by Mr. Wilkins in the course of his
work with Enron.

      63.  Whether GE has been assigned Enron's alleged
rights under the alleged C&I Agreement.

      64.  Whether Mr. Wilkins has appointed any officer of
GE as his attorney-in-fact.

      65.  When the "actual controversy" alleged in GE's
declaratory judgment claims ripened as to the alleged appointment
of an Enron/GE officer as Mr. Wilkins' attorney-in-fact.

      66.  Whether GE is entitled to a declaration that
Mr. Wilkins has appointed any officer of GE to act as his
attorney-in-fact for the purpose of executing documents necessary
to assign to GE all rights to any invention made by Mr. Wilkins
in the course of his work with Enron or GE.

      67.  Whether, pursuant to the alleged C&I Agreement,
Mr. Wilkins agreed that GE owns any invention made by Mr. Wilkins
during the course of his work with Enron and Mr. Wilkins was

1  required to assign to GE any interest claims to have in such
2  inventions.

3        68.  Whether, pursuant to the alleged EIPI Agreement,
4  Mr. Wilkins was required to assign to GE any interest he claims
5  to have in any invention made by Mr. Wilkins during the course of
6  his work with GE.

7        69.  Whether, pursuant to California law, Mr. Wilkins
8  was required to assign to GE any interest he claimed to have in
9  any invention made by Mr. Wilkins during the course of his work
10  with Enron and GE.

11        70.  Whether GE is entitled to a declaration as between
12  it and Mr. Wilkins (i) that GE is the sole legal and equitable
13  owner of any invention made by Mr. Wilkins during his work with
14  Enron and GE, (ii) that Mr. Wilkins has no ownership interest in
15  any invention made by Mr. Wilkins during his work with Enron and
16  GE, and (iii) to an order that Mr. Wilkins execute any necessary
17  documents to confirm formally GE's ownership and to remove the
18  alleged cloud on GE's ownership created by his failure to do so.

19        71.  Whether "[Mr.] Wilkins merely informed GE's German
20  engineers . . . on prior art [as to the '985 patent]," as alleged
21  by GE, or whether Mr. Wilkins actually informed those engineers
22  of the inventions he had conceived between 1998 and 2001, before
23  Mr. Wilkins quit working with Zond and Enron, and before
24  Mr. Wilkins' second period of work with Enron began in 2002.

25        72.  Whether Mr. Wilkins' contributions to the '565
26  patent were "first thought of by [Mr. Wilkins] on May 31, 2002
27  (while he was working for GE)," as alleged by GE, or whether
28  Mr. Wilkins' inventive contributions to the '565 patent were

1   actually conceived between 1998 and 2001, before Mr. Wilkins quit

2   working with Zond and Enron, and before Mr. Wilkins' second

3   period of work with Enron began in 2002.

4           73.   Whether Mr. Wilkins assigned or agreed to assign

5   his rights in the '985 patent or '565 patent, or his ideas

6   described in the '985 patent or '565 patent, to Zond or Enron.

7           74.   Whether Zond and Enron acceded to Mr. Wilkins'

8   retention of rights.

9           75.   Whether Mr. Wilkins assigned or agreed to assign

10  his rights in the '985 patent or '565 patent, or his ideas

11  described in the '985 patent or '565 patent, to GE.

12          76.   Whether GE acceded to Mr. Wilkins' retention of

13  rights.

14          77.   Whether Mr. Wilkins is or was obligated to assign

15  his rights in the '985 patent or '565 patent, or his ideas

16  described in the '985 patent or '565 patent, to Zond or Enron.

17          78.   Whether Mr. Wilkins is or was obligated to assign

18  his rights in the '985 patent or '565 patent, or his ideas

19  described in the '985 patent or '565 patent, to GE.

20          79.   Whether by virtue of his inventorship, Mr. Wilkins

21  possesses an undivided ownership interest in the '565 patent and

22  the '985 patent.

23          80.   Whether GE has wrongfully interfered, and

24  continues to interfere, with Mr. Wilkins' ownership interests in

25  the '565 patent and the '985 patent.

