**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY,** | **1:10-cv-00674-OWW-JLT** |
| **Plaintiff,** | **ORDER RE: MOTION TO DISMISS COUNTERCLAIMS (Doc. 192)** |
| **v.** | |
| **THOMAS WILKINS,** | |
| **Defendant.** | |

## I. __INTRODUCTION__.

Plaintiff General Electric Company("Plaintiff") proceeds with an action against Defendant Thomas Wilkins ("Defendant") for damages and injunctive relief.  On March 1, 2011, the court granted the motion to intervene filed by Mitsubishi Heavy Industries Ltd. and Mitsubishi Power Systems America, Inc. ("Mitsubishi") pursuant to Federal Rule of Civil Procedure 24(a)(2).  (Docs. 161, 166).[1]

Plaintiff filed its fist amended complaint ("FAC") on October 13, 2010.  (Doc. 76).  Defendant filed an answer to the FAC and a counterclaim against Plaintiff on March 29, 2011.  (Doc. 177). Mitsubishi filed an answer to the FAC and a counterclaim against Plaintiff on March 29, 2011.  (Doc. 178).

---

[1] Plaintiff and Mitsubishi are currently litigating infringement actions concerning some of the technology at issue in this case before the United States International Trade Commission ("ITC") and the U.S. District Court for the Southern District of Texas.

Plaintiff filed a motion to dismiss Defendant's counterclaim and Mitsubishi's counterclaim on May 17, 2011. (Doc. 192). Defendant filed opposition to the motion to dismiss on June 13, 2011. (Doc. 220). Mitsubishi filed opposition to the motion to dismiss on June 13, 2011. (Doc. 219). Plaintiff filed a reply on June 20, 2011. (Doc. 230).

## II. **FACTUAL BACKGROUND**.

Plaintiff is a developer of energy technologies and the holder of U.S. Patent Nos. 6,921,985 ("'985 Patent") and 6,924,565, ("the'565 patent") (collectively "the subject technology"). Defendant is listed as one of seven inventors of the '565 Patent and asserts that he is an unnamed co-inventor of the '985 Patent. Defendant claims an ownership interest in both patents.

Defendant was employed as an electrical engineer by Enron Wind Corp. ("Enron"), Plaintiff's predecessor in interest, intermittently from approximately April 1998 to May 2002. Defendant's job responsibilities while employed by Enron included the design, development, installation and testing of wind turbine generators.

As a condition of his employment with Enron, Defendant signed a Confidentiality and Inventions Agreement ("C&I Agreement"). The C&I Agreement provided, *inter alia*, that Defendant agreed

> "upon the Company's request and without the need for further consideration, to execute any and all documents and take such actions which may be necessary in the Company's judgment to assign all rights to any Invention Idea to the Company and to obtain patent or other intellectual property protections for any Invention Idea."

Under the terms of the C&I Agreement, Defendant was obligated to assign any interest in inventions created within the scope of his

**2**

employment duties to Enron.  Enron filed for bankruptcy protection in 2002. In May 2002, Plaintiff purchased Enron's assets, including its intellectual property.

Defendant became Plaintiff's employee in May of 2002.  A requirement of employment was that Defendant sign Plaintiff's Employee Innovation and Proprietary Information Agreement ("EIPI Agreement").  The EIPI Agreement provided, *inter alia*, that Defendant agreed "to disclose and assign to the Company (or as the Company may direct) as its exclusive property, all inventions, discoveries, innovations, improvements, trade secrets and technical or business information which [he] may solely or jointly develop, conceive, reduce to practice or author during the period of [his] employment."  Under the terms of the EIPI Agreement, Defendant was obligated to assign any interest in inventions created within the scope of his employment to Plaintiff.  Defendant was also required to sign an acknowledgment that he was required to comply with the policies described in the guide: "GE Policies. Integrity: The Spirit the Letter of our Commitment" ("GE Policy Guide"), which specified Defendant's obligations to protect and assign intellectual property Defendant worked on or invented in the course of his work for Defendant.

