**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENERAL ELECTRIC COMPANY, et al, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THOMAS WILKINS, )<br>)<br>Defendants. )<br>) | Case No.: 1:10-cv-00674 LJO JLT<br><br>ORDER RE: DISCOVERY DISPUTE; ORDER SEALING DOCUMENT<br><br>(Doc. 322) |

On April 26, 2012, the Court conducted a telephonic conference re: discovery dispute. (Doc. 324) The current dispute is outlined in the notice of motion for protective order the issues filed by Intervenors, Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc. ("Mitsubishi"). (Doc. 322.)

In advance of the conference, the parties submitted letter briefs setting forth their positions on the matter. In essence, the dispute involves two primary issues, though they appear to be interrelated.

<u>Consulting Agreement</u>

Sometime in 2009, Wilkins and Mitsubishi entered into a contract in which Wilkins agreed to act as a non-disclosed consultant for Mitsubishi in the ITC matter which involved the 985 patent. This patent is at issue in this case also. The agreement was drafted by counsel for Mitsubishi and/or Wilkins and contains, reportedly, details such as the tasks Wilkins would complete and the rate of pay

1

1  he would receive.  Sometime later, in December 2009, the parties signed an amendment to the
2  agreement which, apparently, described the amounts that Wilkins had been paid and the amounts he
3  would be paid.  Also, it expanded the consulting agreement to include litigation related to the 985
4  patent in addition to the ITC action.
5       Mitsubishi has consistently taken the position that the agreement is privileged as attorney-
6  client communications, attorney work product and under the "consulting expert privilege."
7  Nevertheless, Wilkins provided the amendment to the agreement—and possibly the agreement itself—
8  to his retained expert, Mark Peterson, who cited the amendment as a basis for one of his opinions in
9  his Rule 26(a)(2) report.  When GE deposed Mr. Peterson early this month, it requested a copy of the
10 source document and the consulting agreement.  Wilkins/Mitsubishi refused to provide the consulting
11 agreement but provided the amendment, finally, earlier this week.
12      Initially, at the telephone conference with the Court on April 26, 2012, Mitsubishi took the
13 position that the consulting agreement was privileged. With further discussion, counsel seemed to
14 admit that the agreement probably wasn't privileged but justified not producing based upon the fear
15 that disclosure would ignite GE's interest in information that *was* privileged.  Wilkins' position was
16 less clear.  Seemingly, Wilkins persists in the position that the consulting agreement is privileged
17 based upon those asserted by GE originally.
18      However, the Court found that the agreement, as it was described by counsel, did not constitute
19 communications between counsel and the client for the purpose of obtaining or providing legal advice.
20 Also, the Court found it was not a document that contained the opinions or impressions of an attorney
21 such to bring it within the attorney work product privilege.  Finally, the Court's preliminary
22 determination was that the document is not protected merely because its substance deals with a
23 retainer agreement for an expert who would not be disclosed in a different litigation.  Indeed, the fact
24 that Wilkins was so retained is no secret and this fact was made clear in the ITC action.  Moreover,
25 there is no indication whatsoever—in fact, counsel for Wilkins and Mitsubishi admitted to the
26 contrary—that the agreement contains any opinions of Wilkins.  Instead, all agree that it merely sets
27 forth those tasks Wilkins was expected to complete.
28

Nevertheless, in order to permit full discussion on the topic, counsel are permitted to file a joint statement (totaling no more than 10 pages per side) no later than May 11, 2012.  The statement SHALL address whether the consulting agreement is privileged and, if it is not, whether GE has propounded discovery which required production of the agreement.  Counsel may also raise other issues that they believe are necessary for a determination of the matter. In addition, Mitsubishi SHALL lodge a copy of the consulting agreement and the amendment, via e-mail to JLTOrders@caed.uscourts.gov, no later than May 11, 2012.  Once the Court receives the joint statement, it will determine whether further argument is needed.

### Recently Disclosed Documents

The second part of the dispute relates to documents provided very recently to GE by Wilkins/Mitsubishi related to the negotiation of the license agreement.  Until this recent disclosure, Wilkins/Mitsubishi has taken the position that all responsive, non-privileged documents have been produced.  The currently produced documents, in GE's view, demonstrate that a full, diligent and exhaustive search has not been conducted.

