IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL ELECTRIC COMPANY, et al.,<br><br>                                          Plaintiffs,<br><br>v.<br><br>THOMAS WILKINS, an individual<br><br>                                          Defendant. | Case No.: 1:10-cv-00674 LJO JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS<br><br>(Doc. 331)<br><br>ORDER DENYING MOTION TO COMPEL<br><br>(Doc. 328) |

Plaintiff General Electric Company ("GE") has filed a motion to compel further production of documents by Defendants Thomas Wilkins ("Wilkins") and intervenor, Mitsubishi, and a motion for sanctions against Mitsubishi and Wilkins for their failure to comply with discovery obligations. (Doc. 331). Specifically, GE requests Mr. Wilkins' damages claim be dismissed, that the Court find for purposes of trial that Mitsubishi "bought off" Wilkins and an adverse inference instruction based on alleged spoliation of documents.

The parties filed a "Joint Statement re: Discovery Dispute" on May 31, 2012. (Doc. 343). On June 11, 2012, the Court heard argument regarding this motion. For the reasons set forth below, Plaintiff's motion for sanctions is **GRANTED IN PART** and **DENIED IN PART**. In addition, Plaintiffs' motion to compel further responses is **DENIED**.

1    **I.     Background**

2         This case has a long and colorful history.  GE and Mitsubishi are competitors in the wind-

3    energy market.  Thomas Wilkins is a former employer of GE.  His relevant employment began

4    with Zond and then later with Enron Wind Corp.  He began work for Enron in about April 1998.

5    When Enron became bankrupt, GE purchased Enron's assets in early 2000.  Thus, Wilkins'

6    employment continued with GE until sometime in late 2002.

7         Wilkins served as GE's lead power systems electrical engineer in California, and his job

8    was to develop new designs for wind turbine equipment. Wilkins claims that he first conceived

9    the invention underlying U.S. Patent No. 6,924,565, on May 31, 2002,.  In February 2004, GE

10   requested that Wilkins sign documents in connection with GE's application for the ,565 patent

11   that assigned any interest to GE, but Wilkins refused. GE did not seek an assignment from

12   Wilkins in connection with the U.S. Patent No. 6,921,985.

13        On March 25, 2008, the ITC initiated an investigation into claims that Mitsubishi

14   infringed on GE's technology patented in the ,985 and other patents.  (General Electric Company

15   v. Mitsubishi Heavy Industries, Case No. 2:09-cv-00029 (SDTX), Doc. 7.)  Also, on September

16   3, 2009, GE filed an action against Mitsubishi in the Southern District of Texas, in which GE

17   alleged that Mitsubishi, among other claims, infringed on its ,985 patent and other patents.  Id.  In

18   response, Mitsubishi claimed that the ,985 patent was invalid or unenforceable.

19        In April 2010, GE filed the instant action against Mr. Wilkins related to rights in the '985

20   and the ,565 patents, the latter of which identifies Mr. Wilkins as an inventor. (Doc. 76).  ,

21   Wilkins counterclaimed on August 9, 2011, and sought damages for unjust enrichment. (Doc. 76,

22   241, 243).  Mitsubishi intervened in the action in February 2011, at least in part because

23   Mitsubishi holds a license, issued by Wilkins, to use the technology protected by the ,985 patent.

24   (Doc. 161, 166).  Meanwhile, on May 20, 2010, Mitsubishi filed an action against GE in the

25   Western District of Arkansas claiming antitrust violations related, in part, to GE's action in

26   obtaining and enforcing the ,985 patent and claiming that the patent was invalid and

27   unenforceable. (General Electric Company v. Mitsubishi Heavy Industries, Case No. 2:09-cv-

28   00029 (SDTX), Doc. 16 at 2.)

1    During the pendency of the ITC action, in March 2008, Mitsubishi, through its counsel,

2  approached Wilkins to retain him as an expert in the ITC proceeding (the "Oblon" agreement).

3  (Doc. 343 at 48)  Though he was retained as an expert, he testified in that action only as a

4  percipient witness and was not disclosed as a retained expert.  Id.  In any event, he billed

5  Mitsubishi around ▅▅▅▅▅ for his expertise.  (Doc. 364 at 23)

6    When the ITC's ALJ issued his order on August 7, 2009, it found that Mitsubishi had,

7  indeed, infringed on GE's „985 patent.  (Doc. 343 at 48) It found also, that Wilkins was an

8  unnamed inventor of that patent.  At that time[1], Mitsubishi approached Wilkins with the idea that

9  he issue Mitsubishi an option to license to the technology encompassed by the „985 patent.  (Doc.

10  350) The purpose of this option was as a hedge against the ALJ's decision becoming final and

11  Mitsubishi losing its ability to use the technology.  As counsel admitted at the hearing, Wilkins

12  agreed to issue the license even though he realized that it would "paint a target on his back,"

13  meaning that Wilkins knew that as a result of the license, GE would take legal action against him.

14  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

15  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Id.

16  Also in this same agreement dated August 21, 2009, Mitsubishi hired Wilkins directly to act as its

17  expert.  Id. This agreement supplemented, rather than supplanted, the consulting work that was

18  outlined in the Oblon agreement, which remained in effect.  Id.

19    Negotiations related to Mitsubishi's decision to exercise this option began in October

20  2009 and culminated in the signing of a license agreement on December 17, 2009.  (Doc. 343 at

21  54; Doc. 347-2)  This was just one day before the ALJ's decision in the ITC action became final.

