1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

GENERAL ELECTRIC COMPANY,                    CASE NO. 1:10-cv-00674-LJO-JLT
12   et al.,

13                        Plaintiffs,          **ORDER ON MOTIONS FOR**
                                               **RECONSIDERATION** (Docs. 465, 475)
            vs.
14

THOMAS WILKINS, an individual
15
                        Defendant.
16
      _____/
17

18                              **I. INTRODUCTION**

19          Defendants Thomas Wilkins ("Mr. Wilkins") and Mitsubishi Heavy Industries, Ltd. and

20   Mitsubishi Power Systems Americas, Inc. (collectively "Mitsubishi")[1] seek reconsideration of Magistrate

21   Judge Thurston's June 22, 2012, order granting in part, General Electric's ("GE") motion for sanctions.

22   GE opposes defendants' requests for reconsideration and seeks recovery of the fees incurred in preparing

23   its opposition.   For the reasons discussed below, this Court DENIES defendants' motions for

24   reconsideration and DENIES GE's request for fees.

25                              **II. BACKGROUND**

26          GE and Mitsubishi are competitors in the wind energy market.  Mr. Wilkins was formerly

27   _____

28          [1] Mr. Wilkins and Mitsubishi will be referred to collectively as "defendants."

                                        1

1   employed by GE.[2]   While employed by GE, Mr. Wilkins' job was to develop new designs for wind

2   turbine equipment.  He voluntarily left the company in late 2002.

3          In 2005, two patents were issued to GE, U.S. Patent No. 6,924,565 ("the '565 patent") and U.S.

4   Patent No. 6,921,985 ("the '985 patent").  The '565 patent lists seven inventors and GE as the assignee

5   of record.  One of the named inventors of the '565 patent is Mr. Wilkins.  When preparing the patent

6   application, GE asked Mr. Wilkins to assign any interest he had in the invention to GE but Mr. Wilkins

7   refused.  The '985 patent lists five inventors and GE as the assignee of record.  Mr. Wilkins is not a

8   named inventor of the '985 patent.

9          In 2008, GE filed a complaint with the United States International Trade Commission ("ITC")

10  in which it alleged that Mitsubishi infringed on three of its patents, including the '985 patent.  Pursuant

11  to the complaint, the ITC conducted an investigation.  During the pendency of the action, Mitsubishi

12  retained Mr. Wilkins to provide "consulting services . . . and possibly to serve . . . as an expert witness."

13  (Doc. 347-7).  In May 2009, the ITC held an evidentiary hearing in which Mr. Wilkins testified as a fact

14  witness.  (Doc. 345-6, p. 120-23).  On August 7, 2009, the ITC's Administrative Law Judge ("ALJ")

15  issued a decision.  (Doc. 345-6).  In the decision the ALJ determined that "[Mr.] Wilkins was an inventor

16  of at least the invention of claim 15 of the '985 patent."  (Doc. 345-6, p. 122-23).

17                          **August 2009: Option/Consulting Agreement**

18         Following the ALJ's determination, Mitsubishi and Mr. Wilkins entered into an

19  option/consulting agreement on August 21, 2009.  (Doc. 350, p. 2).  The agreement provided that in the

20  event Mr. Wilkins received a written request from Mitsubishi for a license, Mr. Wilkins would grant

21  Mitsubishi a license to the technology in the '985 patent.  (*Id*.).  ████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████████████████

24  █        █        █        █        █

25  ████████████████████████████████████████████████████████████████████████████████████████████

26  ████ ██████Also in this agreement, Mitsubishi retained Mr. Wilkins as a consultant to perform research

27

28         [2] Mr. Wilkins was initially employed by Enron Wind which was acquired by GE.

                                                      2

1  tasks in response to specific requests by Mitsubishi.

2  (*Id.*) ████████████████████████████████████████████████████████

3  █████████████████████████████████████████████████████████The

4  consulting agreement was in addition to the prior consulting agreement associated with the ITC action.

5  (*Id.*).

