# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL ELECTRIC COMPANY, et., | CASE NO. CV F 10-0674 LJO JLT |
| Plaintiffs, | **ORDER ON INTERVENOR'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| THOMAS WILKINS, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS and INTERVENOR ACTION. | |

## INTRODUCTION

Plaintiffs General Electric Company and GE Wind Energy, LLC (collectively "GE") brought this action to quiet title to two patents, U.S. Patent Nos. 6,924,565 ("565 patent") and 6,921,985 ("985 patent"). Defendant Thomas A. Wilkins ("Mr. Wilkins"), a former employee of GE and its predecessors claims, *inter alia*, to be an unnamed inventor of the 985 patent. In this motion, intervenors and counterclaimants Mitsubishi, Ltd. and Mitsubishi Power Systems Americas, Inc. (collectively "Mitsubishi") move for judgment in their favor on count one of their counterclaim against GE; namely, to correct the 985 patent by including Mr. Wilkins as a co-inventor pursuant to 35 U.S.C. §256. Because material questions of fact remain as to whether Mr. Wilkins is a co-inventor of Claim 15 of the 985 patent, this Court DENIES Mitsubishi's partial summary judgment motion.

# BACKGROUND

## Relevant Factual History

### The 985 Patent

The patent at issue relates to wind turbine generators, which transform wind energy into electric power. As the size of wind farms grew, utilities began to require wind farms to have the capability to "ride through" disturbances on the power grid and to provide "reactive power" that helps support the power grid. The 985 patent, entitled "Low Voltage Ride Through ["LVRT"] for Wind Turbine Generators" is directed to wind turbine structure and circuitry that provide "ride through" stabilization in periods of voltage fluctuation.

Mitsubishi contends that Mr. Wilkins is a co-inventor of the 985 patent, because developed inventions related to ride-through technology claimed in the 985 patent. Specifically, Mitsubishi contends that Mr. Wilkins contributed to claim 15 of the 985 patent. Claim 15 of the 985 patent describes the use of an "uninterruptible power supply" to power the controller for the wind turbine's converter:

> a power converter...wherein the converter controller is coupled to receive power from an uninterruptible power supply during a low voltage event, and a circuit...to shunt current from the inverter and generator in response to a control signal from the converter controller.

985 Patent Col. 7:58-Col. 8:3. With this innovation, the controller continues to receive power from an uninterruptible power supply and can send a control signal to activate a special protective circuit that diverts excess current from the converter and protects it from damage.

### Patent Application and Issue

GE filed an application for the 985 patent in January 24, 2003 with the United States Patent and Trademark Office ("USPTO"). Initially, GE identified Mr. Wilkins as a co-inventor of that patent. According to GE, there was conflicting evidence as to whether Mr. Wilkins was a co-inventor of that patent according to GE that came to light after the ensuing months of investigation. GE further claims that Mr. Wilkins was named as a co-inventor by mistake, because the application was filed quickly. It is undisputed that later in 2003, GE removed Mr. Wilkins as a named inventor of the 985 patent in its application. The 985 patent issued in 2005. Mr. Wilkins was not named as a co-inventor.

### ITC Action[1]

In 2008, GE asserted patent infringement claims against Mitsubishi before the International Trade Commission ("ITC"). That action pertained to three patents, including Claim 15 of the 985 patent at issue in this action. As part of its defense of that case, Mitsubishi claimed that GE could not enforce the 985 patent against it due to the inequitable conduct of GE before the USPTO. Specifically, Mitsubishi alleged that the testimony established that Mr. Wilkins was a co-inventor to Claim 15 of the 985 patent and GE's conduct in removing his name from the application was inequitable. In that action, GE contended (as it does here), that adding Mr. Wilkins' name to the cover sheet was a mistake, that Mr. Wilkins' testimony that he was an inventor was not corroborated by other evidence, and that Mr. Wilkins was not a co-inventor.

After considering the evidence submitted, the administrative law judge ("ALJ") concluded that Mitsubishi has "shown by clear and convincing evidence that Wilkins is an inventor of the subject matter of claim 15 of the 985 patent." *In the Matter of Certain Variable Speed Wind Turbines and Components Thereof*, Inv. No. 337-TA-641, Initial Determination, p. 116. The ALL based his conclusion on the following:

> The evidence shows that prior to the filing of the application for the '985 patent, Wilkins was working on the same low voltage ride-through problem addressed by claim 15. Specifically, during 1999 and 2000, Wilkins worked in California for Enron Wind (the predecessor in interest to GE). His activities included travel to a wind farm in Minnesota (Lake Benton II). To work on a project that involved modifying an existing model of wind turbine to incorporate a ride-through feature that would enable it to remain connected to the grid during certain voltage dips.