26          81.   Whether GE's wrongful conduct has directly and

27  proximately caused injury, and will continue to cause injury, to

28  Mr. Wilkins in an amount not yet determined.

24

1          82.   Whether GE's conduct complained of was oppressive,

2   malicious, willful and/or fraudulent, and Mr. Wilkins is entitled

3   to an award of punitive damages.

4          83.   Whether GE has wrongfully claimed, and continues

5   to wrongfully claim, that it is the sole and exclusive owner and

6   assignee of the '565 patent and the '985 patent.

7          84.   Whether GE has derived, and will continue to

8   derive, substantial benefits, including licensing revenue, from

9   its wrongful claims of sole and exclusive ownership of the '565

10  patent and the '985 patent.

11         85.   Whether GE unjustly retained, and will continue to

12  retain, substantial benefits at the expense of Mr. Wilkins,

13  injuring him in an amount not yet determined.

14         86.   Whether Mr. Wilkins' alleged obligations to Enron

15  and/or GE were breached in 2004 when he refused GE's request that

16  he assign the rights in his inventions.

17         87.   Whether Mr. Wilkins asserted an ownership interest

18  in his inventions in 2004 when he refused GE's request that he

19  assign the rights in his inventions.

20         88.   Whether GE suffered "actual and appreciable harm"

21  (1) in 2004, when Mr. Wilkins refused to assign to GE the rights

22  in his inventions and the public records of the U.S. Patent and

23  Trademark Office reflected that refusal, and (2) in 2005, when

24  the '565 patent issued to Mr. Wilkins as a co-owner.   (Quotes

25  from Docket No. 76 ¶¶ 37, 38, 48, 49, 59, 64, 65, 75, 76, 86, 92,

26  99.)

27         89.   Whether GE was aware of Mr. Wilkins' potential

28  claim to the invention of the '985 patent at least as early as

1  that patent's filing date when GE listed Mr. Wilkins as an
2  inventor.

3          90.  Mr. Wilkins and Mitsubishi incorporate herein as
4  contested facts all factual allegations in his counterclaim.  GE
5  has not yet responded to Mr. Wilkins' and Mitsubishi's
6  counterclaims.  In the event that GE admits any of the factual
7  allegations in Mr. Wilkins' or Mitsubishi's counterclaims, then
8  those facts will be deemed uncontested.

9  VI.  Legal Issues.

10       Discovery has just begun, and the parties will assert other
11  legal issues that may arise or be discovered during the discovery
12  process.  Moreover, Mr. Wilkins and Mitsubishi have only recently
13  filed their counterclaims, which make numerous allegations that
14  GE has yet to admit or deny.  Any legal allegations in
15  Mr. Wilkins' or Mitsubishi's counterclaims admitted by GE will be
16  designated as undisputed legal issues.  Any legal allegations in
17  Mr. Wilkins' or Mitsubishi's counterclaims denied by GE will be
18  designated as disputed legal issues.  The parties reserve the
19  right to supplement this statement in light of the admissions and
20  denials in GE's answer.

21       A.  Uncontested.

22          1.  This Court has personal and subject-matter
23  jurisdiction over the claims in GE's amended complaint and Mr.
24  Wilkins' and Mitsubishi's counterclaims.  Jurisdiction exists
25  under 28 U.S.C. § 1332 based on the diversity of the parties and
26  the amount in controversy in excess of $75,000.

27          2.  This Court is a proper venue for this dispute.
28  Venue is proper under 28 U.S.C. § 1391.

1         3.    The parties are unable to determine whether or not

2    choice of law selection for all issues in the case can be

3    determined as a matter of law at this time.   The parties shall,

4    in the event they do not agree that the law of the forum,

5    California law, provides the substantive rule of decision for

6    issues in this diversity case applies, present all issues

7    concerning choice of law in motions that shall be filed on or

8    before September 1, 2011.   Oppositions shall be filed on or

9    before September 15, 2011.   Replies shall be filed on or before

10   September 22, 2011, and a hearing shall be held on October 3,

11   2011.

12        B.    Disputed Legal Issues[3]

13        By listing a legal issue herein, the parties do not

14   concede that the issue is purely a legal issue and not a mixed

15   issue of law and fact or an issue of fact.