During the term of his employment, Defendant served as Plaintiff's lead power systems electrical engineer in California. His job was to develop new designs for wind turbine equipment.  On May 31, 2002, Defendant first conceived the invention underlying the '565 Patent.  Plaintiff does not allege when the invention underlying the '985 Patent was first conceived, or who first thought of it. Defendant voluntarily resigned from Plaintiff's

**3**

1    employ in December 2002.

2        Plaintiff applied for the '565 and '985 Patents after
3    Defendant terminated his employment with Plaintiff.  In February
4    2004, Plaintiff requested that Defendant sign documents in
5    connection with Plaintiff's application for the '565 Patent, but
6    Defendant refused.  Defendant has never signed an assignment
7    expressly transferring his rights in the '565 Patent to Plaintiff,
8    despite Plaintiff's requests that he do so.  Plaintiff did not seek
9    an assignment from Defendant in connection with the '985 Patent.

10       In 2009, Defendant purported to license his interest in the
11   '985 Patent to Mitsubishi; Mitsubishi and Plaintiff are currently
12   litigating infringement actions concerning the '985 patent before
13   the ITC and the U.S. District Court for the Souther District of
14   Texas.  In May 2010, Defendant informed Plaintiff that he was
15   offering to license the '565 Patent to others.  Defendant refused
16   Plaintiff's request to cease and desist such conduct.

17                    **III.  LEGAL STANDARD.**

18       Dismissal under Rule 12(b)(6) is appropriate where a
19   complaint or counterclaim lacks sufficient facts to support a
20   cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,*
21   901 F.2d 696, 699 (9th Cir.1990).  To sufficiently state a claim to
22   relief and survive a 12(b)(6) motion, the pleading "does not need
23   detailed factual allegations" but the "[f]actual allegations must
24   be enough to raise a right to relief above the speculative level."
25   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels
26   and conclusions" or a "formulaic recitation of the elements of a
27   cause of action will not do." *Id*.  Rather, there must be "enough
28   facts to state a claim to relief that is plausible on its face."

                              **4**

*Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock,* 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents

**5**

incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### IV. DISCUSSION.

### A. Statute of Limitations

#### 1. The 565' Patent

Plaintiff contends that Defendant's co-ownership claims are time-barred. Plaintiff contends that the '565 patent issued on August 2, 2005 "identifying General Electric as the sole owner," and invokes the four-year statute of limitations set forth in California Code of Civil Procedure § 343. (Doc. 192, Motion to Dismiss at 7). Plaintiff's contention is factually and legally incorrect. The '565 patent lists Defendant as an inventor. Accordingly, Defendant has been a presumed owner of the '565 patent since its issuance. 37 C.F.R. § 3.73("an inventor is presumed to be the owner of a patent application, and any patent that may issue therefrom, unless there is an assignment"). Plaintiff first attempted to extinguish Defendant's interest in the '565 patent with the commencement of this action on April 15, 2010. Defendant's co-ownership claim to the '565 Patent is not time barred.

In its reply, Plaintiff argues that "Wilkins had clear reason to suspect that GE viewed itself as...[the] sole owner" of the '565 patent when it issued, because GE had sought an assignment from him. (Doc. 230, Reply at 6). Assuming *arguendo* Plaintiff's contention is correct, the fact remains that Defendant was a presumed owner of the '565 patent upon its issuance even if he "suspected" that Plaintiff believed he was not entitled to

**6**

1    ownership rights.   Plaintiff further contends that Defendant

2    "suffered actual and appreciable harm due to his inability to

3    practice or license the patent without ownership rights," but

4    offers no legal or factual support of this contention. (Id. at 7).