One document produced recently is an e-mail "found" by Wilkins' attorney, Mr. Schulte, who represented WIlkins in the negotiation of the license and, apparently, in the negotiation of the consulting agreement and the amendment thereto.  This e-mail was sent by Schulte to Mr. Winland and Mr. Totten, who are current attorneys for Wilkins but who had represented Mitsubishi in these negotiations with Wilkins.  The e-mail is dated November 24, 2009, just weeks before the amendment to the consulting agreement was signed. It describes Wilkins' requested changes to the license agreement and the reasons for the changes.  One interpretation of the document—though there are other reasonable interpretations too—is that Wilkins is seeking to require Mitsubishi to "buy" his loyalty in this current litigation and the related actions, through the mechanism of licensing the technology at issue.

In any event, the Court is concerned that the document was not produced before now.  Though counsel for Wilkins reports that a diligent search occurred, which included a search of the computers

used by Messrs. Winland and Totten[1], the Court is not clear why Wilkins failed to demand that Mr. Schulte conduct a diligent search before now.  Thus, Wilkins SHALL conduct a diligent search to discover any document within his control—either held by the Finnegan law firm, Mr. Schulte or some other person—that has been requested in discovery.  He SHALL certify to GE that this search has occurred and produce any documents found during the search that were not previously produced, no later than May 4, 2012.  Moreover, counsel for Mitsubishi SHALL provide amended discovery responses if any response is incomplete or inaccurate, and SHALL certify that all responsive documents within its control have been produced, no later than May 4, 2012.  Notably, this would include a certification that Mitsubishi has secured from its prior counsel, Mr. Winland, Mr. Totten and the Finnegan law firm, all responsive documents.

Finally, GE admits that reopening the deposition of Shunji Nakamura would not yield any additional information.  Thus, to this extent, Mitsubishi's motion for a protective order to prevent the further deposition of Mr. Nakamura, is **GRANTED**.

Sealing order

Before the Court is the e-mail dated November 24, 2009, between Mr. Schulte and Messrs. Winland and Totten.  It was lodged with the Court by GE on April 26, 2012, according to the Court's order.  After reviewing the document, the Court is concerned that it should not be filed in the public docket.  The nature of the document indicates that it contains highly sensitive and confidential information not otherwise publicly available.  However, for purposes of a complete record, the Court finds that it is necessary that it be filed into the case matter.

To make the determination whether documents should be sealed, the Court must evaluate whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.'" Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (quoting Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002))  Because the entire e-mail is made up of confidential

---

[1] Wilkins' counsel had scant explanation for the absence of the e-mail from the computers and/or computer server(s) used by Mr. Winland and Mr. Totten.  The suggested explanation—that the e-mail had been deleted—is sorely incomplete. If it was deleted, the Court was provided no explanation as to why it was not preserved, given that the ITC litigation was well underway.

4

information not otherwise available or known to the public, the Court finds that the need to maintain the confidentiality of this material, outweighs the need for public disclosure. Therefore, the Court **ORDERS** the e-mail to be filed under seal.

**ORDER**

Based upon the foregoing, the Court **ORDERS:**

1. Counsel SHALL file a joint statement (totaling no more than 10 pages per side) no later than May 11, 2012.  The joint statement SHALL discuss:
    a. whether the consulting agreement is privileged;
    b. if the consulting agreement is not privileged, whether GE has propounded discovery requests which required production of the agreement;
    c. any other topic counsel believes is necessary related to the production of this agreement.
2. Mitsubishi SHALL lodge a copy of the consulting agreement and the amendment, via e-mail to JLTOrders@caed.uscourts.gov, no later than May 11, 2012;
3. No later than May 4, 2012, Wilkins SHALL certify to GE that he has completed a diligent search of all sources within his control—including the Finnegan law firm, Mr. Schulte's law firm and any other pertinent person--and he SHALL produce any documents found during the search that have not been produced previously;
4. No later than May 4, 2012, Mitsubishi SHALL amend its discovery responses, if any of its responses are in complete or inaccurate, and Mitsubishi SHALL certify to GE that all responsive documents within its control have been produced.  In doing so, Mitsubishi SHALL certify that this includes any responsive documents held by Mr. Winland, Mr. Totten and the Finnegan law firm pursuant to the previous representation;
5. Mitsubishi's motion for a protective order to prevent the reopening of the deposition of Shunji Nakamura is **GRANTED**;

///
///
///

6. The Clerk of the Court is DIRECTED to file under seal, the e-mail dated November 24, 2009, which was lodged with the Court on April 26, 2012 after the conclusion of the telephonic conference.

IT IS SO ORDERED.

Dated:   **April 27, 2012**                          **/s/ Jennifer L. Thurston**
                                                       UNITED STATES MAGISTRATE JUDGE