22  Id.  The next day, Wilkins and Mitsubishi entered into an amendment to the August 2009

23  agreement.  (Doc. 336) ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

24  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

25  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

26  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

27  ———————————

[1] The final decision, issued on January 8, 2010, found Mitsubishi did not infringe on GE's patent. (General Electric Company v. Mitsubishi Heavy Industries, Case No. 2:09-cv-00029 (SDTX), Doc. 16 at 1; Doc. 22 at 1-2.)

28

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████████████████████████████████████ The

4 negotiations related to these agreements make up a significant part of this dispute.  Most, though

5 not all, of the negotiations were oral and most[2] were between Wilkins' former attorney, Michael

6 Schulte and his current attorney—who represented Mitsubishi at the time--Tom Winland.

7 ████████████████████████████████████████

8 ██████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████       Id.  Therefore, beginning in November 2011, Mitsubishi and Wilkins began

12 discussing whether Mitsubishi would exercise one of these options.  ████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████       (Doc. 344-13; Doc. 353; Doc. 355; Doc. 347-10)  These e-

15 mails were exchanged between Wilkins' former attorney, Michael Schulte, his current attorney,

16 Tom Winland and Mitsubishi's attorneys, Steve Barber and Fil Agusti.  Though the parties dispute

17 the significance of these e-mails, they and the draft amended license agreement constitute another

18 large portion of the current dispute.

19        The extension negotiated by counsel and Wilkins, required Court approval.  For reasons

20 that are not documented, Wilkins and Mitsubishi did not seek the Court's approval of the

21 extension agreement but the license has continued in effect and will remain effective ████████

22 ████████████████████████████████████████████

23 ████████████       [3]  (Doc. 338)  Thus, despite that it appears as though the negotiations resulted in

24 the agreement to extend the license at a price lower than the original license, due, apparently, to a

25 _____

26        [2]  At the hearing, GE's counsel directed the Court to the transcript of the hearing on the preliminary
injunction in which Michael Schulte reported that there were negotiations and discussions related to the licensing

27 agreement, between Wilkins and Mitsubishi to which Mr. Schulte was not privy.  (Doc. 89 at 37)
        [3]  The Court here makes no comment as to the propriety of this extension or whether this violates the

28 preliminary injunction.  This issue may be addressed by the Court in the future.

1    reluctance to seek the Court's approval of the extension of the license, the December 2011 draft

2    extension agreement did not become effective.

3         In its discovery efforts, GE requested Wilkins and Mitsubishi provide documents related

4    to all of the negotiations discussed above and copies of the agreements, including any drafts.

5    Wilkins and Mitsubishi lodged general objections based, in part, upon concerns over relevance,

6    but agreed to produce the documents. (Doc. 345-10 at 3-4; 346-10 at 3-4) Likewise, Mitsubishi

7    lodged a general objection that the requests violated the attorney-client or attorney work product

8    privilege. (Doc. 345 at 3-4) In response to Request No. 17, Mitsubishi asserted,

9
          In addition to its General Objections, MHI objects that this request calls for
          documents protected from disclosure by the attorney/client privilege, work product
10        doctrine, community of interest privilege, and/or any other applicable privilege or
          immunity. MHI further objects that this request is overbroad, vague, unduly
11        burdensome and oppressive.
          Subject to and without waiving any of the foregoing general and specific
12        objections, **MHI responds that it will produce responsive, non-privileged
          documents** to the extent such documents exist and are in MHI's possession,
13        custody or control.

14   Id. at 14, emphasis added.  Similarly, in response to Request No. 21, Mitsubishi responded,

15
          In addition to its General Objections, MHI that this request calls for
          documents protected from disclosure by the attorney/client privilege, work product
16        doctrine, community of interest privilege, and/or any other applicable privilege or
          immunity. MHI further objects insofar as this request seeks documents subject to a
17        confidentiality obligation, non-disclosure agreement, or other obligation of secrecy
          owed to a non-party to this case, until such time that the non-party agrees to
18        production or an appropriate order is entered. MHI also objects to this request on
          the grounds that it is overbroad, vague, unduly burdensome and oppressive.
19        Subject to and without waiving any of the foregoing general and specific
          objections, **MHI responds that it will produce responsive, non-privileged
20        documents** to the extent such documents exist and are in MHI's possession,
          custody or control.
21

22   Id. at 16-17, emphasis added.  In his response, Wilkins reiterated many of his general objections

23   and responded to Request No. 1,

24
          Mr. Wilkins specifically objects to this Request as insolubly vague, overly
          broad, unduly burdensome, and not reasonably calculated to lead to the discovery
25        of relevant or admissible evidence, particularly for its use of the term
          "comparable technology."  Mr. Wilkins also objects to the extent that this Request
26        seeks information subject to a confidentiality obligation, non-disclosure
          agreement, or other obligation of secrecy owed to any non-party to this case, other
27        than may be disclosed under and pursuant to the mechanisms described in the
          Protective Order in this case.  Mr. Wilkins also specifically objects to this Request
28        to the extent it calls for information protected by the attorney-client privilege, the

5

community of interest privilege, the attorney work-product privilege, and/or any other applicable privilege or immunity.