6  **December 2009: Licensing Agreement & Modification of August 2009 Agreement**

7  On December 17, 2009, Mitsubishi decided to exercise its option and entered into an agreement

8  with Mr. Wilkins in which Mr. Wilkins granted Mitsubishi a nonexclusive license to whatever interest

9  he possessed in the '985 patent.  (Doc. 338, ¶ 3.1).  ████████████████████████████████████

10  █████████████████████████████████████████████████████████████████

11  █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █ █

12  █████████████████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████████

14  ████████████████████

15  On December 17, 2009, the parties also modified the August 21, 2009, "option/consulting"

16  agreement. (Doc. 336). ██████████████████████████████████████

17  █████████████████████████████████████████████████████████████████

18  █████

19  **Extension of December 2009 Licensing Agreement**

20  By November

21  2011, ████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████████████████████

24  █████████████████████████████████████████████████████████████████

25  ██████████████████████  A series of emails were exchanged between Mr. Wilkins' former attorney,

26  Michael Schulte, his current attorney, Tom Winland, and Mitsubishi's attorneys, Steve Barber and Fil

27  Agusti regarding this issue.  (Docs. 344-13, 347-10, 353, 355).  █████████████████████

28  █████████████████████████████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2                          **Discovery Requests**

3          During discovery, GE asked Mr. Wilkins and Mitsubishi to provide all documents related to the

4  above negotiations and copies of the agreements.[3]  Both Mr. Wilkins and Mitsubishi objected to these

5  requests as protected by the attorney/client privilege, work product doctrine, community of interest

6  privilege, and/or any other applicable privilege or immunity.  (Doc. 344-7, p. 3, 6, 16-18).  Both agreed

7  however, to produce all responsive, non-privileged documents.  (*Id*.).

8          Nonetheless, GE soon learned that Mr. Wilkins and Mitsubishi did not produce all responsive

9  documents.  During the April 6, 2012, deposition of Mark Peterson, Mr. Wilkins' expert, GE learned

10  that Mr. Wilkins produced the December 2009 amendment to the August 2009 "option/consulting"

11  agreement to Mr. Peterson.  When GE requested a copy of the consulting agreement, Mr. Wilkins and

12  Mitsubishi initially refused but relented on April 23, 2012.

13          On April 25, 2012, Mitsubishi filed a motion, pursuant to FED. R. CIV. P. 26(c), for an order

14  protecting Mitsubishi from attempts by GE to re-open discovery regarding the licensing and consulting

15  agreements between Mitsubishi and Mr. Wilkins.  (Doc. 322, p. 2).  Mitsubishi continued to argue that

16  the licensing and consulting agreements were unimportant and ancillary to the central issues in the case.

17  (*Id*.).  A telephonic conference regarding Mitsubishi's motion was held on April 26, 2012.  (Doc. 325,

18  p. 1).  Based on the conference, Judge Thurston concluded that the agreements were not protected by

19  the attorney/client or attorney work product privilege. (Doc. 325, p. 2).  Judge Thurston also made a

20  preliminary determination that the documents were not protected merely because they dealt with a

21  retainer agreement for an expert but ordered the parties to address this issue in their joint statement.

22  (Doc. 325, p. 3).  Judge Thurston further ordered Mitsubishi and Mr. Wilkins to certify, no later than

23  May 4, 2012, that ***all*** responsive documents within their control were produced.  (Doc. 325, p. 5).  On

24  May 4, 2012, Mitsubishi and Mr. Wilkins certified that they produced all non-privileged documents

25  related to the negotiation of the December 2009, licensing agreement.  (Docs. 345, 345-1).

26                  **Motion to Compel and Request for Sanctions**

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28          [3] *See* Requests for Production ("RFP") to Mitsubishi Nos. 14, 17, and 21 at Doc. 344-7, p. 3, 6.  *See also* RFPs to Mr. Wilkins Nos. 1, 49, 50, 51 at Doc. 344-7, p. 16-18.