*Id*. The ALL relied on Mr. Wilkins' testimony as to his work at Lake Benton II, later discussions he had with colleagues, and later work he did at Lake Benton II as a result of those discussions. The ALL noted that while Mr. Wilkins was leading the efforts to tackle the ride-through issue in California, a person named Lutze was leading a similar effort in Germany. The ALL explained that the California and German teams communicated frequently and Mr. Wilkins flew to German to discuss low voltage ride-through issues with GE engineers there. Both Mr. Wilkins and Lutze testified that during Mr. Wilkins

---

[1] The ITC decisions are not binding on this Court. *See, e.g. Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1998) (ITC patent determinations should be given no collateral estoppel effect). This Court recounts the parties' arguments and the ITC findings of fact to provide context to the parties' current arguments and submitted evidence.

1  2002 trip to Germany, Mr. Wilkins, Mr. Lutze and another person with the surname of Jansen discussed
2  the idea that formed the basis of the 985 patent. Mr. Lutze explained that although he could not pick
3  out specific parts of the 985 patent that were Mr. Wilkins' contributions, Mr. Wilkins participated in the
4  discussions that led to the application for the patent. Mr. Lutze further testified that did not understand
5  why Mr. Wilkins was left off the patent. The ALL found that this evidence to be "clear and convincing
6  that Thomas Wilkins was an inventor of at least the invention of claim 15 of the 985 patent." *Id*. at p.
7  119.

8  GE appealed the ALL's decision to the full Commission. The Commission, *inter alia*,
9  determined to review whether Mr. Wilkins should properly have been named as an inventor and, if so,
10 what would be the effect on the patent for failing to name Mr. Wilkins. Mitsubishi maintained that Mr.
11 Wilkins was a co-inventor. Mitsubishi submitted that Mr. Wilkins' claim of co-inventorship was
12 corroborated by the testimony of Mr. Lutze, Mr. Fogarty, the GE employee who drafted the invention
13 disclosure letter than underlies the 985 patent, and Mr. Wilkins' work during and after the Lake Benton
14 II project. GE countered that Mr. Wilkins was not a co-inventor of the patent, but merely briefed the
15 team on prior art. In the alternative, GE argued that if Mr. Wilkins was a co-inventor, he had a duty to
16 assign any ownership interests to GE. After reviewing the record and the parties' arguments, the
17 Commission found as follows:

> Wilkins is an unnamed inventor of claim 15 of the '985 patent, that GE has not provided any showing to the effect that Wilkins had an obligation to assign the patent to GE, and that GE has not joined Wilkins as a part to this investigation. Nevertheless, it is undisputed that Wilkins is not named on the face of the patent, and we find that Wilkins therefore lacks such legal title as to make him an owner of the '985 patent. As an inventor, Wilkins does have an equitable interest that can be perfected to legal title upon application to the USPTO, or through correction by a district court under 35 U.S.C. §256. The Commission, however, lacks authority to correct inventorship under Section 256 or any other statutory provision, and the Commission's authority in this regard must be conferred by statute. Moreover, Mitsubishi cannot property assert an equitable interest on behalf of Wilkins.

24 *In the Matter of Certain Variable Speed Wind Turbines and Components Thereof*, Investigation No. 337-
25 TA-641, Commission Opinion, p. 36.

26 GE appealed one unrelated issue to the Federal Circuit Court of Appeals. The Federal Circuit
27 remanded that appeal to the ITC. *See Gen. Elec. Co. v. Int'l Trade Comm'n*, 670 F.3d 1206 (Fed. Cir.
28 2012). That action remains pending.