16        1.    Whether the four-year limitations period set forth

17   in CAL. CODE CIV. P. § 337 applies to claims based on a written

18   contract, and whether that limitations period is applicable to

19   GE's contract claims.

20        2.    Whether the two-year limitations period set forth

21   in Cal. Code Civ. P. § 339 applies to claims based on an

22   obligation other than in writing—including claims based on

23   obligations created by California law or statute—and whether that

24

25        3    GE objects to Wilkins' and MHI's wholesale
26   incorporation of their answers and counterclaims into this
     section as it is antithetical to the purpose of a joint
27   statement, and does not assist the Court in defining the material
     issues.   Mr. Wilkins believes this statement is required in order
28   to protect his interests.

limitations period applies to GE's non-contract claims—including GE's claims based on alleged obligations created by California law or statute.

3.    Whether Mr. Wilkins' alleged obligations to GE were divisible obligations subject to the "continuing duty" or "serial breach" doctrines, and whether these doctrines apply to GE's claims.

4.    Whether, under U.S. Patent Law, a U.S. patent issues automatically to any non-assigning inventor as a co-owner, and whether this principle applies to GE's claims.

5.    Whether a patent co-owner lacks standing to bring a suit for patent infringement, absent the cooperation and joinder of all other patent co-owners, and whether this principle applies to GE's claims.

6.    Whether as a co-owner, Mr. Wilkins has no obligations to GE and at his option can license his rights in the '985 patent to Mitsubishi.

7.    Wilkins and Mitsubishi filed answers and counterclaims on March 29, 2011.  GE is still reviewing those pleadings to determine what legal issues may be involved.

8.    Whether GE's claims against Mr. Wilkins are barred by the applicable statutes of limitation.

9.    Whether GE's claims against Mr. Wilkins are barred by estoppel, waiver, laches, acquiescence, and/or consent.

10.   Whether GE's claims against Mr. Wilkins are barred by unclean hands.

11.   Whether GE lacks standing to assert the claims against Mr. Wilkins stated in the Amended Complaint.

1   　　　　12.   Whether GE's claims against Mr. Wilkins are barred
2   by the statute of frauds.

3   　　　　13.   Whether any and all actions or omissions by
4   Mr. Wilkins are or were privileged and/or justified and/or
5   excused by the conduct or omissions by GE, barring any claims by
6   GE.

7   　　　　14.   Whether GE's claims against Mr. Wilkins are barred
8   by the statutory and common law prohibition on enforcement of
9   unconscionable contracts.

10  　　　　15.   Whether GE's alleged contracts violated state law,
11  and whether those alleged contracts are therefore illegal and
12  unenforceable.

13  　　　　16.   Whether each Plaintiff purports to have an
14  adequate remedy at law, barring any equitable relief.

15  　　　　17.   Whether Mr. Wilkins entered into any agreement to
16  assign his inventions to Enron or GE.

17  　　　　18.   Whether Mr. Wilkins was obligated under any
18  contract to assign his invention rights to GE or Enron.

19  　　　　19.   Whether Mr. Wilkins was "obligated under
20  California law to assign to Enron intellectual property developed
21  during the course of his employment with Enron."  (Quote from
22  Docket No. 76 ¶ 14.)

23  　　　　20.   Whether GE "stepped into the shoes of Enron with
24  respect to Wilkins's [alleged] obligations concerning ownership
25  and assignment of intellectual property."  (Quote from Docket
26  No. 76 ¶ 15.)  Nor was "GE . . . assigned Enron's rights under
27  the C&I Agreement."  (Quote from Docket No. 76 ¶ 90.)

28  　　　　21.   Whether Mr. Wilkins was "obligated under

29

California law to assign to GE intellectual property developed during the course of his employment with GE."   (Quote from Docket No. 76 ¶ 16.)

22.   Whether Mr. Wilkins was "obligated under the [alleged] C&I Agreement, the [alleged] EIPI Agreement, and[/or] California law to assign to GE any interest he may have in the '565 patent and the invention covered by the '565 patent." (Quote from Docket No. 76 ¶ 18.)

23.   Whether Mr. Wilkins repudiated and denied his alleged obligation to assign to GE intellectual property rights for any inventions made during his work with Enron and GE, when he refused to assign the rights in his inventions in 2004, contrary to GE's assertions in paragraph 20 of GE's amended complaint (Docket No. 76).