5    As a presumed owner, Defendant could have exercised his rights in

6    the '565 Patent at any time after its issuance.   Plaintiff's motion

7    to dismiss on statute of limitations grounds is DENIED as to

8    Defendant's co-ownership claim to the '565 patent.

9         **2. The '985 Patent**

10        Pursuant to California's "discovery rule," as a general

11   matter, a cause of action does not accrue until the point in time

12   at which a party knew, or should have known, all material facts

13   essential to show the elements of her cause of action.   *See, e.g.,*

14   *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 890-91

15   (Cal. 2007) (discussing an exception to the discovery rule).   The

16   principal purpose of the discovery rule is to protect aggrieved

17   parties who, with justification, are ignorant of their right to

18   sue.   *Id*. at 894.   California's discovery rule embodies the

19   principle that statutes of limitations should not be interpreted so

20   as to bar a victim of wrongful conduct from asserting a cause of

21   action before he could reasonably be expected to discover its

22   existence.   *Id*.

23        Unlike the '565 patent, Defendant is not named as an inventor

24   in the '985 patent.   Defendant avers that he did not discover the

25   basis for his claims arising out of the '985 patent upon the

26   patent's issuance.   Plaintiff contends that Defendant "had

27   constructive knowledge of his supposed co-ownership rights when the

28   '985 patent issued on July 26, 2005, with GE again listed on the

**7**

face of the patent as sole assignee and owner." (Doc. 192, Motion to Dismiss at 7). Plaintiff cites *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 838, 839-40 (Fed. Cir. 2009) and *Wise v. Hubbard*, 769 F.2d 1, 1-3 (1st Cir. 1985) for the proposition that issuance of the '985 patent established Defendant's constructive knowledge of his claim for relief in 2005.  (Doc. 192, Motion to Dismiss at 7).[2]

Defendant notes that Plaintiff's authorities stand for nothing more than the proposition that Defendant had constructive notice of the existence of the '985 Patent upon its issuance, as distinguished from notice of the facts giving rise to his cause of action.  Defendant cites *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1398 (9th Cir. 1991) for the proposition that knowledge of a patent's existence is not the same as knowledge of a cause of action based on conduct underlying issuance of the patent.  (Doc. 220, Def.'s Opp. at 4).  *General Bedding* is persuasive.  As the Ninth Circuit reasoned:

> Issuance of a patent and recordation in the Patent Office constitute notice to the world of its existence. Appellant does not dispute that the issuance of the patent in 1980 gave it constructive notice of that patent. Appellant contends, however, that knowledge of the patent does not constitute constructive notice of appellant's claims against the defendants.
>
> Appellant argues that because Brandau's name was not on the patent, a reasonable person might not infer from the patent's existence that fraud had occurred. The patent could instead be the result of an independent discovery by Echevarria. We find this argument compelling, given

---

[2] In a footnote, Plaintiff contends that Plaintiff's state law tort claims are also time-barred.  Plaintiff cannot carry the burden of establishing its affirmative defense in a single, conclusory footnote.  Further, because the court is unable to discern the nature of Defendant's tort claims due to pleading deficiencies discussed below, resolving Plaintiff's statute of limitations defense to such claims at this stage in the proceedings is inappropriate.

appellant's allegation that Brandau was involved in the fraud. Brandau was apparently the only employee of General Bedding involved in the investigation of the application of tubes to waterbeds. Viewing the evidence in the light most favorable to appellant, only Brandau knew the details of his research and cooperation with Echevarria. In that case, only Brandau could have known if the patent was for the same design. Because only Brandau would have been alerted by the design, arguably only Brandau should have been alerted by this patent. What was most likely to alert the other employees of General Bedding -- Brandau's name - was absent from the patent.

The patent may also have put General Bedding on constructive notice if it should have alerted General Bedding of the need to inquire further...Yet, for the reasons discussed above, it is not clear that a reasonable person would investigate merely because this patent was issued. Although the patent application was filed soon after Brandau worked with Echevarria, Brandau's name was not on it. It was not necessarily unusual for Echevarria to patent such a design. Many inventions and discoveries are made soon after unsuccessful research. Thus, a reasonable person might not suspect fraud and investigate.

The fact that the evidence would also support an inference that General Bedding was on constructive notice, even if such an inference is stronger, is not a sufficient basis for granting summary judgment.