Subject to and without waiving its foregoing general or specific objections, Mr. Wilkins agrees to produce non-privileged documents in its possession, custody, or control that are: (1) responsive to this Request; (2) relevant to the parties' claims and defences or relevant to the preliminary injunction against Wilkins in this case; and (3) that Mr. Wilkins can locate after a reasonable search. **Mr. Wilkins will produce documents responsive to this request that are confidential and/or proprietary subject to and according to the procedures set forth in the Protective Order entered in this case.**

(Doc. 346-10 at 7, emphasis added.)   Despite what appears to be an expressed intent by Mitsubishi and Wilkins to provide all non-privileged documents, they did not do so at the time they responded to discovery.

On April 26, 2012, the Court held a telephonic conference re: discovery dispute.  (Doc. 324)  This conference was initiated by Mitsubishi due to GE's stated intention to re-depose the PMK designated by Mitsubishi and because GE was insisting on Mitsubishi and Wilkins producing documents reflecting the negotiations of the license agreements and the consulting agreements and the consulting agreements themselves.  (Doc. 344; Doc. 344-1)  Mitsubishi and Wilkins had taken the position that the agreements were privileged.  However, at the recent deposition of Wilkins' expert, Mark Peterson, GE learned that Wilkins had produced the December 18, 2009 amendment[4] to the consulting agreement to him and Peterson cited to the agreement to support his opinions.  (Doc. 347-4 at 48)  In addition, Mitsubishi and Wilkins had produced recently, a portion of the e-mail communications discussed above.

At the telephonic conference, Mitsubishi admitted that the consulting agreements were not privileged under the attorney-client communication or the attorney work product, though Wilkins did not give up this position.  Mitsubishi explained that it asserted these privileges "in an abundance of caution" because it was concerned that "once we started down the path of disclosing documents related to the consulting arrangement, that that could be problematic." (Doc. 345-19 at 7-9)  However, Mitsubishi persisted in the position that the agreement was privileged under the "retained expert" privilege.  The Court permitted the parties to file a joint

---

[4] Peterson's report indicates that Wilkins had produced the December 17, 2009 license agreement to him as well.

1   statement related to this position but, ultimately Mitsubishi and Wilkins relented and produced

2   the agreements.

3          At the time of the conference, GE expressed concerns that not all of the documents related

4   to the licensing negotiations had been produced and sought a certification demonstrating that full

5   production had occurred.  Mitsubishi agreed to provide this request. Thus, the Court ordered

6   Mitsubishi and Wilkins to provide a certification demonstrating that they had produced all

7   documents related to the negotiations related to the license and consulting agreements.  Though

8   the focus of the conference had been the documents related to the consulting agreements, the

9   Court's order was broader.  The Court ordered,

10          . . . Wilkins SHALL conduct a diligent search to discover any document within his
            control—either held by the Finnegan law firm, Mr. Schulte or some other
11          person—that has been requested in discovery. He SHALL certify to GE that this
            search has occurred and produce any documents found during the search that were
12          not previously produced, no later than May 4, 2012. Moreover, counsel for
            Mitsubishi SHALL provide amended discovery responses if any response is
13          incomplete or inaccurate, and SHALL certify that all responsive documents within
            its control have been produced, no later than May 4, 2012. Notably, this would
14          include a certification that Mitsubishi has secured from its prior counsel, Mr.
            Winland, Mr. Totten and the Finnegan law firm, all responsive documents.
15

16  (Doc. 325 at 4)  On May 4, 2012, both Mitsubishi and Wilkins provided their certifications.

17  (Doc. 345; Doc. 345-1)  Both made this certification but only as to the negotiations related to the

18  original December 2009 license agreement.  Id.  When GE complained, on May 17 and 18, 2012,

19  Mitsubishi provided additional documents and on May 25, 2012, Mitsubishi provided a

20  supplemental certification that addressed the consulting and license agreements.  (Doc. 343 at 12;

21  Doc. 346-4)  Wilkins did likewise on May 21.  (Doc. 343 at 14; Doc. 345-2)  It appears that now

22  all of the responsive documents have been produced.[5]  However, at issue here are sanctions for

23  Mitsubishi's and Wilkins' failure to produce these documents in a timely fashion.

24          Notably, discovery closed on February 23, 2012 though some fact depositions continued

25  through April 4. (Docs. 251, 318). Expert discovery closed May 4, 2012. (Doc. 318).  Trial is set

26

27          [5] As detailed in the Court's June 11, 2012 minute order, neither Mr. Winland nor Mr. Wilkins have caused
    to be searched certain servers related to their e-mail storage. (Doc. 366)  However, the Court has ordered them to do
    so no later than June 22, 2012.

28

on November 6, 2012.

**II.     Analysis**

    **A.     <u>Motion to Compel Discovery</u>**

GE's notice of motion states that it seeks an order "compelling production from Mr. Wilkins and Mitsubishi of all documents responsive to GE's requests" pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rule 251 of the Local Rules of this Court.  (Doc. 331 at 2).  GE's notice particularly requests the following: "(a) documents sufficient to show how much money Mitsubishi has paid for attorneys acting on Mr. Wilkins' behalf in litigating Mitsubishi's and Mr. Wilkins' inventorship claim; (b) invoices related to Mr. Wilkins' consulting work for Mitsubishi; and (c) copies of documents produced by either Mitsubishi or Mr. Wilkins that the other has not produced." (<u>Id</u>.)  GE's notice asserts that such documents are responsive to (a) Request for Production to Mr. Wilkins Nos. 6, 49, 50, and 51 and (b) Request for Production to Mitsubishi Nos. 14, 17, 19, 20, 21, 32, and 33.  Despite such requests in the notice, Plaintiff's portions of the Joint Statement make no argument regarding a desire to compel production of additional documents—it merely argues for various sanctions.  (See Doc. 343).  Because Plaintiff failed to support their request to compel with points and authorities, the motion to compel production of these documents is **DENIED** as abandoned.