On May 11, 2012,[4] GE filed a motion to compel further responses to their requests for the production of documents and a request for sanctions due to Mr. Wilkins and Mitsubishi's failure to comply with GE's requests for information concerning the duo's licensing negotiations and agreements. (Doc. 331).  GE argued that Mr. Wilkins and Mitsubishi violated FED. R. CIV. P. 26 and 37 by "failing to produce and/or [failing] to timely produce relevant and responsive documents, failing to preserve relevant and responsive documents, providing evasive and non-responsive answers to GE's interrogatories and (in Mitsubishi's case) failing to adequately prepare its 30(b)(6) witness." (Doc. 331, p. 2).  Pursuant to FED. R. CIV. P. 37(c), GE sought:

> (1) an order precluding Mitsubishi and Mr. Wilkins from introducing evidence, either at summary judgment or at trial, about license negotiations or agreements between Mitsubishi and Mr. Wilkins; (2) an instruction directing the fact finder to draw an adverse inference that the license agreement between Mr. Wilkins and Mitsubishi is an attempt by Mitsubishi to buy Mr. Wilkins' loyalty and cooperation in litigation about the '985 patent; and (3) dismissal of Mr. Wilkins' damages claims.

(Doc. 331, p. 2-3).

Shortly after GE filed its motion Mitsubishi and Mr. Wilkins provided additional documents and filed supplemental certifications.  Mitsubishi produced every non-privileged document that it could find related to the license agreement,███████████████████████████████, and all non-privileged documents related to its December 2011,███████████████████████████████ ████████████.  (Doc. 343, p. 56-57).  On May 21, 2012, Mr. Wilkins provided similar documents and a supplemental privilege log which contained entries related to Mr. Wilkins' consulting work with Mitsubishi.  (Doc. 345-2, p. 3-4).  Mr. Wilkins also provided a supplemental certification without conceding that his prior certification was too narrow.  (Doc. 345-2, p. 5-6).  On May 25, 2012, Mitsubishi submitted a similar supplemental certification without conceding that its prior certification was too narrow.  (Doc. 346-3).

### Order on Motion to Compel and Request for Sanctions

On June 22, 2012, Judge Thurston denied GE's motion to compel as abandoned because GE failed to support the motion with points and authorities.  (Doc. 368, p. 8).

---

[4] GE filed an amended motion to compel on May 17, 2012, which made administrative changes to the motion.  The substance of the motion remained the same.  (Doc. 331, fn. 1).

1    With regard to GE's request for sanctions, Judge Thurston granted the request in part and denied

2    it in part. Judge Thurston determined that "Mitsubishi and Wilkins were 'gaming' the discovery related

3    to the amendment to the license agreement, the consulting agreements and the negotiations related to

4    all of the Mitsubishi-Wilkins agreements." (Doc. 368, p. 11). Judge Thurston pointed out that while

5    Mr. Wilkins and Mitsubishi lodged objections to producing these records, both indicated that they would

6    produce and did produce some documents but in doing so they "obfuscated the fact that there were some

7    documents that were withheld." (*Id*.). Judge Thurston further determined that Mitsubishi's general

8    objection based upon relevance amounted to a waiver of the objection because "a specific relevance

9    objection that does not explain why the request is not relevant is not proper and does not preserve the

10   objection." (Doc. 368, p. 12). Judge Thurston further noted that the timing of the disclosure of the

11   documents caused the Court concern in light of the fact that Mitsubishi's current counsel had all but the

12   November 2009, emails all along. (*Id*.).

13   Pursuant to Fed. R. Civ. P. 37(c)(1)(A), Judge Thurston ordered an award to GE of its costs and

14   fees in bringing the motion to compel and motion for sanctions. Judge Thurston awarded costs and fees

15   to GE based on her determination that "Mitsubishi and Wilkins were engaged in game-playing related

16   to the negotiation documents related to the license, the attempted amendment to the license and the

17   consulting agreements. They lodged objection[s] that were not proper, identified documents as

18   privileged when they plainly were not and delayed in producing discoverable documents." (Doc. 368,

19   p. 20). Pursuant to the Court's inherent power to manage its cases, Judge Thurston also authorized GE

20   to take the deposition of Michael Schulte and Thomas Winland and to re-take the deposition of Mark

21   Peterson. Judge Thurston further ordered that the cost of the Schulte and Winland depositions would

22   be shared by Mitsubishi and Mr. Wilkins and the cost of the Peterson deposition would be borne by Mr.