4

**New Evidence Submitted**

Both parties re-submit and rely on evidence available to the ITC ALL and Commission to support their positions related to whether Mr. Wilkins is a co-inventor of Claim 15 of the 985 patent. That evidence has been summarized in the ALL and Commission opinions quoted above. In addition, both parties submit evidence outside of that record to bolster their respective positions. Most of the evidence submitted to this Court is under seal pursuant to a sealing order. As such, most of the evidence is presented in redacted form on the public record. Because of the fact-intensive nature of the issue presented, because the evidence submitted by both parties establishes disputed material fact remain as to whether Mr. Wilkins was a co-inventor, and to avoid heavy redaction in this public document, this Court shall not recount in detail the parties' additional evidence submitted in this motion. This Court shall summarize that evidence as follows:

As set forth above, Mitsubishi contends that Mr. Wilkins co-invented Claim 15 of the 985 patent during his work at Lake Benton II and during discussions and collaborations with the German team. Mitsubishi submits further evidence that it was Mr. Wilkins' idea to use a UPS to power controllers during a low voltage event, the idea behind Claim 15. In addition to evidence relied on by the ITC, Mitsubishi now submits internal GE documents to support this claim. The substance of these documents are sealed by protective order, but are emails between three named co-inventors which purportedly reflect a division of credit for the invention. Mitsubishi maintains that the evidence establishes that Mr. Wilkins collaborated with the German team regarding the entire LVRT invention and played an important role in working out the eventual solution set forth in that claim.

Mitsubishi further points out that not only was Mr. Wilkins' idea of combining a UPS with various other components a significant feature of the patent, but it was essential to the patentability of Claim 15. When GE first submitted the 985 patent application, Claim 15 did not include the use of an uninterruptible power supply. The USPTO rejected Claim 15 as originally presented based on prior art. GE was able to overcome this rejection only by adding language incorporating a UPS–Mr. Wilkins' idea. The USPTO then allowed the claim over the prior art, explaining that the record of prior art did not show that particular technology.

GE counters that the evidence establishes that Mr. Wilkins was added to the 985 patent

application by mistake only and that he was not a co-inventor of any technology in the 985 patent. GE explains rather than a collaborative effort, Mr. Wilkins' team in California and the German team were working separately and found competing solutions to the issue. GE submits evidence to support that the inventions worked out by Mr. Wilkins for the work at Lake Benton II were handled differently from the inventions of the German team. GE further submits evidence to support its position that Mr. Wilkins was not a co-inventor of Claim 15 under seal.

## Relevant Procedural History

On April 25, 2010, three months after the ITC's full Commission ruling that Mr. Wilkins was a co-inventor of the 985 patent, GE initiated this action against Mr. Wilkins. The parties have filed summary judgment and summary adjudication motions. The motions have been fully briefed. By separate order, this Court addressed the issues raised in GE's and Mr. Wilkins' summary adjudication motions related to whether Mr. Wilkins had a duty to assign his invention rights, if any, to GE based on California law. This Court shall address Mitsubishi's partial summary judgment motion in this order.

This Court carefully reviewed and considered the record, including the parties' arguments, the admissible evidence attached thereto, judicially noticeable facts submitted, and the applicable case law. Omission of reference to an argument, document, or objection shall not be construed to the effect that this Court did not consider the argument, document, or objection or paper. Pursuant to that thoughtful review, this Court issues the following order.

### STANDARD OF REVIEW

Mitsubishi moves for partial summary judgment as to count one of its counterclaim pursuant to Fed. R. Civ. P. 56. Fed. R. Civ. P. 56(a) permits a party to seek summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir.1999). Summary judgment or adjudication is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987). The purpose

of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed. R. Civ. P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997); *see also*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences from the facts must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000); *see also*, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no

7

obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id*. at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id*. "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id*.; *Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Mitsubishi seeks judgment in its favor pursuant to 35 U.S.C. §256, which "grants district courts the power to correct...the omission of an inventor in an issued patent." *Fina Tech., Inc. v. Ewen*, 265 F.3d 1325, 1327 (Fed. Cir. 2001). The statute reads:

> Whenever, through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intent on his part, the Director may, on application of all the parties and assignees, with proof of facts and such other requirements as may be imposed, issue a certificate correcting such error...The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. §256. Mitsubishi should issue an order to correct 985 patent by including Mr. Wilkins name as a co-inventor, because the undisputed evidence establishes that Mr. Wilkins was omitted as a co-inventor in the 985 patent.

Mitsubishi has a high burden of proof to establish its claim. Because the inventors named on the issued patent are presumed to be correct, a person seeking to add his name to a patent "must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). To succeed in this motion, Mitsubishi must establish that the undisputed evidence meets this heavy burden. Although the ultimate conclusion of inventorship is a question of law, that conclusion is based on findings of fact. *See Ethicon Inc. v. U.S. Surgical Corp.*, 135

F.3d 1456, 1460 (Fed. Cir. 1998) (inventorship is reviewed without deference, but underlying findings of fact that uphold inventorship determination reviewed for clear error). Whether a person seeking to add his name to a patent has met his or her burden through clear and convincing evidence is a question of fact. *See Shum v. Intel Corp*., 633 F.3d 1067, 1071 (Fed. Cir. 2010) (noting that plaintiff's co-inventor claims were submitted to a jury).