24.   Whether Mr. Wilkins was "obligated under the [alleged] C&I Agreement, the [alleged] EIPI Agreement, and[/or] California law to assign to GE any interest he may have in the '985 patent and the invention covered by the '985 patent." (Quote from Docket No. 76 ¶ 25.)

25.   Whether Mr. Wilkins has "wrongfully placed a cloud on the ownership and title of the '565 patent" or the '985 patent.   (Quote from Docket No. 76 ¶¶ 29, 30.)

26.   Whether Mr. Wilkins has violated any "agreements to assign to GE intellectual property developed in the course of his employment with Enron and GE" or any "obligations arising under California law."   (Quote from Docket No. 76 ¶ 31.)

27.   Whether Mr. Wilkins agreed that Enron and/or GE owns, or agreed to assign to Enron or GE, the rights in his

inventions, including his rights in the inventions of the '565 patent and the '985 patent.

28.   Whether Mr. Wilkins appointed any officer of Enron or GE as his attorney-in-fact for any purpose.

29.   Whether Mr. Wilkins was "constrained from licensing the '985 patent and/or the invention covered by the '985 patent to third parties."   (Quote from Docket No. 76 ¶¶ 35, 46.)

30.   Whether Mr. Wilkins owed or owes GE any "obligations under the [alleged] C&I Agreement."   (Quote from Docket No. 76 ¶ 36, 63.)

31.   Whether GE could have brought suit against Mr. Wilkins in 2004 when he refused to assign his inventions to GE.

32.   Whether GE also could have brought suit against Mr. Wilkins in 2005, when the '565 patent allegedly issued to Mr. Wilkins as a co-owner.

33.   Whether Mr. Wilkins owed GE any "obligations under the [alleged] EIPI Agreement."   (Quote from Docket No. 76 ¶ 47, 74).

34.   Whether Mr. Wilkins is required "pursuant to California law . . . to assign to GE any interest he claims to have in the '985 patent [or] to the invention covered by the '985 patent."   (Quote from Docket No. 76 ¶ 57.)

35.   Whether CAL. LAB. CODE § 2860 is inapplicable to the inventions of an employee.

36.   Whether CAL. LAB. CODE § 2860 and the "work-for-hire" doctrine do not apply when an employee expressly refuses to

sign a written agreement to assign the rights in his inventions, and an employer accedes to the employment relationship despite that refusal.

37.   Whether Mr. Wilkins is required "pursuant to California law . . . to assign to GE any interest he claims to have in the '565 patent [or] to the invention covered by the '565 patent."  (Quote from Docket No. 76 ¶ 84.)

38.   Whether Mr. Wilkins was or is "constrained under California law from [licensing] the '565 patent and/or the invention covered by the '565 patent to third parties."  (Quote from Docket No. 76 ¶ 84.)

39.   Whether Mr. Wilkins "agreed that GE owns any invention made by Wilkins during the course of his employment at Enron [or] that Wilkins was required to assign to GE any interest he might otherwise claim to have in such inventions."  (Quote from Docket No. 76 ¶ 95.)

40.   Whether Mr. Wilkins was or is "required to assign to GE any interest he claimed to have in any invention made by Wilkins during the course of his employment at GE."  (Quote from Docket No. 76 ¶ 96.)

41.   Whether Mr. Wilkins was or is required "pursuant to California law . . . to assign to GE any interest he claimed to have in any invention made by Wilkins during the course of his employment at Enron and GE."  (Quote from Docket No. 76 ¶ 97.)

42.   Whether CAL. LAB. CODE § 2860 and the common law "work-for-hire" doctrine do not apply retroactively to divest an employee of inventions he conceived of before his employment with an employer began.

1    43.   Whether GE is entitled to any relief that it
2  seeks.

3    44.   Whether GE's claims are barred by equitable
4  doctrines, including laches, estoppel, and unclean hands.

5    45.   Whether the '985 patent should be corrected
6  pursuant to 35 U.S.C. § 256 to add Mr. Wilkins as a co-inventor.