*General Bedding Corp.*, 947 F.2d at 1398 (citations omitted).

Plaintiff has not carried its burden of establishing that Defendant had reason to know of his claims concerning the '985 Patent by virtue of its issuance. Unlike Plaintiff's conduct with respect to the '565 patent, Plaintiff did not seek an assignment from Defendant in connection with the '985 patent. In order for Defendant to have known the basis for his claims arising out of the '985 patent, Defendant would have had to scour the Patent Office's records for all patents issued to Plaintiff each year and then review the substance of each patent to determine whether he should have been named as an inventor. Based on the current record,

1  imposition of such an onerous burden on Defendant is not

2  reasonable. Plaintiff's motion to dismiss Defendant's co-ownership

3  claims arising out of the '985 Patent is DENIED, without prejudice.

4  **B. Preemption**

5  The preemptive scope of federal patent law is governed by the

6  decisional law of the United States Supreme Court and the United

7  States Court of Appeal for the Federal Circuit. *E.g.,*

8  *Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed.

9  Cir. 2005) ("Federal Circuit law governs whether federal patent law

10 preempts a state law claim"); *see Bonito Boats v. Thunder Craft*

11 *Boats*, 489 U.S. 141, 146 (1989) (landmark Supreme Court case

12 discussing preemptive scope of federal patent law). State law tort

13 claims that frustrate the objectives embodied in the federal patent

14 scheme are subject to conflict preemption. *Ultra-Precision*, 411

15 F.3d at 1376; *Bonito Boats*, 489 U.S. at 146; *Aronson v. Quick Point*

16 *Pencil* Co., 440 U.S. 257, 266 (1979) (state law preempted if it

17 "stands as an obstacle to the accomplishment and execution of the

18 full purposes and objectives of" federal patent law). The

19 objectives of Congress reflected in federal patent law include

20 seeking to foster and reward invention, promoting disclosure of

21 inventions to stimulate further innovation and to permit the public

22 to practice the invention once the patent expires, promoting the

23 stringent requirements for patent protection to assure that ideas

24 in the public domain remain there for the free use of the public,

25 providing a clear federal demarcation between public and private

26 property, and promoting nationwide uniformity in patent law.

27 *Ultra-Precision*, 411 F.3d at 1378.

28 ///

**10**

1    A state law tort claim is preempted by federal patent law if,

2  in light of the claim's elements and the remedy sought, *University*

3  *of Colo. Found., Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1371

4  (Fed. Cir. 1999) (examining state law tort claim's elements and

5  remedy sought in adjudicating preemption defense), the claim seeks

6  patent-like protection for an intellectual creation that would

7  otherwise remain unprotected as a matter of federal patent law,

8  *Bonito Boats*, 489 U.S. at 146.[3] The type of relief sought under a

9  state law tort claim is an important factor in preemption analysis.

10  *See, e.g., Cyanamid*, 196 F.3d at 1371; *see also Smith v. Healy*, 744

11  F. Supp. 2d 1112, 1128 (D. Oregon 2010) (holding quasi-contract

12  claim preempted due to the nature of damages sought under claim).

13      **1. Unjust Enrichment**

14      The elements of unjust enrichment under California law are

15  (1) the receipt of a benefit; (2) the unjust retention of the

16  benefit; (3) at the expense of another. *Peterson v. Cellco*

17  *Partnership*, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008).

18  Because California's unjust enrichment cause of action covers a

19  wide range of conduct that does not bear on federal patent

20  policies, *see Cyanamid,* 196 F.3d at 1371 (discussing unjust

21  enrichment claim under Colorado law),[4] Defendant's unjust

22

23      [3] Defendant cites *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed.
Cir. 1999) for the proposition that state law tort claims are not preempted by

24  federal patent law provided the state law cause of action includes additional
elements not found in the federal patent law. (Doc. 220, Opp. at 9-10). As *Dow*

25  *Chem.* expressly recognized, the paramount preemption inquiry is whether a tort
cause of action seeks patent-like protection. *Id.*

26

27      [4] Unjust enrichment under Colorado law entails the following elements: "(1)
at plaintiff's expense (2) defendant received a benefit (3) under circumstances

28  that would make it unjust for defendant to retain the benefit without paying")
Id. (citing *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 19-20 (Colo.
1998).