    **B.     <u>Motion for sanctions</u>**

Plaintiff's motion for sanctions is based upon Federal Rules of Civil Procedure 26 and 37. (Doc. 331 at 91).  Specifically, Plaintiff requests sanctions under Rule 26(g)(3) and 37(b),(c), and (d).  Plaintiff asserts that Mitsubishi's and Wilkins' failure to timely disclose discovery regarding the consulting agreement and related negotiations between them warrants factual findings against them.

        **i.     Legal Authority**

            **a.     Fed. R. Civ. P. 26(g)**

Rule 26(g) requires that every discovery request, response, or objection be signed by the attorney of record.  By signing, the attorney certifies that to the best of the person's knowledge, the disclosure is complete and correct when made.  Fed. R. Civ. P. 26.  Rule 26(g)(3) governs

sanctions for the improper certification of discovery requests, disclosures, responses and objections.  It states that "if a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting or both."

### b.   Sanctions under Rule 37

Rule 37 provides for sanctions when a party fails to comply with a court order, fails to disclose or supplement information required by Rule 26(a) or (e), or a party fails to attend his own deposition, serve answers to interrogatories, or respond to a request for inspection.  (See Fed. R. Civ. P. 37(b), (c), and (d).  "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions." Flanagan v. Benicia Unified Sch. Dist., 2008 WL 2073952 (E.D. Cal. May 14, 2008) report and recommendation adopted, 2008 WL 4353077 (E.D. Cal. Sept. 23, 2008) aff'd, 404 F. App'x 187 (9th Cir. 2010) (citing Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir.1983). Professors Wright and Miller have opined:

> Any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, although the reason for the failure is an important consideration in determining what sanction to impose. If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that should be invoked.

(Id.)

### i.   Rule 37(b)

Rule 37(b) states the following:

> If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Fed. R. Civ. P. 37(b). Thus, under Rule 37(b), the court is authorized to impose various sanctions for the failure to obey a discovery order, including, inter alia, "prohibiting the disobedient party from supporting or opposing designated claims or defenses...." [Rule 37(b)(2)(A) (ii) ], "striking pleadings in whole or in part" [Rule 37(b)(2) (A)(iii) ], to "dismissing the action or proceeding in whole or in part" [Rule 37(b)(2)(A)(v) ]. Turner v. Spence, 2009 WL 3126199 *1 (E.D. Cal. Sept.

28, 2009).  However, the court may only impose the drastic sanction of dismissal or default in "extreme circumstances" where the violation is "due to willfulness, bad faith, or fault of the party." Sec. Ins. Co. of Hartford v. Cibus Ins. Services, Inc. 2006 WL 3388549 *1 (E.D. Cal. Nov. 22, 2006) report and recommendation adopted, 2007 WL 614016 (E.D. Cal. Feb. 27, 2007) (citing In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir.1996).

### *ii.*     **Rule 37(c)**

Rule 37(c) sets forth sanctions for failing to comply with Rule 26(e).   Coleman v. Schwarzenegger, 2008 WL 3843292 (E.D. Cal. Aug. 14, 2008) on reconsideration in part, 2008 WL 4300437 (E.D. Cal. Sept. 15, 2008).  Under Rule 26(e), litigants have a continuing duty to supplement their discovery responses at appropriate intervals if the prior responses were "incomplete or incorrect" and "additional or corrective information has not otherwise been made known to" their opponent during discovery or in writing. Fed.R.Civ.Proc. 26(e)(1).  Rule 37 (c) provides as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed.R.Civ.P. 37(c)(1); see also Flanagan v. Benicia Unified Sch. Dist., 2008 WL 2073952 (E.D. Cal. May 14, 2008) report and recommendation adopted, 2008 WL 4353077 (E.D. Cal. Sept. 23, 2008)).

Rule 37(c) "gives teeth" to the requirements of Rule 26(e) "by forbidding the use on a motion or at trial of any information required to be disclosed by" that rule, unless the parties' failure to disclose the required information is substantially justified or harmless. *See* Yetti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001) Rule 37(c) was

promulgated to be "self-executing" in order to provide "a strong inducement for disclosure." Fed.R.Civ.P. 37(c), advisory comm. Note (1993).

### *iii.*     Rule 37(d)

Rule 37(d) provides the following:

> The court where the action is pending may, on motion, order sanctions if:
> (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
>
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

Fed. R. Civ. P. 37.  A party who fails to perform the acts described above is not excused on the ground that the discovery sought was objectionable, unless the party failure to act has a pending motion for a protective order under Rule 26(c).  Fed. R. Civ. P. 37(d)(2).

## III.    Discussion and Analysis

### A.    Untimely disclosure

After reviewing the joint statement and the attached exhibits and hearing the argument of counsel, the Court finds that Mitsubishi and Wilkins were "gaming" the discovery related to the amendment to the license agreement, the consulting agreements and the negotiations related to all of the Mitsubishi-Wilkins agreements. While they lodged objections to producing these records, both indicated that they would produce and, indeed, produced some documents.  In doing so, they obfuscated the fact that there were some documents that were withheld.  Clearly, this is not permitted under the rules.  The Court is convinced also that the reason for taking this course was to withhold from GE information which may very well be quite damaging to Wilkins' and Mitsubishi's claims.[6]

Moreover, Mitsubishi's general objection based upon relevance, amounts to a waiver of the objection.  A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006).  Even

---

[6] Of course, the manner in which the documents were finally produced, lends credence to this impression which may not have been formed at all had the documents been produced as a matter of routine.