23   Wilkins. (Doc. 368, p. 18).

24                                    **Motions for Reconsideration**

25   On July 13, 2012, Mr. Wilkins and Mitsubishi filed motions for reconsideration (Docs. 465, 475)

26   to which GE filed an opposition (Doc. 567). Mr. Wilkins contends that Judge Thurston clearly erred

27   when she found that he engaged in gamesmanship and when she awarded GE costs and fees in bringing

28   the motion to compel and motion for sanctions. Mitsubishi argues that Judge Thurston's award of

6

1   attorney's fees and costs was clearly erroneous and contrary to law.   Mitsubishi further seeks

2   reconsideration of the award of the costs of taking additional depositions.   GE opposes the motions and

3   requests the fees associated with preparing its opposition.

### III. LEGAL STANDARD

5   "A party seeking reconsideration of [a] Magistrate Judge's ruling shall file a request for

6   reconsideration," pursuant to   Local Rule 303(c).   This Court reviews a motion to reconsider a

7   Magistrate Judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C.

8   § 636(b)(1)(A); FED. R. CIV. P. 72(a).   As such, the Court may only set aside those portions of a

9   Magistrate Judge's order that are either clearly erroneous or contrary to law.   FED. R. CIV. P. 72(a); *see*

10  *also Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

11  "The clearly erroneous standard applies to the magistrate judge's factual determinations and

12  discretionary decisions, including orders imposing discovery sanctions."   *Computer Econ., Inc. v.*

13  *Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999) (internal quotation marks omitted).

14  "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm

15  conviction that a mistake has been committed."   *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999,

16  1014 (9th Cir. 1997) (internal quotation marks omitted); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal.

17  2003).   "In contrast, the contrary to law standard . . . permits independent review of purely legal

18  determinations by the magistrate judge."   *Green*, 219 F.R.D. at 489 (internal quotation marks omitted).

19  Thus, a District Court may overturn a Magistrate Judge's "conclusions of law which contradict or ignore

20  applicable precepts of law, as found in the Constitution, statutes or case precedent."   *Adolph Coors Co.*

21  *v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983).

22  With these standards in mind, this Court turns to Mr. Wilkins and Mitsubishi's criticisms of

23  Judge Thurston's June 22, 2012, order.

### IV. DISCUSSION

25  **A. Mr. Wilkins' Request for Reconsideration**

26  Mr. Wilkins contends that Judge Thurston's finding that he engaged in gamesmanship and the

27  award to GE of the costs and fees associated with bringing its motion to compel was clearly erroneous.

28  Under FED. R. CIV. P. 37(c)(1)(A), if a party fails to provide information the Court "may order

1   payment of the reasonable expenses, including attorney's fees, caused by the failure." Pursuant to this

2   rule, Judge Thurston awarded GE the costs and fees in bringing its motion to compel. (Doc. 368, p. 20-

3   21). Judge Thurston based this award on her determination that Mr. Wilkins and Mitsubishi "engaged

4   in game-playing related to the negotiation documents related to the license, the attempted amendment

5   to the license and the consulting agreements. They lodged objection[s] that were not proper, identified

6   documents as privileged when they plainly were not and delayed in producing discoverable documents."

7   (Doc. 368, p. 20). Mr. Wilkins argues that this determination and the award of costs and fees was clearly

8   erroneous for three reasons.

9       **1. GE's Delay in Seeking the Documents**

10      Mr. Wilkins contends that his delay in producing the documents was the result of GE's delay in

11  seeking the documents. Mr. Wilkins explains that the three consulting agreements have been on his

12  privilege log since October 2011 and yet GE waited until after Mr. Wilkins voluntarily produced one

13  of the documents, which was after the close of discovery, to seek production of the remaining

14  documents. Mr. Wilkins argues that he should not be faulted for GE's delay.