To establish that Mr. Wilkins was a co-inventor, the clear and convincing evidence must establish that Mr. Wilkins contributed to the conception of the invention. A patented invention may be the work of two or more joint inventors. *Ethicon*, 13 F.3d at 1460 (referencing 35 U.S.C. §116). "Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Lab. Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994). Thus, a joint inventor "must contribute in some significant manner to the conception or reduction to practice of the invention [and] make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Nartron Corp. v. Shukra U.S.A. Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009). The "critical question for joint conception is who conceived, as that term is used in patent law, the subject matter of the claims at issue." *Ethicon*, 135 F.3d at 1460.[2]

Co-inventorship cannot be established by Mr. Wilkins' testimony alone; his testimony must be corroborated. An "inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof." *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). "The rule is the same for an alleged co-inventor's testimony." *Ethicon*, 135 F.3d at 1461. An alleged co-inventor "must supply evidence to corroborate his testimony." *Id*. Corroborating evidence may take different forms. "Often contemporaneous documents prepared by a putative inventor serve to corroborate an inventor's testimony." *Id*. "Circumstantial evidence about the inventive process may also corroborate." *Id*.; *see also*, *Sandt Tech., Ltd. v. Resco Metal & Plastic Corp*., 264 F.3d 1344, 1350-51 (Fed. Cir. 2001). Additionally, oral testimony of someone other than the alleged inventor may corroborate." *Id*.; *see also*, *Price*, 988 F.2d at 1195-96. "Whether the

---

[2] A co-inventor need not make a contribution to every claim of a patent. *See* 35 U.S.C. §116*; Ethicon, Inc. v. United States Surgical Corp*., 135 F.3d 1456, 1460 (Fed. Cir. 1998). Thus, Mr. Wilkins may be a co-inventor even if his contribution is limited to Claim 15 of the 985 patent.

9

inventor's testimony has been sufficiently corroborated is evaluated under a 'rule of reason' analysis." *Id.* Under this analysis, "an evaluation of all pertinent evidence must be made so that a sound determination of credibility of the [alleged] inventor's story maybe reached." *Price*, 988 F.2d at 1194.

"The conception inquiry is fact-intensive." *In re Jolley*, 308 F.3d 1317, 1323 (Fed. Cir. 2002). For such fact-intensive inquiries "summary judgment should not be granted precipitously." *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005). "[F]or fact-intensive issues, the trial court has the discretion to deny summary judgment even where summary judgment might otherwise be appropriate." *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1195 n.2 (Fed. Cir. 1994). This Court may grant summary judgment where the material facts are not in genuine dispute. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 12 F. Supp. 2d 69, 74 (D. Mass. 1998), *aff'd*, 225 F.3d 1315 (Fed. Cir. 2000). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Shum*, 633 F.3d at 1076.

Considering these principles and the evidence presented, this Court finds that genuine issues of material fact preclude judgment as a matter of law on whether Mr. Wilkins is a co-inventor of Claim 15 of the 985 patent. The material facts are in dispute as to whether Mr. Wilkins contributed to the invention of the claim; whether Mr. Wilkins' contributions were handled by separate application and invention disclosure by GE; whether Mr. Wilkins worked collaboratively or competitively with the German team; whether the named co-inventors understood Mr. Wilkins' contributions to be part of the conception of the invention; whether Mr. Wilkins was named as co-inventor by mistake; and whether GE's removal of Mr. Wilkins' name from the application was to correct the mistake or for some other purpose. These questions of fact require a fact-finder to weigh the evidence, make credibility determinations, and consider the high burden of proof. This Court cannot make these factual and credibility determinations pursuant to the well-settled standards for a Fed. R. Civ. P. 56 motion. On the record presented, Mitsubishi has failed to establish that Mr. Wilkins was a co-inventor of Claim 15 of the 985 patent as a matter of law, because GE has successfully raised material factual disputes.

## CONCLUSION AND ORDER

For the foregoing reasons, this Court DENIES Mitsubishi's partial summary judgment motion.

IT IS SO ORDERED.

**Dated:** **September 4, 2012**              /s/ Lawrence J. O'Neill
                                                UNITED STATES DISTRICT JUDGE