7    46.   Whether Mr. Wilkins and Mitsubishi are entitled to
8  a declaration that (a) Mr. Wilkins is a rightful co-owner of the
9  '985 patent and still owns his ideas described in the '985
10 patent, and (b) Mr. Wilkins has no obligation to assign his
11 rights in the '985 patent, or his ideas described in the '985
12 patent, to GE.

13   47.   Whether Mr. Wilkins is entitled to a declaration
14 that (a) Mr. Wilkins is a rightful co-owner of the '565 patent
15 and still owns his ideas described in the '565 patent, and (b)
16 Mr. Wilkins has no obligation to assign his rights in the '565
17 patent, or his ideas described in the '565 patent, to GE.

18   48.   Whether Mr. Wilkins is entitled to compensatory
19 and punitive damages for GE's conversion of his ownership
20 interests in the '565 patent and the '985 patent in an amount to
21 be determined.

22   49.   Whether Mr. Wilkins is entitled to damages for
23 GE's unjust retention of substantial benefits at the expense of
24 Mr. Wilkins' ownership interests in the '565 patent and the '985
25 patent in an amount to be determined.

26 VII. Consent to Magistrate Judge Jurisdiction.

27   1.   The parties have not consented to transfer the
28 case to the Magistrate Judge for all purposes, including trial.

33

VIII.      Corporate Identification Statement.

1.    Any nongovernmental corporate party to any action in this court shall file a statement identifying all its parent corporations and listing any entity that owns 10% or more of the party's equity securities.  A party shall file the statement with its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX.   Status of All Matters Which are Presently Set Before the Court.

1.    Currently pending before the Court are: (1) GE's motion for a preliminary injunction (Docket No. 15); (2) GE's motion for discovery sanctions (Docket No. 97) and (3) GE's application for contempt against Wilkins (Docket No. 90).  A hearing on GE's motion for a preliminary injunction was held on October 18, 2010.[4]  A hearing on GE's motion for discovery sanctions was held on January 24, 2011, and the motion was denied from the bench. No other matters are presently set before the Court.  Plaintiff GE will notify the Court and all parties by Monday, April 11, 2011 about the status of their motion for contempt.

---

[4] The Court extended the party's stipulated temporary restraining order ("TRO") (Docket No. 83) from the bench on October 18, 2010, and indicated that the TRO would be converted into a preliminary injunction after GE submitted proposed findings of fact and conclusions of law and Mr. Wilkins submitted comments on that proposal.  Hrg. Tr. 73:3-10 (Oct. 18, 2010). The parties filed their respective submissions on October 25 and October 26.  Docket Nos. 94, 95.  The Court also decided to "give Mitsubishi an opportunity to provide input on the appropriate scope of the injunction Plaintiff is entitled to...."  Docket No. 161 at 7.  Mitsubishi filed its submission on February 18, 2011. Docket No. 164.

X.    Discovery Plan and Cut-Off Date.

     A.    Cut-off dates and proposed discovery schedules

          1.    Mr. Wilkins and Mitsubishi believe that it may be necessary to depose each of the witnesses identified in Mr. Wilkins' initial disclosures, as well as the dozens of witnesses identified in GE's and Mitsubishi's initial disclosures—several of whom are believed to reside in Germany. GE notes that certain of those individuals have already been deposed in the ITC action and GE is willing to enter into a stipulation whereby those depositions (and trial testimony) would not have to be re-taken in this matter.

          2.    Mr. Wilkins' and Mitsubishi's responses to GE's Amended Complaint include various counterclaims requiring additional, expanded discovery.  For example, Mr. Wilkins seeks to correct inventorship of the '985 patent pursuant to 35 U.S.C. § 256.  Mr. Wilkins also has brought claims seeking damages for GE's actions detrimental to Mr. Wilkins' interests.  The determination of inventorship and appropriate damages against GE, as well as other issues in the case, may require expert witnesses.  Mr. Wilkins and Mitsubishi believe that such expert witness involvement will require additional time for discovery, and the proposed discovery schedule, below, accounts for these considerations.