**11**

enrichment claim is not necessarily preempted, *see Ultra-Precision*, 411 F.3d at 1378, 1380 (holding that claim was preempted "as pled" while noting that party could have pled an unjust enrichment claim not subject to preemption).  Whether Defendant's claim is preempted by federal patent law depends on the nature of Defendant's theory of recovery.  *See, e.g., id.*

Defendant's unjust enrichment claim is set forth in three sentences:

> 240. Upon information and belief, GE has wrongfully claims, and continues to wrongfully claim, that it is the sole and exclusive owner and assignee of the '565 patent and the '985 patent.

> 241. Upon information and belief, GE has derived, and will continue to derive, substantial benefits, including licensing revenue, from its wrongful claims of sole and exclusive ownership...

> 242. GE unjustly retained, and will continue to retain, those benefits at the expense of Mr. Wilkins, injuring him in an amount not yet determined.

(Doc. 177, Def.'s Answer at 24).  The nature of Defendant's unjust enrichment claim is unclear, but it appears that at least a portion of Defendant's claim is preempted.

The only benefit identified in Defendant's unjust enrichment claim is "licensing revenue."  To the extent Defendant seeks to obtain a patent-like royalty from Plaintiff based on licensing revenue attributable to the '565 and '985 Patents, Defendant's unjust enrichment claim is preempted.  *E.g., Ultra-Precision*, 411 F.3d at 1382; 35 U.S.C. § 262 (2010) ("each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and

without accounting to the other owners"). To the extent Defendant has cognizable unjust enrichment claims, no such claims are discernible from the four corners of Defendant's counterclaim.

In his opposition, Defendant clarifies that his unjust enrichment claim is based on incremental benefits "attributable to [Plaintiff's] misbehavior...including the false exclusivity it created." (Doc. 220, Opp. at 10). Defendant cites *Cyanamid* for the proposition that "if Mr. Wilkin's co-ownership claims succeed, then he may recover from GE damages...for the payments he would have received from GE to secure his cooperation at the PTO." (Doc. 220, Opp. at 11).[5]   In *Cyanamid*, research conducted by two university professors provided the basis for a patent obtained by a company for a reformulated prenatal vitamin. The Federal Circuit explained:

> [E]ven assuming that the Doctors were the sole inventors of the Materna reformulation (a fact to be determined upon remand), the only financial opportunity that the University could have lost was the payment for an assignment of ownership rights in the '634 patent or a license from the University to sell the reformulated product at the time the patent issued.
>
> If the court finds that the Doctors jointly invented the reformulated product with Dr. Ellenbogen, the financial opportunity that the University could have lost was the payment that Cyanamid would have made to secure the Doctors' cooperation in filing the required documents with the PTO, such as oaths and declarations. Because federal patent law allows joint owners to practice a patented technology without accounting to the other

---

[5]   Defendant avers that this category of damages is "distinct from...disgorgement of any incremental benefits [Plaintiff] derived by wrongfully asserting that [Defendant] had no ownership interest." However, under the unjust enrichment theory articulated in Defendant's opposition, it appears that the measure of damages attributable to any alleged "false exclusivity" is the cost of obtaining either an assignment of the Defendant's ownership interests in the subject patents or an exclusive license thereunder.   (See Doc. 220, Opp. at 10-11) (discussing benefits attributable to "false exclusivity"); *Cyanamid*, 196 F.3d at 1373 (discussing benefit patent holder obtained in the market by omitting co-inventor from patent).

1
2
3
4
5
6
7

> co-owners, Cyanamid would not have needed to acquire ownership of the patent or licenses thereunder. *See* 35 U.S.C. § 262 (1994). However, in that case, the University would have been within its rights to license others under the '634 patent or to produce and sell products thereunder. *See id.* Thus, the district court could find that Cyanamid would have also paid the University for either an assignment of the University's ownership interest in the '634 patent or an exclusive license thereunder. Either arrangement would have assured Cyanamid the exclusivity, which they enjoyed during the life of the '634 patent.