1   a specific relevance objection that does not explain why the request is not relevant, is not proper

2   and does not preserve the objection. <u>Davis v. Fendler,</u> 650 F.2d 1154, 1160 (9th Cir. 1981).

3        Moreover, the argument that the negotiation documents and the consulting agreements do

4   not bear on Wilkins' credibility is unconvincing.   In addition, in the face of the discovery

5   conducted by Wilkins into negotiations conducted by GE with its licensees, Wilkins' claim that

6   the negotiation documents sought by GE were irrelevant, smacks of gamesmanship.

7        The timing of the disclosure of the documents causes the Court concern.   Mitsubishi's

8   current counsel received nearly all of the e-mails at the heart of this dispute, at the time they were

9   sent.   Thus, this is not a situation in which Mitsubishi had to rely upon Mr. Schulte for copies of

10  the e-mails; Mitsubishi's current counsel had all but the November 2009 e-mails all along.   Thus,

11  the failure to produce cannot be determined to be inadvertent or as a result of Mr. Schulte making

12  a belated search.   Instead, the consistent failure to produce was according to with Mitsubishi's

13  consistent intention to withhold them.

14       **B.     Identification of PMK deponents**

15       GE takes issue with the failure of Mitsubishi to name Thomas Winland as a person "most

16  knowledgeable" about the negotiation of the license, in response to an interrogatory seeking this

17  information.   Though, undoubtedly, Mr. Winland was a person with a great deal of knowledge—

18  maybe even the most knowledge--about the negotiations, the Court does not find that Mitsubishi

19  improperly failed to name him as a corporate designee.

20       It is noteworthy that Special Interrogatory No. 4 uses the term of art, "most

21  knowledgeable" which seems to imply that GE sought the names of people who could be deposed

22  on Mitsubishi's behalf.   Notably, Fed. R. Civ. P. 30(b)(6) requires the entity to name, as the

23  corporate deponent-designee, "one or more officers, directors, or managing agents, or designate

24  other persons who consent to testify on its behalf . . ."   A proper corporate designee-deponent is

25  one with the authority to bind the corporation.   Thus, a corporation cannot be required to

26  designate a Rule 30(b)(6) designee who lacks authority to speak on behalf of the corporation.

27  <u>Lepenna v. Upjohn Co.,</u> 110 F.R.D. 15, 20 (E.D.Pa.1986) (a Rule 30(b)(6) designee must have

28  authority to speak on behalf of the corporation).   The question's ambiguity was of GE's making.

1   If GE wanted merely to know who participated in or witnessed the negotiations, it could have

2   easily drafted an interrogatory that obtained this information.

3          On the other hand, the Court rejects Mitsubishi's argument that its response to this

4   interrogatory, which specifically excluded "Wilkins and his counsel," was sufficient to shield

5   Mitsubishi from the obligation to name Mr. Winland.  Though Mr. Winland represents Wilkins in

6   this case, he represented Mitsubishi in the license negotiation.  In failing to make this distinction,

7   Mitsubishi's response was so ambiguous as to provide GE no notice as to what information,

8   exactly, was excluded.  Thus, it appears that Mitsubishi *intended* to take advantage of this

9   ambiguity through its artful drafting of the response.  However, to its credit and according to the

10  Court's April 27, 2012 order, Mitsubishi provided a supplemental response and identified

11  Thomas Winland as a person who was most knowledgeable about the license negotiation.  (Doc.

12  345-12).  This satisfies Mitsubishi's obligation in this regard.

13         **C.     Spoliation**

14         At issue here is the deletion of e-mails by Mr. Winland and Mr. Totten, when they were

15  counsel for Mitsubihsi.  Though Mr. Winland and Mr. Totten deleted their copies of the e-mail,

16  the e-mail itself was not "destroyed" as is the typical situation in cases of spoliation.  The content

17  of the e-mail has been produced given Mr. Schulte preserved his copy of it.  Though this would

18  not always insulate an actor from sanctions for spoliation generally, the fact that Winland and

19  Totten received the e-mail is not at issue.  There is no dispute that Mr. Winland and Mr. Totten

20  received the e-mails—Mr. Winland admitted receiving and reviewing the e-mail at the hearing on

21  this motion--but, more importantly, GE has not demonstrated that it matters whether they

22  received it.

23         **D.     Conclusion**

24         With these findings, the Court now must determine what sanctions, if any, are appropriate.

25                **i.     Rule 37(b) Sanctions for Violation of an Order**

26         In order to impose the sanctions GE requests under 37(b), GE must demonstrate that

27  Mitsubishi and Wilkins violated a court order.  Fed. R. Civ. P. 37(b).  Determination of an

28  "order" includes an order relating to discovery.  Halaco Eng'g Co. v. Costle, 843 F.2d 376, 379

13

1    (9th Cir. 1988); Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th

2    Cir. 1992) ("Rule 37(b)(2)'s requirement that there be some form of court order that has been

3    disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize

4    sanctions for more general discovery abuse.")