15      GE was not dilatory in seeking the documents. In GE's requests for production, it requested all

16  documents related to the licensing of the technology in the '985 patent and all documents related to Mr.

17  Wilkins' employment as a consultant for Mitsubishi. (Doc. 344-7, p. 16-18). Mr. Wilkins asserted a

18  privilege as to these documents but then provided a copy of the December 2009 amendment to the

19  August 2009 "option/consulting" agreement to its expert Mark Peterson. Once GE learned that the

20  document had been produced it requested a copy of the agreement which Mr. Wilkins initially refused

21  to provide but then relented two weeks later. Once this occurred, GE became suspicious that Mr.

22  Wilkins was withholding other documents so it filed its motion to compel and requests for sanctions.

23  This chain of events shows that GE did not wait to request the documents. GE requested the documents

24  during discovery and Mr. Wilkins withheld them.

25      **2. Mr. Wilkins' Lack of Awareness Regarding the November 2009 Email**

26      Mr. Wilkins argues that he did not know that the November 2009 email message, which

27  contained negotiations regarding the December 2009 licensing agreement, existed before he agreed to

28  search for responsive materials at Mitsubishi's request. Thus, Mr. Wilkins asserts, it was the timing of

1    Mitsubishi's request, and not some scheme to delay, that dictated when Mr. Wilkins found and produced
2    the document.

3        It is hard to accept Mr. Wilkins' argument that he was unaware that the November 2009 email
4    existed given the fact that the email was sent to Mr. Wilkins; two of his current attorneys, Tom Winland
5    and Jeffrey Totten; and his former attorney, Michael Schulte.  (Doc. 344-3, p. 2).  Counsel for Mr.
6    Wilkins previously reported to Judge Thurston that a search of the computers used by Mr. Winland and
7    Mr. Totten occurred and the email was not found.  (Doc. 325, p. 3-4).  In Mitsubishi's motion for
8    reconsideration, it explains that at the time Mr. Winland and Mr. Totten received the emails their firm
9    email system automatically deleted incoming and outgoing emails after a certain period of time.  (Doc.
10   475, p. 11 fn. 7).  Thus, by the time GE requested the documents the emails had been deleted from the
11   server.  (*Id*.).  Despite this explanation, what perplexed Judge Thurston and perplexes this Court as well
12   is why Mr. Wilkins failed to demand that Mr. Schulte, his former attorney who participated in the
13   negotiations, conduct a diligent search until after the close of discovery.  (Doc. 325, p.3-4).  The fact that
14   Mr. Wilkins, Mr. Winland, and Mr. Totten did not have a copy of the email coupled with the fact that
15   they did not ask Mr. Schulte for his copy of the email during discovery lends support for Judge
16   Thurston's determination that Mr. Wilkins engaged in gamesmanship during discovery.

17       **3. Relevance of December 2011 Negotiations**

18       Mr. Wilkins asserts that he did not display bad faith in failing to produce documents related to
19   ████████████████████████████████████████████████████████████████████████████████████
20   because he did not consider the email exchange relevant to GE's document requests.

21       "Relevant information for purposes of discovery is information reasonably calculated to lead to
22   the discovery of admissible evidence."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th
23   Cir. 2005) (internal quotation marks and citations omitted).  "District courts have broad discretion in
24   determining relevancy for discovery purposes."  *Id*.

25       During discovery, GE requested "[a]ll documents, electronically stored information . . . relating
26   to, or evidencing [Mr. Wilkins'] licenses, offers of licenses or attempted licensing of the . . . '985
27   Patent[] or the technology allegedly embodied in th[at] Patent[] . . ."  (Doc. 344-7, p. 18).  Emails
28   ████████████████████████████████████████████████████████████████████████████████████

9

1 ██████████that pertained to the '985 patent are plainly responsive to this request.  Thus, the emails were

2 clearly relevant to GE's document requests.

3      Mr. Wilkins contends that he did not consider the emails relevant because all parties, including

4 GE, made a general objection to producing documents created after the suit began in 2010.  "[I]t is well-

5 settled that all grounds for objection must be stated with specificity." *Ramirez v. County of Los Angeles*,

6 231 F.R.D. 407, 409 (C.D. Cal. 2005) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).