          3.    Mr. Wilkins and Mitsubishi anticipate needing to obtain discovery of GE and Enron documents located in Germany; and perhaps needing to take depositions of one or more of the inventors named on the face of the '985 patent—all of whom are believed to reside in Germany.  It is well-recognized that

discovery in Germany under the Hague Convention is arduous and time-consuming.  *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 404 (E.D. Mich. 2003) ("No doubt obtaining evidence under the Hague Convention is more difficult and more expensive than obtaining discovery within the United States."); *Doster v. Schenk*, 141 F.R.D. 50, 54 (M.D.N.C. 1991) ("It has been recognized that use of the Convention procedures in Germany can involve considerable time and expense."); *see also* ABA Section of Antitrust Law, *Obtaining Discovery Abroad*, 127-155 (2d ed. 2005).  The proposed discovery schedule also accounts for these considerations.

      B.    Proposed changes in the limits on discovery imposed by Fed.R.Civ.P. 26(b); 30(a)(2)(A), (B) or (C); 30(d); or 33(a)

      1.    Mr. Wilkins and Mitsubishi anticipate requiring more than ten fact depositions per side, as GE has identified many more than ten witnesses in its initial disclosures, and Mitsubishi's initial disclosures identify additional witnesses. Mr. Wilkins requests that the Court at the conference initially increase the number of oral depositions he may take to 25, subject to his right to seek further depositions if an appropriate showing is made.

      2.    GE objects to increasing the number of depositions to more than 10.  GE believes that the relevant witnesses were already deposed, and gave trial testimony, in the ITC action.  GE is willing to enter into a stipulation whereby those depositions (and trial testimony) would not have to be re-taken in this matter.

      3.    The Court has resolved the differences among the

parties to expand the number of depositions which may be taken in this case to 20 witnesses per side.  At this time, without prejudice, the Court finds that this is a three-sided case.  Each side may take 20 depositions, including expert depositions within the 20.

     C.    Need for a Protective Order

     1.    The parties believe that the Court should issue a Protective Order to protect the sensitive personal, financial, and business information from broad disclosure.  GE has suggested using standard protective order forms on the U.S. District Court for the Northern District of California website.  Mr. Wilkins and Mitsubishi are reviewing those forms at this time.

     D.    Any Issues or Proposals Relating to the Timing, Sequencing, Phasing, or Scheduling of Discovery

     1.    Service of Documents and Delivery of Correspondence:

     2.    The parties agree to serve all documents and transmit all correspondence between counsel via e-mail, without confirmation copies, and service by e-mail shall be treated as service by hand if sent before 5:00 PM (California time) (except for exceptionally large documents that may exceed customary Internet firewall limits, which shall be served by overnight courier).  The parties propose that counsel for each party may designate an e-mail alias that the opposing party shall use for the delivery of all correspondence.  This agreement does not affect documents that are filed with the Court via ECF.

///

///

**E.   Whether the Parties Anticipate the Need to Take Discovery Outside the United States**

1.   As previously noted, testimony, documents, and/or other discovery from sources in Germany may prove necessary. Additionally, Mr. Wilkins' work with Enron and GE took him to Germany on two occasions.  The records of that work, and also the communication that Mr. Wilkins had with German employees of Enron and GE, may be located in Germany.  Mr. Wilkins and Mitsubishi believe that Mr. Wilkins is entitled to discovery of that information.

**F.   Video and/or Sound Recording of Depositions**

1.   The parties expect that video and sound recording of depositions may be required.

**G.   Discovery Relating to Electronic, Digital and/or Magnetic Data**

1.   Mr. Wilkins has notified GE that he will seek to discover all relevant computer-based information and electronically stored information ("ESI") in its possession, such as, for example, documents, slide presentations, and email communications.  Mitsubishi agrees that such discovery will be necessary.  A detailed plan for the discovery of computer-based information would be premature at this time, because the parties have not been able to confer sufficiently on that subject. Mr. Wilkins and Mitsubishi will work with GE to develop such a discovery plan.

2.   Mr. Wilkins has specifically notified GE of his intention to seek discovery of certain electronic materials received by GE from Enron, including such materials stored outside of the United States.  At the Rule 26(f) Conference,

counsel for GE stated that he believed such materials—in the form of emails—had already been collected for production.  However, Mr. Wilkins' counsel responded by noting that during over three years of litigation with Mitsubishi, GE has consistently refused to collect and produce such materials.  Mr. Wilkins' counsel requested that GE work diligently to resolve the issue of the Enron-GE electronic materials given the particularly abbreviated period for discovery likely to be permitted in this case.