*Cyanamid*, 196 F.3d at 1373.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant's unjust enrichment claim makes no distinction between the general licensing revenue Plaintiff has obtained from the '585 and '985 Patents and any portion of such revenues attributable to "false exclusivity." *Compare Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1079 (N.D. Cal. 2009) (unjust enrichment claim not preempted where theory of recovery was based on a discrete transaction allegedly tainted by misrepresentation of sole ownership of patent) *with Smith*, 744 F. Supp. 2d at 1128 (quasi-contract claim preempted where party sought only "general damages for Defendants' sales of either Plaintiffs' product or copies of the product without a license from Plaintiffs and without paying royalties to Plaintiffs"). Because Defendant's counterclaim does not suggest the nature of the incremental benefits underlying Defendant's unjust enrichment theory, but instead appears to seek patent-like royalties pertaining to all licensing revenue Plaintiff has obtained from the '585 and '985 Patents, Defendant's unjust enrichment claim is preempted as currently pled. *See, e.g., Smith*, 744 F. Supp. 2d at 1128 (claim seeking general damages preempted); *Ultra-Precision*, 411 F.3d at 1382 ("In the absence of an incremental benefit conferred, any attempt to obtain a patent-like

**14**

royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted").

Defendant's counterclaim also fails to distinguish between licensing revenue attributable to the '585 Patent and licensing revenue attributable to the '985 Patent. Defendant is a named inventor and presumed owner of the '585 Patent. 37 C.F.R. § 3.73(a) (an "inventor is presumed to be the owner of a patent application, and any patent that may issue therefrom, unless there is an assignment"). Because the market has been on notice of Defendant's status as an inventor and presumed co-owner of the '585 Patent since the date it issued, Defendant's unjust enrichment claim does not allege sufficient facts to state a plausible claim based on a "false exclusivity" theory with respect to the '585 Patent. In contrast to the '585 Patent, the '985 Patent does not list Defendant as a co-inventor. However, Defendant's unjust enrichment claim makes no distinction between alleged unjust benefits attributable to the '985 Patent and unjust benefits attributable to the '585 Patent. No cognizable theory of unjust enrichment applicable to both the '585 and '985 Patents is discernible. Defendant's unjust enrichment claim is DISMISSED, without prejudice.

### 2. Conversion

The elements of a conversion under California law are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (Cal. Ct.

**15**

App. 2010).  Even where patented subject matter is involved, it is possible to state a claim for conversion that does not implicate the interests underlying the federal patent scheme.  *See HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010) ("Because plaintiffs could establish conversion by reference to the defendants' alleged misappropriation of 'experiments, pre-publication experimental data, and non-public, pre-publication drafts of papers,' an alternative, non-patent theory exists which entitles plaintiffs to relief").  However, where a conversion claim is based on alleged misappropriation of patent rights, it is preempted by federal patent law.  *E.g., Smith v. Healy*, 744 F. Supp. 2d 1112, 1130 (D. Oregon 2010) ("Plaintiffs' proposed conversion claim does not concern Plaintiffs' tangible property but rather their intangible idea...therefore...Plaintiffs' proposed conversion claim would be preempted by patent law.");  *Bonito Boats*, 489 U.S. at 146 (states may not offer patent-like protection).

As currently pled, Defendant's claim for conversion is clearly preempted.  Defendant's conversion claim provides, in pertinent part, as follows:

> 235. By virtue of his inventorship, Mr. Wilkins possesses and undivided ownership interest in the '565 patent and the '985 patent.

> 236. By its conduct...GE has wrongfully interfered, and continues to interfere, with Mr. Wilkin's ownership interests in the '565 patent and the '985 patent.