5        Here, the only "order" named by GE are the "certifications" ordered by this Court on April

6    27, 2012.  (Doc. 325 at 5, Doc. 343 at 92).  Mitsubishi and Wilkins submitted the certifications to

7    GE on May 4, 2011.  (Doc. 345 and 345-1, Exh 21 and 22).  Mitsubishi's certification stated that

8    it had conducted a reasonable search and produced all non-privileged material regarding

9    Mitsubishi and Wilkins' negotiation of the December 2009 license agreement.  (Doc. 345, Exh.

10   21 at 2).  Wilkins' certification stated the same with regard to all non-privileged materials relating

11   to the negotiation agreement between him and Mitsubishi.  (Doc. 345-1, Exh. 22 at 2).   GE

12   contends that the May 4, 2012 certifications were incomplete and inaccurate because they did not

13   certify that the parties had "conducted a diligent search for any document within Defendants

14   control that had been requested during discovery."  (Doc. 343 at 13, Id. at 92).

15       As noted above, the April 27, 2012 telephonic conference focused on negotiations related to

16   the license agreements and the consulting agreements.   The initial refusal to certify that

17   Mitsubishi and Wilkins' discovery responses were complete as to the 2010 "failed" license

18   renegotiation and the consulting agreements, was not fully compliant with the Court's order.

19   However, Mitsubishi and Wilkins *did* provide a supplemental certification, albeit not in a timely

20   fashion, which corrected the earlier omissions. Without excusing and clearly without condoning

21   the delay in compliance, the Court does not find Mitsubishi and Wilkins failed to comply with the

22   Court's order such to warrant the imposition of sanctions under Rule 37(b).

23           **ii.      Rule 37(c) Violations for Supplement Discovery Responses**

24        GE contends that Rule 37(b)(2)(A)(i) sanctions are available under Rule 37(c) because

25   Mitsubishi and Wilkins failed to supplement their discovery responses as required by Rule 26(e).

26   GE acknowledges that Mitsubishi and Wilkins have supplemented discovery responses

27   throughout this litigation, but asserts that such supplements never included the December 2011

28   negotiations.  (Doc. 343 at 99.)  Mitsubishi and Wilkins claim that Rule 37(c) does not apply

1  because GE did not serve requests for admission and does not claim that Mitsubishi's and

2  Wilkins' initial disclosures or pre-trial disclosures were inadequate. (Doc. at 112).

3      Based upon the plain language of Rule 26(e), and contrary to Wilkins' and Mitsubishi's

4  assertions, Rule 37(c) applies when a party fails to supplement its discovery responses. (See Rule

5  26(e), Rule 37(c).)  However, Rule 26(e) only requires a supplemental response if a party "learns

6  that the response is incomplete" and "if the corrective information has not otherwise been made

7  known to the other parties during the discovery process or in writing" or as ordered by the Court.

8  Fed. R. Civ. P. 26(e).

9      Mitsubishi and Wilkins both asserted that they had complied with the April 27, 2012

10  certification order, but made the supplemental certifications and produced the documents relating

11  to the December 2011 negotiations, "in the spirit of cooperation." (Doc. 345-1, Exh. 22; Doc.

12  345-2, Exh. 23; Doc. 346-3, Exh. 44).   GE contends that the December 2011 documents that

13  were produced in May 2012, should have been included or supplemented in response to the

14  requests for production and interrogatories propounded upon both Mitsubishi and Wilkins. (Doc.

15  343 at 28).  As noted above, however, the Court's order required Mitsubishi to update discovery

16  responses as needed, in light of newly-produced or soon-to-be-produced.  The order did not

17  require the same thing of Wilkins.  On the other hand, the Court agrees that the documents should

18  have been produced during discovery.

19      As noted above, Mitsubishi contends that it objected to GE's request for production on

20  relevance grounds and that GE never challenged its objections.  However, the Court rejects these

21  arguments as discussed above.  Mitsubishi contends also that the documents produced were not in

22  its custody or control before the discovery cut-off, because they were in the custody of Mr.

23  Schulte.  (Id.)  Though this is true to a large extent, as noted at the hearing, it does not appear that

24  Mr. Winland's firm has made an exhaustive search for the deleted e-mails given the admission

25  that he has not searched the back-up server.  Mr. Winland—as Mitsubishi's counsel at the time of

26  the making of the original license and consulting agreements—was within Mitsubishi's control.

27  Moreover, the November and December 2011 e-mails were "carbon copied" to Mitsubishi's

28  current counsel.

1    Clearly, the documents at issue were not made known to GE during the discovery period

2    and many were given to GE only after this motion to compel was filed.  However, Mitsubishi *did*

3    provide the certification and *did* provide amended interrogatory responses.  Likewise, though

4    Mitsubishi and Wilkins have not, apparently, amended their other discovery responses, Fed.R.

5    Civ. P. 26(e) requires this only when the information has not otherwise become known "during

6    discovery or in writing." Because Wilkins and Mitsubishi have provided the documents and

7    provided the written certifications, the Court finds that this is minimally sufficient to comply with

8    the Rule and therefore sanctions under Rule 37(b)(2)(A)(i) will not be imposed.