7 Thus, general objections are waived.  *Id*.  Because the objection Mr. Wilkins relies upon was a general

8 objection relied upon to prevent the parties from having to log communications with counsel and work

9 product documents related to preparing the case, *see* Doc. 343, p. 43 fn. 18, the objection was waived

10 and cannot be relied upon.

11      Mr. Wilkins also argues that the licensing negotiations are irrelevant to his damages claims.  As

12 pointed out by GE, the negotiations are relevant to Mr. Wilkins' compensatory damages claims████████

13 ████████████████████████████████████████████████████████████████████████████████████

14      In sum, the above arguments set forth by Mr. Wilkins fail to leave the Court with "a definite and

15 firm conviction that a mistake" was committed when Judge Thurston awarded GE the costs and fees

16 associated with its motion to compel based on her determination that Mr. Wilkins engaged in

17 gamesmanship.  *Sec. Farms*, 124 F.3d at 1014.  Thus, Mr. Wilkins' motion for reconsideration and

18 request for apportionment is DENIED.

19 **B. Mitsubishi's Request for Reconsideration**

20      Mitsubishi seeks reconsideration of Judge Thurston's award of attorney's fees for GE's motion

21 to compel and the costs for taking additional depositions.

22      As discussed above, Judge Thurston awarded GE the costs and fees in bringing its motion to

23 compel based on her determination that Mr. Wilkins and Mitsubishi engaged in gamesmanship during

24 discovery.  (Doc. 368, p. 20).  Judge Thurston also authorized GE to depose Mr. Schulte and Mr.

25 Winland and ordered the cost of these depositions to be shared by Mitsubishi and Mr. Wilkins.  (Doc.

26 368, p. 18).  Mitsubishi contends that the award of attorney's fees and the costs of the depositions was

27 clearly erroneous because Mitsubishi was substantially justified in lodging objections, in its privilege

28 claims, and in the way it handled the 2011 negotiation documents.

**1. Objections**

Mitsubishi takes issue with Judge Thurston's determination that its relevancy objection was not proper.   Judge Thurston determined that "Mitsubishi's general objection based upon relevance, amount[ed] to a waiver of the objection."   (Doc. 368, p. 11).   Mitsubishi now argues that it followed up with a specific, written relevancy objection.   Absent from Mitsubishi's argument is a citation to the specific, written objection.   Accordingly, this argument is unpersuasive.

Mitsubishi further argues that its delay in producing the documents related to the negotiation of the December 2009 agreement was harmless because GE now has the documents.   Mitsubishi's delay in production was not harmless because GE was forced to file a motion to compel, prepare and attend the hearing on the motion, and was forced to respond to the instant motion.   Accordingly, Mitsubishi's delay wasted GE's time and resources.

Mitsubishi also contends that GE should have pursued the motion to compel earlier instead of waiting until after the close of discovery.   As discussed above, in section IV.A.1., it was not until April 2012, that GE suspected that defendants may be withholding documents.   At the beginning of April 2012, GE learned that a copy of the December 2009 amendment to the August 2009 "option/consulting" agreement was provided to Mr. Wilkins' expert, Mark Peterson, and when GE pursued a copy of the document Mr. Wilkins initially refused to provide it but relented two weeks later.   Once this occurred GE became suspicious and pursued the motion to compel which resulted in the disclosure of a series of documents from defendants.   Accordingly, Mitsubishi's delay in providing the documents cannot be blamed on GE.

**2. Privilege Claims**

Mitsubishi argues that it was justified in withholding the 2009 consulting agreements under the consulting-expert privilege.   Mitsubishi further asserts that it did not engage in bad faith when it withheld the agreements because once it was assured that production of the agreements would not result in a "broader waiver" it produced the documents.

In awarding attorney's fees and costs, Judge Thurston found that Mitsubishi "engaged in game-playing related to . . . the consulting agreements [because] [t]hey . . . identified documents as privileged when they plainly were not and delayed in producing discoverable documents."   (Doc. 368, p. 20).   This

1    determination was not contrary to law or clearly erroneous.