3.    GE states that electronic documents have been collected for production, and were part of the ITC production.  Mr. Wilkins' counsel's statement that "GE has consistently refused to collect and produce such materials" is inaccurate.  GE will meet and confer with Mr. Wilkins' or Mitsubishi's counsel if any dispute arises in this action.

4.    The parties are presently unaware of any information deleted after this suit began.

H.    Overall Case Schedule.

1.    Mid-discovery status conference shall be held July 14, 2011 at 8:15 a.m. in Courtroom 3.  The parties may appear telephonically.

2.    The parties are ordered to complete all non-expert discovery on or before November 23, 2011.

3.    The parties are directed to disclose all expert witnesses, in writing, on or before December 14, 2011.  Any rebuttal or supplemental expert disclosures will be made on or before January 13, 2012.  The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a)(2) regarding their expert designations.  Local Rule 16-240(a) notwithstanding,

1 the written designation of experts shall be made pursuant to F.

2 R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all

3 information required thereunder.  Failure to designate experts in

4 compliance with this order may result in the Court excluding the

5 testimony or other evidence offered through such experts that are

6 not disclosed pursuant to this order.

7       4.   The parties are ordered to complete all discovery,

8 including experts, on or before February 29, 2012.

9       5.   The provisions of F. R. Civ. P. 26(b)(4) shall

10 apply to all discovery relating to experts and their opinions.

11 Experts shall be fully prepared to be examined on all subjects

12 and opinions included in the designation and their reports, which

13 shall include every opinion to be rendered and all reasons for

14 each opinion.  Failure to comply will result in the imposition of

15 sanctions.

16 XI.  Pre-Trial Motion Schedule.

17      1.   All Non-Dispositive Pre-Trial Motions relating to fact

18 discovery, including any discovery motions, shall be filed on or

19 before December 5, 2011, and heard on January 9, 2012, at 9:00

20 a.m. before Magistrate Judge Jennifer L. Thurston.  The parties

21 request that the motions be heard in Fresno.

22      2.   All Non-Dispositive Pre-Trial Motions regarding expert

23 discovery shall be filed on or before February 1, 2012, and heard

24 on March 5, 2012, at 9:00 a.m. before Magistrate Judge Jennifer

25 L. Thurston.  The parties also request that these motions be

26 heard in Fresno.

27      3.   In scheduling such motions, the Magistrate

28 Judge may grant applications for an order shortening time

1    pursuant to Local Rule 142(d).  However, if counsel does not
2    obtain an order shortening time, the notice of motion must comply
3    with Local Rule 251 and this schedule.

4          4.    All Dispositive Pre-Trial Motions are to be
5    filed no later than February 8, 2012, and will be heard on April
6    2, 2012, at 10:00 a.m. before the Honorable Oliver W. Wanger, in
7    Courtroom 3, 7th Floor.  In scheduling such motions, counsel
8    shall comply with Local Rule 230.

9    XII. Pre-Trial Conference Date.

10         1.    May 7, 2012, at 11:00 a.m. in Courtroom 3, 7th Floor,
11   before the Honorable Oliver W. Wanger.

12         2.    The parties are ordered to file a Joint Pre-
13   Trial Statement pursuant to Local Rule 281(a)(2).

14         3.    Counsel's attention is directed to Rules 281
15   and 282 of the Local Rules of Practice for the Eastern District
16   of California, as to the obligations of counsel in preparing for
17   the pre-trial conference.  The Court insists upon strict
18   compliance with those rules.

19   XIII.    Motions - Hard Copy.

20         1.    The parties shall submit one (1) courtesy paper copy to
21   the Court of any motions filed.  Exhibits shall be marked with
22   protruding numbered or lettered tabs so that the Court can easily
23   identify such exhibits.

24   XIV. Trial Date.

25         1.    June 19, 2012, at the hour of 9:00 a.m. in Courtroom 3,
26   7th Floor, before the Honorable Oliver W. Wanger, United States
27   District Judge.