(Doc. 177, Def.'s Answer at 23).  It is settled that the federal patent scheme "preempts any state law that purports to define rights based on inventorship."  *E.g., Cyanamid*, 196 F.3d at 1372.

**16**

1   Defendant contends that its conversion claim is not preempted

2   because it seeks to recover only incremental benefits based on

3   Plaintiff's creation of false exclusivity "by converting Mr.

4   Wilkin's rights." (Doc. 220, Opp. at 14). Assuming *arguendo* it is

5   legally possible to state a conversion claim predicated on

6   inventorship that is not preempted, Defendant's counterclaim is

7   insufficient to allege any such claim. As currently pled,

8   Defendant's conversion claim seeks compensation for Plaintiff's

9   purported interference with Defendant's inventorship interests in

10   the intellectual property embodied in the '565 and '985 patents; in

11   other words, Defendant seeks patent-like protection under the guise

12   of the tort of conversion.

13   Defendant also contends that, because the counterclaim

14   contains conclusory allegations of "oppressive, malicious, willful

15   and/or fraudulent action by GE," Plaintiff's conversion claim falls

16   outside the ambit of patent law and is not preempted. (Doc. 220,

17   Opp. at 14, n.13) (citing *Zenith Elecs. Corp. V. Exzec, Inc.*, 182

18   F.3d 1340, 1351 (Fed. Cir. 1999).[6]  *Zenith* does not support

19   Plaintiff's argument, as the portion of the opinion cited by

20   Defendant stands only for the unremarkable proposition that "there

21   is no conflict-type preemption of various state law claims based on

22   publicizing an allegedly invalid and unenforceable patent in the

23   marketplace as long as the claimant can show that the patent holder

24   acted in bad faith in publication of the patent." *Id*. Defendant's

25   conversion claim is DISMISSED, without prejudice.

26

27

28
    [6]  It appears Defendant's argument is that his conversion claim is not
    preempted because it contains additional elements not required in an infringement
    action.  *See* footnote 3, supra.

**17**

**C. Mitsubishi's Counterclaims**

**1. Standing Under Section 35 U.S.C. § 256**

Plaintiff contends that Mitsubishi lacks standing to assert a correction of inventorship claim pursuant to 35 U.S.C. § 256. Plaintiff cites no apposite authority. Instead, Plaintiff cites a slew of cases that stand for the general proposition that a third party lacks standing to assert another entities' rights. (Doc. 192, Motion to Dismiss at 8-9). None of Plaintiffs's authorities pertains to the unique language of section 256, which provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing *of all parties concerned* and the Director shall issue a certificate accordingly.

35. U.S.C. 256 (2011) (emphasis added).

In interpreting the broad language contained in section 256, the Federal Circuit has held that a concerned party can pursue a claim under section 256 provided that the requirements for constitutional standing--namely injury, causation, and redressability--are satisfied. *Chou v. Univ. of Chi. & Arch Dev. Corp.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001); *Larson v. Correct Craft, Inc.,* 569 F.3d 1319, 1326 (Fed. Cir. 2009). In *Chou*, the Federal Circuit explained:

> an expectation of ownership of a patent is not a prerequisite for a putative inventor to possess standing

1
2
3
4
5
6
7

> to sue to correct inventorship under § 256.  The statute imposes no requirement of potential ownership in the patent on those seeking to invoke it. We have previously interpreted § 256 broadly as a "savings provision" to prevent patent rights from being extinguished simply because the inventors are not correctly listed. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349, 47 U.S.P.Q.2D (BNA) 1657, 1662 (Fed. Cir. 1998). The same considerations apply here. Chou should have the right to assert her interest, both for her own benefit and in the public interest of assuring correct inventorship designations on patents. The interest of both inventors and the public are thus served by a broad interpretation of the statute.