9              **1.   Rule 37(d) Violations for Failure to Produce a Rule 30(b)(6) Witness**

10    GE requests sanctions under Rule 37(d) for Mitsubishi's production of Mr. Nakamura for

11    the Rule 30(b)(6) deposition on the issue of negotiations leading to the licensing agreement with

12    Wilkins.  (Doc. 343 at 92).  GE contends that because Mr. Nakamura had limited personal

13    knowledge on the topic and had "no relevant preparation" regarding communications with

14    Mitsubishi's and Wilkins' counsel, Mitsubishi's production of Mr. Nakamura violated Rule

15    30(b)(6).  (Id.; see also Doc. 345-14, Exh. 35 at 8-9).  GE asserts that the production of Mr.

16    Nakamura was tantamount to a failure to appear under Rule 37(d).  (Doc. 343 at 103 (citing Black

17    Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 303-04 (3d Cir. 2000) (quoting

18    United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C 1996); FormFactor, Inc. v. Micro-Probe,

19    Inc., No. 10-03095, 2012 WL 1575093, at *3-4 (N.D. Cal. May 3, 2012).  As such, GE requests

20    reasonable costs for the time associated with the deposition[7] and asks this Court to bar Mitsubishi

21    from offering a witness at trial on its license and consulting and agreements with Mr. Wilkins.

22    (Doc. 343 at 103 and 108).

23    Mitsubishi contends that Rule 37(b) should not apply, because it did appear for the

24    deposition and the Ninth Circuit strictly construes the language in Rule 37(b) governing a party's

25    failure to attend his/her deposition.  (Doc. 343 at 112).  However, the case cited by Mitsubishi is a

26

27         [7] GE has not set forth any specific amount, but states it will prepare an accounting of the costs at the Court's discretion.  (Doc. 343 at 108).

28

16

1    prisoner case, not a designation by a corporation.  (See Estrada v. Rowland, 69 F.3d 405, 406 (9th

2    Cir. 1995).

3          Clearly, Mr. Nakamura did not have a memory of the agreement nor was he prepared to

4    testify about the specifics of the agreement with Mr. Wilkins at the time of the deposition.  He

5    was able to relay the fact that the negotiations occurred orally between Wilkins and outside

6    counsel and that no one at Mitsubishi was involved in those discussions.  A corporate designee

7    need not have personal knowledge of the topics at issue but must be sufficiently prepared on the

8    topics such to be able to provide knowledgeable and binding testimony.  United States v. Taylor,

9    166 F.R.D. 356, 361 aff'd, 166 F.R.D. 367 (M.D.N.C. 1996); Great Am. Ins. Co. of New York v.

10   Vegas Const. Co., Inc., 251 F.R.D. 534, 539 (D. Nev. 2008).

11         Because Mr. Winland cannot bind the corporation, he would not have been an appropriate

12   corporate designee for deposition.   Lepenna, 110 F.R.D. at 20 (E.D.Pa.1986) (a Rule 30(b)(6)

13   designee must have authority to speak on behalf of the corporation).   On the other hand, the

14   positions, statements, subjective beliefs and opinions expressed by Mr. Nakamura are binding on

15   Mitsubishi and Mitsubishi is not permitted to introduce evidence at trial that contradicts Mr.

16   Nakamura's testimony.  Id.  Given the information that was produced during the deposition of

17   Mr. Nakamura, sanctions do not appear to be appropriate.

18         **2.    Factual Determination that Mitsubishi Paid Wilkins for his Loyalty and**

19              **Cooperation in Litigation.**

20         Plaintiffs ask this Court to make a factual determination that Mitsubishi paid Wilkins for

21   his loyalty and cooperation in litigation.  Plaintiffs assert that such a sanction is authorized and

22   warranted because Mitsubishi and Wilkins deliberately hid documents relevant to the consulting

23   relationship between them.  (Doc. 343 at 100).  GE argues that Mitsubishi's and Wilkins' failure

24   to timely disclose the agreements and amendments to agreements warrants action that would

25   preclude them from identifying facts to explain or contradict the information in the documents.

26   As discussed above, Plaintiff may not base such a request upon Rule 37(b).  (See Part V.1 above).

27   Though such sanctions may be available under Rule 37(c), the Court finds that the requested

28

evidentiary sanctions are not warranted where less drastic sanctions can rectify the potential prejudice.

According to the Court's inherent power to manage its cases "so as to achieve the orderly and expeditious disposition of cases (Chambers v. NASCO, Inc., 501 U.S. 32, ----, 111 S.Ct. 2123, 2132, (1991) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31(1962)), the Court will authorize GE to take the deposition of Michael Schulte and Thomas Winland and to re-take the deposition of Mark Peterson. The cost of the Schulte and Winland depositions will be shared by Mitsubishi and Wilkins. The cost of the Peterson deposition will be borne by Wilkins. The depositions SHALL be completed no later than August 31, 2012 and SHALL occur on dates convenient to GE and Mr. Schulte.

Finally, GE's expert Michael Jeffords, is authorized to provide a supplemental expert report, if he deems it necessary. The supplemental report may address the consulting agreements, the draft agreement to extend the term of the license, the negotiations surrounding these agreements and the negotiations leading to the original license agreement. The report may also address, as needed, the testimony of Mr. Schulte and Mr. Winland. The report SHALL be served no later than September 13, 2012. Mr. Peterson is not authorized to provide a supplemental report.

### 3.    Strike Damages Claim Based upon Spoilation

GE requests that the Court strike Wilkins' damages claim and sanction Mitsubishi for spoliation. GE claims that the Mitsubishi and Wilkins had a duty to and failed to preserve evidence of the 2009 licensing negotiations. (Doc. 343 at 104). Such a duty to preserve any relevant evidence arises as soon as a "potential claim is identified." National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 556-57 (N.D.Cal.1987). In the face of knowledge or reason to know of the potential claim, willful destruction of the evidence, even if not done in bad faith, is sufficient to demonstrate spoliation. The Court need not find bad faith by the offending party before issuing sanctions for destruction of evidence; willfulness or fault can suffice. Nursing Home Pension Fund v. Oracle Corp., 254 F.R.D. 559, 563 (N.D. Cal. 2008) On the other

1   hand, "To be actionable, spoliation of evidence must damage the right of a party to bring an

2   action." Ingham v. U.S. (9th Cir. 1999) 167 F.3d 1240, 1246.

3       District courts possess the inherent power to levy sanctions for spoliation of evidence. *Leon*

4   *v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir.2006).  The party requesting sanctions bears the

5   burden of proving, by a preponderance of the evidence, that spoliation took place. *Akiona v.*

6   *United States,* 938 F.2d 158 (9th Cir.1991); Tetsuo Akaosugi v. Benihana Nat. Corp. (N.D. Cal.,

7   Mar. 19, 2012, C 11-01272 WHA) 2012 WL 929672.

8       As noted above, it appears that Mr. Winland and Mr. Totten failed to preserve e-mail

9   communication with Mr. Schulte related to the original license agreement. ██████████████

10  ████████████████████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ██████████████████████████████████████ (Doc. 350)  However, these

13  documents have been produced by Mr. Schulte.  Hence, other than delay, GE's prejudice can be

14  mitigated by the depositions that the Court has ordered herein.

15      Nevertheless, GE surmises that there may have been other documents that have been

16  destroyed. Notably, GE does not point to anything in the e-mail communications provided by

17  Schulte that supports this presumption.  Moreover, Mr. Winland has reported that the Schulte

18  documents make up the totality of the writings related to the negotiations.  Thus, GE has not

19  stated with any degree of particularity or certainty what other evidence, if any, has been destroyed

20  or what their contents would have been.  To the contrary, GE claims that it was prevented from

21  discovering what might have been in any such documents.  (Id. at 106).

22      Generally, dismissal for spoliation is warranted only when "extraordinary circumstances"

23  warrant them.  Such circumstances are not extraordinary if the spoliation "'does not eclipse

24  entirely the possibility of a just result.'" In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d

25  1060, 1071 (N.D. Cal. 2006), citation omitted.  Here, Winland's and Totten's copies of the e-

26  mails were deleted but the communication itself has been preserved by Mr. Schulte and has been

27  produced to GE.  Because there is no support for GE fear that other evidence has been destroyed,

28  the Court does not find that the harsh sanction of striking Wilkins' damages claim is warranted.

**4.      Fees and costs associated with this motion**

Under Fed. R. Civ. P. 37(c)(1)(A), the Court is authorized to order an award of attorneys fees and costs caused by the conduct of the errant parties.  As noted above, the Court has found that Mitsubishi and Wilkins were engaged in game-playing related to the negotiation documents related to the license, the attempted amendment to the license and the consulting agreements.  They lodged objection that were not proper, identified documents as privileged when they plainly were not and delayed in producing discoverable documents.  Consequently, the Court **ORDERS** an award to GE of its costs and fees in bringing this motion.  GE **SHALL** file an accounting of these costs and fees within 14 days accompanied by a declaration of counsel justifying each cost and fee that was incurred.  Within 7 days thereafter, Mitsubishi and Wilkins are permitted to file their objections, limited to not more than 5 pages, to the accounting and declaration.  No reply will be permitted unless otherwise ordered.

**IV.     Conclusion and Order**

Accordingly, **IT IS HEREBY ORDERED**:

1.      The motion to compel is **DENIED**;

2.      The request for sanctions is **GRANTED IN PART** as follows:

a.      GE is authorized to take the depositions of Michael Schulte and Thomas Winland and to re-take the deposition of Mark Peterson.  The cost of these Schulte and Winland depositions will be shared by Mitsubishi and Wilkins.  The cost of the Peterson deposition will be borne by Wilkins.  The depositions **SHALL** be completed no later than August 31, 2012 and **SHALL** occur on dates convenient to GE and Mr. Schulte;

b.      GE's expert Michael Jeffords, is authorized to provide a supplemental expert report, if he deems it necessary.  The supplemental report may address the consulting agreements, the draft agreement to extend the term of the license, the negotiations surrounding all of these agreements as well as those related to the original license agreement.   Also, the report may address, as needed, the deposition testimony of Mr. Schulte, Mr. Winland and Mr. Peterson.  The report

1                  **SHALL** be served no later than September 13, 2012.  Mr. Peterson is not

2                  authorized to provide a supplemental report.

3      3.      The request for sanctions is **DENIED IN PART** as follows:

4            a.      The request for an evidentiary determination that Mitsubishi "bought"

5                  Wilkins' loyalty, is **DENIED**;

6            b.      The request to strike Wilkins' damage claim is **DENIED**;

7      4.      The motion for attorneys fees for filing the motion is **GRANTED**.  GE **SHALL**

8                  file an accounting within 21 days consistent with this order. Within 7 days

9                  thereafter, Wilkins and Mitsubishi may file objections—not exceeding 5 pages

10                  each-- to the accounting and declaration.

11 IT IS SO ORDERED.

12 Dated:    __June 22, 2012__                      _____**/s/ Jennifer L. Thurston**_____

13                                        UNITED STATES MAGISTRATE JUDGE