2        FED. R. CIV. P. 26(b)(4)(D) provides that "[o]rdinarily, a party may not . . . discover facts known

3    or opinions held by an expert who has been retained . . . by another party in anticipation of litigation or

4    to prepare for trial and who is not expected to be called as a witness at trial." "[T]he party who resists

5    discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying

6    explaining and supporting its objections." *Cable & Computer Technology, Inc. v. Lockheed Saunders,*

7    *Inc.*, 175 F.R.D. 646, 650 (C. D. Cal. 1997).

8        Mitsubishi retained Mr. Wilkins as an expert to aid it in preparing for trial.   Accordingly,

9    pursuant to FED. R. CIV. P. 26(b)(4)(D), GE was unable to discover facts known or opinions held by Mr.

10   Wilkins in his capacity as a non-testifying expert.   The 2009 consulting agreements do not contain facts

11   or opinions.   Rather, the agreements lay out the terms of Mitsubishi and Mr. Wilkins' consulting

12   relationship.   Thus, the agreements were not privileged under Rule 26.

13       Mitsubishi contends that consulting agreements are generally not subject to discovery.   It relies

14   on two orders from the Northern District of California in support of its argument: *Genentech, Inc. v. Tr.*

15   *of Univ. of Pennsylvania*, 2011 WL 6002501 (N.D. Cal. Nov. 30, 2011) and *Synopsys, Inc. v. Ricoh Co.,*

16   *Ltd.*, 2006 WL 2458721 (N.D. Cal. Aug. 22, 2006).[5]   In both orders the Court determined that the

17   consulting agreements need not be produced but the Court made its determination based on the facts and

18   briefing of the case rather than on a general legal proposition that consulting agreements are not subject

19   to discovery.   In *Genentech*, the Court determined that the university need not produce "further

20   documentation regarding its consulting arrangement" because Genentech already had the answers to the

21   information that it sought, *i.e.*, Genentech already knew when the university concluded its agreement

22   with the consultant, whether the agreement was in writing, and how much the University paid the

23   consultant.   *Genentech*, 2011 WL 6002501, at *2-3.   In *Synopsys*, Ricoh sought unlogged and

24   unproduced documents which included a consulting agreement and documents related to the payment

25   of the non-testifying expert's services.   *Synopsys*, 2006 WL 2458721, at *2.   The Court determined that

26

27       [5] Mitsubishi also relies upon an order from the Southern District of New York, *In re Gulf/Cities Service Tender Offer Litigation*, 1990 WL 108352 (S.D. N.Y. Jul. 20, 1990).   Mitsubishi's reliance on *In re Gulf* is misplaced because it pertains to the attorney client privilege and work product rule.   *Id.* at *2.   It does not discuss the discoverability of consulting agreements.

28

*Synopsys* need not produce the documents because Ricoh's request for relief was untimely, Ricoh failed to demonstrate that Synopsys was withholding documents, and Ricoh failed to cite any authority to support its claim that the consulting agreement should be produced. *Id*. at *2-3. Accordingly, in the cases Mitsubishi relies upon the Courts determined that the consulting agreements need not be produced based on several factors rather, than a general proposition that consulting agreements are not subject to discovery. Thus, Judge Thurston's determination that the consulting agreements were not privileged was not contrary to law or clearly erroneous.[6]

Mitsubishi's contention that it did not engage in bad faith when it withheld the documents is unpersuasive. Mitsubishi asserts that it withheld the documents because it believed that disclosure of the agreements would result in a waiver of Mr. Wilkins' work product privilege but once it was assured that this would not occur it produced the documents. The Court is unsure as to why Mitsubishi believed disclosure of the documents would result in a waiver of Mr. Wilkins' work produce privilege. Thus, the argument is unpersuasive.

### 3. 2011 Negotiation Documents

Mitsubishi contends that its late disclosure of the 2011 negotiation documents was justified and GE was not harmed by the delay.

Under FED. R. CIV. P. 26(e)(1)(A), a party who has responded to a request for production must supplement or correct its response "in a timely manner if the party learns that in some material respect the . . . response is incomplete . . . and if the additional . . . information has not otherwise been made known to the other parties during the discovery process . . ." If a party fails to comply with Rule 26(e), the party may not use that information at trial "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

During discovery, GE requested "[a]ll documents, electronically stored information and tangible things constituting, relating to, or evidencing [Mr. Wilkins'] licenses, offers of licenses or attempted

---

[6] It should be noted that Judge Thurston gave the parties an opportunity to flesh this issue out in their joint statement (Doc. 325, p. 3) but Mitsubishi chose to disclose the agreements, while holding on to its position that the agreements were not discoverable, with the hope of limiting the scope of the discovery dispute (Doc. 343, p. 57, fn. 26).

1    licensing of the . . . '985 Patent[] or the technology allegedly embodied in th[at] Patent[] . . ." (Doc. 344-

2    7, p. 18).   The 2011 negotiation documents which pertained to ██████████████████████████

3    ███████████████████████████████████are plainly responsive to this request.   Thus, Mitsubishi had

4    a duty to supplement its response to GE's request for production.

5            Mitsubishi argues that it was substantially justified in its delayed disclosure of the documents

6    because the documents were created less than three months before the close of discovery at a time when

7    counsel was extremely busy.   Rule 26(e)(1)(A) requires that requests for production be supplemented

8    in a timely manner.   The negotiations occurred in late 2011, and the documents related to the

9    negotiations were produced over five months later, in May 2012, after GE had already filed a motion to

10   compel.   A five month delay in production is not timely and the fact counsel was busy with other

11   discovery matters does not justify the delay.

12           Mitsubishi further argues that it was substantially justified in not supplementing its production

13   of documents because GE already had the operative license with the amount of fees.   Thus, ████████

14   ███████████████████████████████would not make any probative fact more likely true or false.   The

15   problem with Mitsubishi's argument is that GE requested *all* documents related to the license.   (Doc.

16   344-7, p. 18).   Thus, Mitsubishi's duty to supplement its production of documents with the 2011

17   negotiations was obvious.

18           The above arguments set forth by Mitsubishi fail to leave the Court with "a definite and firm

19   conviction that a mistake" was committed when Judge Thurston awarded GE attorney's fees and costs

20   for taking additional depositions.   *Sec. Farms*, 124 F.3d at 1014.   Thus, Mitsubishi's motion for

21   reconsideration and request for apportionment is DENIED.

22   **C. GE's Request for Fees**

23           In GE's opposition, it requests recovery of the fees associated with opposing defendants' requests

24   for reconsideration.   GE requests fees given the nature of the conduct that resulted in Judge Thurston's

25   award of sanctions, defendants' continued defense of the conduct, and the failure of either party to

26   present new facts, circumstances, or other good cause for reconsideration as required by Local Rule

27   230(j).

28           "Three primary sources of authority enable courts to sanction parties or their lawyers for

14

improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

FED. R. CIV. P. 11(c)(2) requires a motion for sanctions to be made separately from any other motion and it must be served under FED. R. CIV. P. 5, but not filed or presented to the Court if the challenged paper or contention is withdrawn or appropriately corrected within 21 days after service of the motion. Because GE failed to comply with this procedure, GE cannot recover the fees associated with opposing the instant motions. *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (reversing sanctions award because the requesting party failed to follow the requirements of FED. R. CIV. P. 11). Moreover, the Court does not wish to exercise its discretion pursuant to 28 U.S.C. § 1927 or its inherent power to impose sanctions. Accordingly, GE's request for attorney's fees is DENIED.

## V. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      DENIES Mr. Wilkins' motion for reconsideration and request for apportionment;

2.      DENIES Mitsubishi's motion for reconsideration and request for apportionment; and

3.      DENIES GE's request for attorney's fees.


IT IS SO ORDERED.

**Dated:    August 2, 2012**                                  /s/ Lawrence J. O'Neill
                                                                 UNITED STATES DISTRICT JUDGE

15