28         2.    This is a jury trial.

3.    Counsels' Estimate Of Trial Time:

a.    Ten days.

4.    Counsels' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 285.

XV.   Settlement Conference.

1.    A Settlement Conference is scheduled for February 8, 2012, at 10:00 a.m. in Bakersfield or Fresno, at the option of the Honorable Jennifer L. Thurston, United States Magistrate Judge, and the parties.

2.    Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

3.    Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship.  If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

4.    Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers, a confidential settlement conference statement.  The

42

statement should not be filed with the Clerk of the Court nor
served on any other party.  Each statement shall be clearly
marked "confidential" with the date and time of the Settlement
Conference indicated prominently thereon.  Counsel are urged to
request the return of their statements if settlement is not
achieved and if such a request is not made the Court will dispose
of the statement.

    5.   The Confidential Settlement Conference
Statement shall include the following:

        a.   A brief statement of the facts of the
case.

        b.   A brief statement of the claims and
defenses, i.e., statutory or other grounds upon which the claims
are founded; a forthright evaluation of the parties' likelihood
of prevailing on the claims and defenses; and a description of
the major issues in dispute.

        c.   A summary of the proceedings to date.

        d.   An estimate of the cost and time to be
expended for further discovery, pre-trial and trial.

        e.   The relief sought.

        f.   The parties' position on settlement,
including present demands and offers and a history of past
settlement discussions, offers and demands.

XVI. Request For Bifurcation, Appointment Of Special Master,
Or Other Techniques To Shorten Trial.

    1.   None.

XVII.  Related Matters Pending.

    1.   The '985 patent, which GE has identified in its Amended

1  Complaint, is at issue in two pending proceedings that do not

2  involve Mr. Wilkins.

3      2.    In the first proceeding, *In the Matter of Certain*

4  *Variable Speed Wind Turbines*, U.S. Int'l Trade Comm'n Inv.

5  No. 337-TA-641, GE accused Mitsubishi of infringing claim 15 of

6  the '985 patent and sought to exclude Mitsubishi's wind turbines

7  from importation on that basis.  GE appealed the Commission's

8  decision and the Court of Appeals heard arguments on GE's appeal

9  on February 10, 2011, and an opinion is expected in the coming

10  months.  Mr. Wilkins and Mitsubishi contend that the ITC

11  determined that GE was not entitled to the relief that it sought,

12  and of particular relevance to this case, the Commission and ITC

13  Administrative Law Judge Charneski also determined that

14  Mr. Wilkins is an inventor of the '985 patent, with no obligation

15  to assign his rights to GE.  GE disputes Mr. Wilkins and

16  Mitsubishi's interpretation of the ITC rulings as discussed in

17  the motion for preliminary injunction.

18      3.    In the second proceeding, *General Electric Co. v.*

19  *Mitsubishi Heavy Industries, Ltd.*, No. 2:09-cv-00229 (S.D. Tex.),

20  GE accused Mitsubishi of infringing the same patents that it

21  asserted at the ITC.  In its answer, Mitsubishi pleaded that the

22  '985 patent is invalid, that GE's claims under the '985 patent

23  should be dismissed for lack of standing (because Mr. Wilkins—a

24  co-inventor and co-owner—never assigned his rights to GE and was

25  not joined to the suit), and that the '985 patent is

26  unenforceable due to GE's inequitable conduct in removing

27  Mr. Wilkins' name from the patent application that issued as the

28  '985 patent.  *Id.* at DE 5 ¶¶ 39, 45, 47-50.  The Southern

District of Texas case is currently stayed pending resolution of the ITC Investigation.

       4.    The '565 patent is not at issue in any other litigation.

XVIII.  Compliance With Federal Procedure.

    1.    The Court requires compliance with the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.  To aid the court in the efficient administration of this case, all counsel are directed to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and keep abreast of any amendments thereto.

XIX. Effect Of This Order.

    1.    The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent scheduling conference.

    2.    Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

///

///

45

1        3.    Failure to comply with this order may result in

2   the imposition of sanctions.

3

4   DATED:   April 19, 2011.

5

6                                    /s/ Oliver W. Wanger
                                    Oliver W. Wanger
7                           UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46