8
9
10
11
12
13
14
15
16
17
18
19
20

254 F.3d at 1358.  In light of the broad construction the Federal Circuit has afforded section 256, and in light of the fact that Mitsubishi is an assignee of the '985 patent that has satisfied constitutional standing requirements, Mitsubishi has standing to pursue a section 256 claim. *See id., see also Ethicon v. United States Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998) (licensee of purported unnamed inventor permitted to pursue section 256 claim); *Xechem Int'l., Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1332 (Fed. Cir. 2004) (noting that assignee may be necessary party to section 256 action). Plaintiff's motion to dismiss Mitsubishi's counterclaim under section 256 for lack of standing is DENIED.

21
22
23
24

### 2. 28 U.S.C. § 1659

Plaintiff seeks dismissal of Mitsubishi's counterclaim for declaratory judgment concerning ownership of the '985 patent based on 28 U.S.C. § 1659.  Section 1659 provides:

25
26
27
28

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930 [19 USCS § 1337], at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim

**19**

> that involves the same issues involved in the proceeding
> before the Commission, but only if such request is made
> within--
>     (1) 30 days after the party is named as a respondent
> in the proceeding before the Commission, or
>     (2) 30 days after the district court action is filed,
> whichever is later.

Plaintiff complains that Mitsubishi is precluded from alleging that

Wilkins is a co-owner of the '985 patent because

> that claim is already pending in earlier-filed litigation
> pending between GE and MHI in the Southern District of
> Texas.  To date, however, the parties have not litigated
> those allegations in Texas because MHI invoked the
> automatic stay afforded by 28 U.S.C. § 1659—and as
> recently as September 2010, MHI refused to respond to an
> offer from GE to lift that stay.  The Texas action will,
> therefore, remain stayed until the ITC concludes its
> investigation involving the '985 patent, including
> through any appeals.
>
> Having secured a stay of the Texas action under § 1659,
> MHI cannot seek to litigate its Texas noninfringement
> defenses in this case—one in which GE has not, and
> cannot, press its stayed infringement claims under the
> '985 patent.  It would be both extremely unfair, a
> violation of the claim-splitting doctrine, and in
> violation of § 1659, to permit MHI to do so.

(Doc. 192, Motion to Dismiss at 9-10) (citations omitted).

Section 1659 does not authorize dismissal of a claim that

involves the same issues involved in a proceeding before the ITC.

The remedy contemplated by section 1659 is a stay.  Plaintiff has

not sought a stay under section 1659 and is precluded from doing so

at this point in time pursuant to section 1659's own terms.

Plaintiff's citation to *Adams v. Cal. Dept. of Health Servs.*,

487 F.3d 684, 689 (9th Cir. 2007) is of no avail.  In *Adams,* the

Ninth Circuit held:

> The district court acted within its discretion in
> dismissing Adams's duplicative complaint with prejudice
> and preventing her from fragmenting a single cause of
> action and litigating piecemeal the issues which could

have been resolved in one action.

*Id.* at 694.  Here, Mitsubishi has not filed a duplicative complaint in an attempt to fragment a single cause of action into piecemeal litigation.   To the contrary, Plaintiff has invited the scenario currently faced by the parties by initiating a third proceeding in this court that implicates Mitsubishi's rights.

Nor is *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) helpful to Plaintiff.   Plaintiff cites *Princo* for the proposition that "the purpose of § 1659 is to prevent separate proceedings on the same issues occurring at the same time." However, Plaintiff has already thwarted the purpose embodied in section 1659 by initiating the instant lawsuit, which necessarily requires adjudication of ownership issues already pending in at least two other proceedings.

Plaintiff cites no authority that requires dismissal of Mitsubishi's co-ownership claim.   Plaintiff's motion is DENIED, without prejudice.

## ORDER

For the reasons stated, IT IS ORDERED:

1) Defendant's conversion and unjust enrichment counterclaims are DISMISSED, without prejudice;

2) Defendant shall file an amended counterclaim within fifteen days following electronic service of this memorandum decision; Plaintiff shall file its reply within fifteen days following service of any amended counterclaim; and

3) Plaintiff shall file a form of order consistent with this memorandum decision within five days following electronic

**21**

1    service of this decision.

2        IT IS SO ORDERED.

3    **Dated:**    **July 26, 2011**                          **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE